# No. 23-15285

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION

On Appeal from a Decision of the
United States District Court for the Northern District of California,
The Honorable James Donato, No. 21-md-02981

## BRIEF OF *AMICI CURIAE*
## BUSINESS AND ANTITRUST LAW PROFESSORS
## IN SUPPORT OF GOOGLE

MICHAEL E. HAMBURGER
DANIEL J. GROSSBAUM
LAUREN GORAB
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
mhamburger@whitecase.com

*Counsel for Amici Curiae*

June 15, 2023

**TABLE OF CONTENTS**

**Page**

INTEREST OF THE *AMICI CURIAE* ........................................................................1

INTRODUCTION ........................................................................................2

SUMMARY OF ARGUMENT ................................................................3

ARGUMENT ............................................................................................5

I.     DISTRICT COURTS MUST RIGOROUSLY ANALYZE EXPERT EVIDENCE OF INJURY IN DETERMINING WHETHER COMMON ISSUES PREDOMINATE..........................................................5

II.    THE DISTRICT COURT HERE DID NOT RIGOROUSLY ANALYZE GOOGLE'S EVIDENCE THAT MOST OF THE CLASS MEMBERS WERE LIKELY UNINJURED ..................................................8

CONCLUSION ........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Castillo v. Bank of Am., NA*,
   980 F.3d 723 (9th Cir. 2020) .................................................................7

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)..............................................................................6

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..............................................................14

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)............................................................................3

*In re Apple iPhone Antitrust Litig.*,
   2022 U.S. Dist. LEXIS 79593 (N.D. Cal. Mar. 29, 2022)........................3, 5, 10, 13

*In re Lithium Ion Batteries Antitrust Litig.*,
   2018 U.S. Dist. LEXIS 35744 (N.D. Cal. Mar. 5, 2018)..................5, 13

*Renati v. Wal-Mart Stores, Inc.*,
   2019 U.S. Dist. LEXIS 185486 (N.D. Cal. Oct. 25, 2019)......................6

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016).................................................... passim

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) ...................................... passim

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..............................................................7, 14, 16

*Ward v. Apple Inc.*,
   784 F. App'x 539 (9th Cir. 2019) .........................................................5

*West v. Prudential Sec., Inc.*,
   282 F.3d 935 (7th Cir. 2002) ..............................................................17

## STATUTES AND RULES

Fed. R. App. P. 29(a)(2)........................................................................1

Fed. R. App. P. 29(a)(4)(E).....................................................................1

Fed. R. Civ. P. 23(b)(3)............................................................. passim

## OTHER AUTHORITIES

Mike Kheyfets, *Benefit of the But-For Bargain: Assessing Econ. Tools for Data Priv. Litig.*,
    23 J. Tech. L. & Pol'y 115, 129-30 (2018) .......................................................................10

Rules Enabling Act ...................................................................................................................8, 15

## INTEREST OF THE *AMICI CURIAE*

This brief is submitted on behalf of business professors and professors of antitrust law, with an interest in the proper application of antitrust principles to business conduct (the "Amici").[1]  Amici include leading professors and lecturers at some of the nation's top law schools, business schools, and economics departments, with extensive experience analyzing the proper application of antitrust law and economics in various industries across the world.

Amici submit this brief to provide the Court with their views on why the District Court's predominance finding in this case lacked the rigorous analysis required by decades of Supreme Court precedent.  Given the profound importance of applying the correct criteria when deciding class-certification motions—which, if improvidently granted may impose ruinous costs on antitrust defendants, and if incorrectly denied may leave claimants with no viable recourse—this Court should reconfirm the need to scrutinize the parties' competing expert opinions before deciding whether plaintiffs have met their burden of establishing that common issues predominate over individualized inquiries under Rule 23(b)(3).

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), Amici represent that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person—other than Amici and their counsel—contributed money that was intended to fund preparing or submitting the brief.  Amici file this brief pursuant to Fed. R. App. P. 29(a)(2) with consent of all parties.

## INTRODUCTION

The District Court certified a class of millions of consumers that buy apps and make in-app purchases through Google's Play Store.  *See* Order Re Consumer Pls.' Class Certification Mot. & Defs.' Mot. to Exclude Expert Test. at 1, *In re Google Play Store Antitrust Litig.*, No. 21-md-02981 (N.D. Cal. Nov. 28, 2022), ECF No. 383 ("Order").  While the District Court held that the proposed class's expert opinions were sufficient to show injury on a class-wide basis, it did not rigorously analyze the opinions and criticisms raised by Google's expert in assessing whether plaintiffs' proof would be sufficient to establish injury for each individual class member.  Instead, the District Court did not consider that evidence at all, or summarily disregarded it without explaining how common issues would continue to predominate once Google presented at trial real-world evidence that challenged whether its conduct injured individual class members.

Class certification is often the key moment in antitrust suits, as the certification of a large class may place irresistible pressure on defendants to settle even when the plaintiffs' claims lack merit.  The certification of a much larger class than plaintiffs' evidence warrants merely increases such in terrorem effects.  For decades, the Supreme Court has wisely required district courts to conduct a rigorous analysis of the evidence for and against class certification, before deciding whether plaintiffs have established the elements of Rule 23—for both the

protection of defendants *and* putative class members. *See, e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982). Reasonable people may disagree about whether a district court's analysis was rigorous enough in closer cases. But where, as here, the court either ignores competing evidence offered by a defendant, or summarily characterizes it as unpersuasive without explaining how the court reaches that conclusion, the analysis was anything but rigorous. Amici therefore respectfully request that this Court act to mitigate against the District Court's errors proliferating among the other courts in this Circuit.

## SUMMARY OF ARGUMENT

In antitrust class actions, the proper economics question is not whether *someone* was injured, but whether *these plaintiffs and class members* (here, consumers) were injured. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *In re Apple iPhone Antitrust Litig.*, 2022 U.S. Dist. LEXIS 79593, at *40-42 (N.D. Cal. Mar. 29, 2022). The consumers allege that they paid too much for apps and in-app purchases because Google charged app developers—not the consumers themselves—a monopolistically high service fee (i.e., the percentage of the purchase price retained by Google) on each app and in-app purchase. To prove injury, then, the consumers needed to show both that the rates Google charged would have been lower but-for the challenged conduct, and that the app developers would have passed on these savings to consumers through cheaper app and in-app

purchases. Thus, the District Court should have evaluated whether the proffered "common proof" shows that pass-on would have occurred systematically to all or nearly all consumer class members. If pass-on was not systematic, then the class could not have satisfied Rule 23(b)(3)'s predominance standard because litigating the existence of pass-on to class members on an individualized basis would be necessary, and would overwhelm litigation as to any other common issues facing the class.

The District Court apparently focused on whether the plaintiffs offered *some* admissible evidence of pass-on, rather than on whether plaintiffs' proof established that lower fees would have been passed on to the millions of class members when they paid for any of hundreds of thousands of different apps and in-app purchases. And the District Court did so by permitting consumers to offer a methodology guaranteed to find pass-on for every app and in-app purchase (at a rate of 1 minus the app's share in its designated app category), without seriously assessing Google's real-world evidence showing that no pass-on occurred for many apps after Google lowered the rates it charged the apps' developers. *But see Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023).

Moreover, because plaintiffs' evidence would not have been sufficient to show whether an app developer would have passed on savings to any particular consumer in an individual suit, it should not have been sufficient proof in a class

action either. *See Tyson*, 577 U.S. at 455-56 (holding evidence of injury permissible in class action where such evidence "could have sustained a reasonable jury finding" in an "individual action").

In particular, the District Court ignored that app developers use focal-point pricing (e.g., prices ending in $.99). As a result, the small rate changes plaintiffs claim would exist in a but-for world likely would not be passed on unless developers abandoned this practice. But no evidence suggested developers would abandon focal-point pricing, and the District Court certified the class without addressing other cases in the Northern District of California that denied certification because of focal-point pricing, including in a closely analogous case involving allegations that Apple charged too high of fees to app developers on its app store. *Apple iPhone*, 2022 U.S. Dist. LEXIS 79593, at *23-25; *see also In re Lithium Ion Batteries Antitrust Litig.*, 2018 U.S. Dist. LEXIS 35744, at *37-44 (N.D. Cal. Mar. 5, 2018).

## ARGUMENT

## I. DISTRICT COURTS MUST RIGOROUSLY ANALYZE EXPERT EVIDENCE OF INJURY IN DETERMINING WHETHER COMMON ISSUES PREDOMINATE

Rule 23(b)(3) requires district courts to perform a "rigorous analysis" to determine whether individualized issues of antitrust injury and causation would predominate over common questions. *See Ward v. Apple Inc.*, 784 F. App'x 539,

540 (9th Cir. 2019) ("When confronted with a motion for class certification, the district court 'must conduct a rigorous analysis' of whether the Rule 23 criteria are satisfied." (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). In antitrust cases, statistical proof is a common type of evidence offered to establish both antitrust injury and causation. *See, e.g.*, *Renati v. Wal-Mart Stores, Inc.*, 2019 U.S. Dist. LEXIS 185486, at *21 (N.D. Cal. Oct. 25, 2019) (acknowledging cases where statistical evidence can be used to show impact, but cautioning that those cases do not permit plaintiffs to use statistical evidence to avoid alleging that they themselves suffered injury).

However, this Court and the Supreme Court have counseled that statistical evidence must be properly cabined "depend[ing] on the purpose for which the [evidence] is being introduced and on the underlying cause of action." *Tyson*, 577 U.S. at 460; *see also Van*, 61 F.4th at 1068-69 (vacating order certifying class because the representative evidence offered by plaintiffs did not account for real-world evidence showing some class members were uninjured, thus making it uncertain whether individualized issues would predominate over common questions). For example, reliance on statistical evidence "is a permissible method of proving classwide liability" only if "each class member could have relied on that [evidence] to establish liability if he or she had brought an individual action." *Tyson*, 577 U.S. at 455.

But reliance on statistical evidence is not permissible if the evidence cannot prove liability in the first instance. *See Castillo v. Bank of Am., NA*, 980 F.3d 723, 732-33 (9th Cir. 2020) (affirming district court's denial of class certification where plaintiff failed to provide method for excluding "putative class members who" were "never exposed to" the policies at issue and determining whether and which class members "were harmed in a way giving rise to liability").

Thus, to assess whether predominance has been satisfied, district courts must analyze whether the available statistical evidence takes into account the realities of the industry at issue and can be applied programmatically to establish elements of the class members' claims. *Tyson*, 577 U.S. at 454-55 ("A representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action."). Such inquiry is critical to ensure that the putative class does not include a substantial number of uninjured class members or expand the rights of class members in violation of the Rules Enabling Act. *Castillo*, 980 F.3d at 733 ("In sum, pursuant to Rule 23, the court's task at certification is to ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." (citation omitted)); *Wal-*

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (holding Rules Enabling Act "forbids interpreting Rule 23 to abridge, enlarge or modify any substantive right" of class members).

## II. THE DISTRICT COURT HERE DID NOT RIGOROUSLY ANALYZE GOOGLE'S EVIDENCE THAT MOST OF THE CLASS MEMBERS WERE LIKELY UNINJURED

Because the class consists of consumers that made app or in-app purchases through Google's app store, the "Play Store," the District Court recognized that the critical issue for causation and injury is the extent to which an alleged overcharge by Google on Play Store transactions would be passed from the app's developers to consumers. Order at 8-9 ("It was important for Dr. Singer to figure out whether Google's 'take rate' would have been lower absent the challenged conduct, and if so, whether that would have translated into lower prices for consumers."). Tracing an alleged overcharge from Google, to the app developers, and then to consumers, is key because of how app store prices and charges are set. According to the record, app developers independently set the price of their apps on the Play Store. *Id.* at 16 ("[T]he parties agree that the developers set the prices for their apps and content, but Google collects the payment from the consumers, and keeps a cut of it before paying the remainder to the developers."). When a consumer purchases an app, say for $1.99, the consumer pays the full price of the app. *Id.* at 9. Google sets a service fee, which is Google's revenue share on the transaction, and

plaintiffs contend that the standard service fee or "take rate" was 30%. *Id.*

According to plaintiffs, in the but-for world Google would have charged a lower service fee than it did in the actual world. *Id.* at 18. But even if that were true, the question remains whether the app developers would pass on these savings to consumers in the form of lower app prices. To answer that question, plaintiffs' expert Dr. Singer proposed a "one minus" model in which the pass-on rate is calculated as one minus the at-issue app's share of its Play Store category. *Id.* As a matter of basic math, then, Dr. Singer's decision to advocate for a one-minus-share model guaranteed that he would "calculate" pass-through to every class member on every app or in-app purchase, unless a sole developer happened to hold a 100% share in a particular Play Store category.

Leaving aside whether an approach that assumes, rather than proves, pass-through is admissible under the Supreme Court's decision in *Daubert*, Dr. Singer's approach was not sufficient to prove that common questions of injury predominate over individual ones. Indeed, the main issue the District Court did not properly assess is whether the model's conclusions (i.e., that each app developer would pass on savings on each app it sold at a rate of one minus the app's share) could be squared with the real-world evidence that app developers set prices to the class members using focal-point pricing, with the vast majority of app store prices ending in $.99. Order at 20-21 (recognizing evidence of focal-point pricing); *see*

*also, e.g.*, *Apple iPhone*, 2022 U.S. Dist. LEXIS 79593, at *24 ("[O]verwhelming evidence suggests that developers would choose to price their apps at focal points ending in 99 cents.").

To understand why the use of focal-point pricing undermines Dr. Singer's conclusory assertion that all app developers would always pass through any lower service fee charged by Google, consider a simple hypothetical. With a 30% service fee, a $1.99 app store purchase by a single consumer would result in approximately $1.39 in revenue to the app developer. Assuming plaintiffs are correct that Google would charge all app developers a uniformly lower service fee in the but-for world (down to about 23.4%, according to plaintiffs), in the but-for world the app developer would receive $1.52, an additional $0.13 in revenue. If the app in question had a ten percent share of its Play Store category, Dr. Singer's choice to assume that pass-through would occur at a "one minus share" rate means that he would conclude that this developer should pass through about $0.12 (90% of the $0.13 in revenue) to the consumer. Thus, Dr. Singer would opine that, in the but-for world, this particular app developer would charge the consumer $1.87 rather than $1.99.

But Dr. Singer's theoretical conclusion does not match the real-world fact that app developers use focal-point pricing and routinely end their prices in $.99 for marketing reasons. *See, e.g.*, Mike Kheyfets, *Benefit of the But-For Bargain:*

*Assessing Econ. Tools for Data Priv. Litig.*, 23 J. TECH. L. & POL'Y 115, 129-30 (2018) ("[R]etailers may use 'focal point pricing,' whereby products are priced at dollar levels ending in '9' or cent levels ending at '99.' Under these kinds of pricing strategies, among others, the prices consumers pay may not change even if the features of a product do--a reality inconsistent with the foundational assumption of conjoint analysis.").

Nor does Dr. Singer's theoretical conclusion comport with the real-world evidence before the District Court. For instance, Google presented evidence that about 97% of retail consumer transactions from the Google Play Store involved prices ending in $.99. Pet. for Permission to Appeal at 10, *In re Google Play Store Antitrust Litig.*, No. 22-cv-80140 (9th Cir. Dec. 9, 2022), ECF No. 1-2. Thus, while in theory app developers could set their app prices at $1.87, in reality it appears unlikely an app developer would change its marketing and business model to pass on a few cents worth of savings.

Moreover, Google presented evidence to the District Court showing that after Google reduced its service fees for some developers, those developers lowered prices on only 13% or less of apps and for less than 2% of subscriptions and in-app purchases. Another group of plaintiffs similarly presented an expert analysis that found that only 8% of apps lower prices to consumers after the app developers' costs decrease. *Id.* at 9-10. Google also presented testimony from a

number of developers explaining that they did not lower prices after Google lowered its service fee (*id.*), including because they felt they were charging "a fair price for [their] app" regardless of Google's service fee. Defs.' Opp'n to Pls.' Class Certification Mot. at 13, *In re Google Play Store Antitrust Litig.*, No. 21-md-02981 (N.D. Cal. June 23, 2022), ECF No. 273.

Such evidence strongly suggests that Dr. Singer's "one minus share" approach incorrectly assumes that all app developers always pass through lower costs, even though the vast majority appear not to do so in any instance (thus making most consumer class members uninjured). Yet the District Court never seriously addressed this evidence. Instead, it avoided discussing much of this evidence before summarily concluding that "predominance does not demand perfection, and Google has not demonstrated that Dr. Singer's analysis falls short on this score." Order at 20:7-24.

The District Court's approach is erroneous for several reasons.

First, the District Court's conclusory assertion elides that plaintiffs—not defendants—bear the "burden to prove that class issues predominate." *Van*, 61 F.4th at 1066.

Second, the District Court overlooked that once defendants provide "evidence that at least some class members" are uninjured—even if only a small number—that creates an individualized issue and obligates the district court to

"determine whether the plaintiff has proven by a preponderance of the evidence that . . . a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." *Id.* at 1069 (vacating order certifying class).

Third, in resting its holding on Dr. Singer's conclusory assertions rather than rigorously scrutinizing them, the District Court failed to address decisions by other courts in this Circuit that applied such scrutiny to the parties' expert opinions and declined to certify classes because of a lack of *persuasive* evidence that lower costs would be passed on to consumers. For instance, in *Apple iPhone*, which involved similar allegations that consumers would have paid lower prices if Apple charged lower fees on iTunes app store transactions, the court declined to certify a consumer class because many app developers would likely continue using focal-point pricing in any but-for world. *Apple iPhone*, 2022 U.S. Dist. LEXIS 79593, at *24-25, *47-48 (finding that, due to prevalence of focal-point pricing, plaintiffs did not "meet their predominance burden because they rely on an unsound methodology, which cannot reliably demonstrate which members, and how many, were injured"). Yet the District Court below failed even to discuss the *Apple iPhone* decision, or other decisions that also found plaintiffs lacked persuasive pass-through evidence. *See Lithium Ion Batteries*, 2018 U.S. Dist. LEXIS 35744, at *37 (finding plaintiffs could not meet their burden to show antitrust impact and damages on a class-wide basis where plaintiffs' expert's "estimate of 100% pass-

through at each level of the supply chain does not adequately account for the effects of focal point pricing, and therefore fails to yield reliable conclusions").

At base, plaintiffs and the District Court rely on an assumption that all app developers would have changed their business models to pass through a few cents on each and every app and in-app purchase, disregarding substantial evidence to the contrary rather than rigorously assessing that evidence in order to decide whether common issues nevertheless predominate. This is reversible error. *See Van*, 61 F.4th at 1068-69 (reversing class certification decision where defendant "invoked an individualized issue" by "provid[ing] evidence that at least some class members lack[ed] meritorious claims" that "left some class members uninjured," and the district court failed to analyze this evidence rigorously); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (where district court limited its analysis of a Rule 23 issue to determining "whether Plaintiffs' evidence on that point was admissible, it did so in error").

Fourth, to make matters worse, the District Court also committed an error similar to the one at issue in *Wal-Mart Stores, Inc. v. Dukes*, where the Supreme Court rejected plaintiffs' proposal to select a sample set of class members and litigate sex discrimination claims as to them, then apply the percentage of claims found to be valid and average damages award to the entire class. 564 U.S. at 366-67. As the Supreme Court explained in *Tyson*, this approach failed because Wal-

Mart had no common policy of sex discrimination, and as such the proposed sample evidence could not be used by an individual plaintiff in her own suit to prove that she was discriminated against by her specific managers. *Tyson*, 577 U.S. at 457-58. So too here, an individual consumer could not rely on a "one minus share" approach to proving pass-through in her own individual suit because no evidence exists showing that app developers have a common policy of passing through service fee changes to consumers. To the contrary, the record suggests that app developers almost never lower prices in response to service fee changes. And because an individual consumer could not rely on such evidence in her own suit, she cannot do so in a class action either. *Id.* at 458 (holding that permitting different evidence in individual and class actions "would have violated the Rules Enabling Act by giving plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action").

Finally, because the District Court either overlooked or waved away Google's evidence, it never evaluated whether plaintiffs had offered a plan for Google to challenge the claims of each potentially uninjured class member without individualized issues predominating over common ones. Recall that, notwithstanding Dr. Singer's preferred approach of assuming injury to all class members, Google maintains a Due Process right to contest whether it harmed any of the potentially uninjured class members at trial. After all, "a class cannot be

certified on the premise that [Google] will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart*, 564 U.S. at 367.

Thus, whether a specific app developer would have lowered its prices such that a specific class member is injured remains a live issue that will involve individualized evidence for potentially millions of class members. Further, because Google has "substantiate[d] such an individualized issue in this way, the district court must determine whether the plaintiff has proven by a preponderance of the evidence that the questions of law or fact common to class members predominate over any questions affecting only individual members—that is, whether a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." *Van*, 61 F.4th at 1069. The District Court never did so here, and reversal is thus warranted for the same reason this Court reversed the district court in *Van*.

\*     \*     \*

Because Dr. Singer's "one minus share" approach does not and cannot account for whether class members were uninjured due to focal-point pricing, in Amici's view the District Court erred in relying on it to find that the plaintiffs satisfied Rule 23(b)(3). If district courts require nothing more than that plaintiffs proffer an expert who will opine that all class members are injured, and refuse to rigorously analyze the competing evidence presented by the parties at class

certification, they would in effect delegate "judicial power to the plaintiffs, who can obtain class certification just by hiring a competent expert." *West v. Prudential Sec., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002).

## CONCLUSION

The District Court failed to rigorously analyze the evidence at class certification and, in doing so, certified a class of millions of consumers based on a record that does not establish injury on a class-wide basis. Indeed, the District Court failed to properly account for the real-world evidence that showed that many (if not most) putative class members were uninjured. Because of this error, the District Court's Order should be vacated.

Dated: June 15, 2023

Respectfully submitted,

WHITE & CASE LLP

By:  */s/ Michael E. Hamburger*

Michael E. Hamburger
Daniel J. Grossbaum
Lauren Gorab
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
mhamburger@whitecase.com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Circuit R. 32-1 because this brief contains 3,939 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. R. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated:     June 15, 2023                    /s/ *Michael E. Hamburger*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated:     June 15, 2023          /s/ *Michael E. Hamburger*

## ADDENDUM A
## List of Academic Signatories [*]

Thomas C. Arthur, Distinguished Professor of Law, Emory University School of Law

Amitai Aviram, Professor of Law and Director, Corporate Law Program, University of Illinois College of Law

Richard D. Freer, Charles Howard Candler Professor of Law, Emory University School of Law

Vivek Ghosal, Acting Dean, School of Humanities, Arts & Social Sciences and Virginia and Lloyd W. Rittenhouse Professor, Rensselaer Polytechnic Institute

Keith N. Hylton, William Fairfield Warren Distinguished Professor & Professor of Law, Boston University School of Law

Thomas A. Lambert, Wall Chair in Corporate Law and Governance and Professor of Law, University of Missouri School of Law

Alexander Volokh, Associate Professor of Law, Emory University School of Law

John M. Yun, Associate Professor of Law and Deputy Executive Director at the Global Antitrust Institute, George Mason University, Antonin Scalia Law School

---

[*] The brief presents the views of the individual signers. Institutions are listed for identification purposes only.