**No. 23-15285**

In the

# United States Court of Appeals
## For the Ninth Circuit

———————————

**IN RE: GOOGLE PLAY STORE ANTITRUST LITIGATION**

———————————

**MARY CARR, individually and on behalf of all others similarly situated; et al.,**
*Plaintiffs-Appellees,*

v.

**GOOGLE LLC; et al.,**
*Defendants-Appellants.*

———————————

Appeal from the United States District Court
for the Northern District of California
No. 21-md-2981; No. 20-cv-5761

———————————

**BRIEF OF AMICI CURIAE THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, THE AMERICAN TORT REFORM ASSOCIATION, BUSINESS ROUNDTABLE AND THE PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA IN SUPPORT OF DEFENDANTS-APPELLANTS**

———————————

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-4746
bschmalzbach@mcguirewoods.com

*Counsel for Amici Curiae*
*Additional counsel listed on inside cover*

Jennifer B. Dickey
Tyler S. Badgley
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

*Counsel for Amicus Curiae*
*Chamber of Commerce of the*
*United States of America*

James C. Stansel
Melissa B. Kimmel
THE PHARMACEUTICAL RESEARCH
AND MANUFACTURERS OF AMERICA
950 F Street, NW
Suite 300
Washington, DC 20004

*Counsel for Amicus Curiae*
*The Pharmaceutical Research and*
*Manufacturers of America*

H. Sherman Joyce
Lauren Sheets Jarrell
AMERICAN TORT REFORM ASSOCIATION
1101 Connecticut Avenue, NW
Suite 400
Washington, DC 20036

*Counsel for Amicus Curiae*
*American Tort Reform Association*

Liz Dougherty
BUSINESS ROUNDTABLE
1000 Maine Avenue SW
Washington, DC  20024

*Counsel for Amicus Curiae*
*Business Roundtable*

## CORPORATE DISCLOSURE STATEMENT

Amici curiae the Chamber of Commerce of the United States of America, the American Tort Reform Association, Business Roundtable, and The Pharmaceutical Research and Manufacturers of America certify that they have no outstanding shares or debt securities in the hands of the public, and they do not have any parent companies. No publicly held company has a 10% or greater ownership interest in amici curiae.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF AMICI CURIAE ...........................................1

STATEMENT OF CONSENT, AUTHORSHIP, AND
     CONTRIBUTION...........................................................................3

INTRODUCTION .........................................................................................3

ARGUMENT ..................................................................................................6

I.     The District Court erred in certifying an overwhelmingly
     uninjured damages class.........................................................................6

     A.     Certified damages classes must exclude the uninjured .............6

     B.     Even if the uninjured could be damages class members,
          individualized inquiries into injury here create a
          predominance problem ................................................................11

     C.     The problem of uninjured class members requires
          rigorous analysis........................................................................14

     D.     The required rigorous analysis reveals that this class is
          rife with uninjured members......................................................18

II.     Laissez-faire analysis of uninjured class members hurts our
     businesses and economy.......................................................................20

CONCLUSION .............................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)................................................................10, 15

*In re Apple iPhone Antitrust Litig.,*
2022 WL 1284104 (N.D. Cal. Mar. 29, 2022) ................................19

*Arizona Christian Sch. Tuition Org. v. Winn,*
563 U.S. 125 (2011)..............................................................................4

*In re Asacol Antitrust Litig.,*
907 F.3d 42 (1st Cir. 2018) ............................................................12

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011)..........................................................................21

*Bell Atl. Corp. v. AT&T Corp.,*
339 F.3d 294 (5th Cir. 2003) ...................................................14, 17

*Blades v. Monsanto Co.,*
400 F.3d 562 (8th Cir. 2005)......................................................16, 17

*Bowerman v. Field Asset Servs., Inc.,*
60 F.4th 459 (9th Cir. 2023)............................................................14

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013).........................................................................15, 16

*Coopers & Lybrand v. Livesay,*
437 U.S. 463 (1978)..........................................................................21

*Cordoba v. DIRECTV, LLC,*
942 F.3d 1259 (11th Cir. 2019) ......................................................12

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006) ............................................................11

iii

*Flecha v. Medicredit, Inc.,*
    946 F.3d 762 (5th Cir. 2020) ........................................................ 15

*Halvorson v. Auto-Owners Ins. Co.,*
    718 F.3d 773 (8th Cir. 2013) ........................................................ 11

*Johannessohn v. Polaris Indus. Inc.,*
    9 F.4th 981 (8th Cir. 2021) ..................................................... 17, 19

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 8

*Mazza v. Am. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ........................................................ 10

*Olean v. Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651 (9th Cir. 2022) ................................................ *passim*

*Prantil v. Arkema Inc.,*
    986 F.3d 570 (5th Cir. 2021) ........................................................ 17

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869,*
    725 F.3d 244 (D.C. Cir. 2013) ....................................................... 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) ...................................................................... 9

*Smith v. Bayer Corp.,*
    564 U.S. 299 (2011) ...................................................................... 9

*Town of Chester v. Laroe Ests., Inc.,*
    581 U.S. 433 (2017) ...................................................................... 9

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ........................................................ 5, 7, 8

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016) ...................................................................... 7

*Van v. LLR, Inc.,*
    61 F.4th 1053 (9th Cir. 2023) ..................................................... 7, 8

iv

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)............................................................6

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
    594 F.3d 1087 (9th Cir. 2010).........................................14

*Zinser v. Accufix Rsch. Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001).........................................16

## Rules

Fed. R. Civ. P. 23.......................................................*passim*

Fed. R. Civ. P. 82............................................................10

## Other Authorities

2023 Carlton Fields Class Action Survey (2023), available at
    https://ClassActionSurvey.com ...........................20, 22

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice and Procedure § 1785.1 (3d ed.)......................11

Adeola Adele, *Dukes v. Wal-Mart: Implications for Employment
    Practices Liability Insurance* (July 2011) ........................20

Henry J. Friendly, *Federal Jurisdiction: A General View* (1973) ........................21

U.S. Chamber Institute for Legal Reform, *Do Class Actions
    Benefit Class Members? An Empirical Analysis of Class Actions*
    (Dec. 2013), available at http://bit.ly/3rrHd29 ........................21

## IDENTITY AND INTEREST OF AMICI CURIAE

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. The Chamber represents around 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus briefs in cases, like this one, that raise issues of concern to the nation's business community.

The American Tort Reform Association ("ATRA") is a broad-based coalition of businesses, corporations, municipalities, associations, and professional firms that have pooled their resources to promote reform of the civil justice system with the goal of ensuring fairness, balance, and predictability in civil litigation. For more than three decades, ATRA has filed amicus briefs in cases involving important liability issues.

Business Roundtable is an association of more than 200 chief executive officers (CEOs) of America's leading companies, representing every sector

of the U.S. economy. Business Roundtable CEOs lead U.S.-based companies that account for one in four American jobs and almost a quarter of U.S. GDP. Business Roundtable was founded on the belief that businesses should play an active and effective role in the formulation of public policy, and Business Roundtable members develop and advocate for policies to promote a thriving U.S. economy and expanded opportunity for all. Business Roundtable participates in litigation as *amicus curiae* when important business interests are at stake.

The Pharmaceutical Research and Manufacturers of America (PhRMA) is a voluntary, nonprofit association representing the nation's leading research-based pharmaceutical and biotechnology companies. PhRMA's member companies research, develop, and manufacture medicines that allow patients to live longer, healthier, and more productive lives. Since 2000, PhRMA members have invested more than $1 trillion in the search for new treatments and cures—including $102.3 billion in 2021 alone. PhRMA's mission is to advocate public policies that encourage the discovery of life-saving and life-enhancing medicines. PhRMA closely monitors legal issues that affect the pharmaceutical industry and frequently participates in such cases as an *amicus curiae*.

Amici's members and their subsidiaries are often targeted as defendants in class actions. Amici thus are familiar with class action litigation, both from the perspective of individual defendants in class actions and from a more global perspective. Amici have a significant interest in this case because the district court's misapplications of Article III and Rule 23 raise issues of immense significance not only for their members, but also for the customers, employees, and other businesses that depend on them.

## STATEMENT OF CONSENT, AUTHORSHIP, AND CONTRIBUTION

Counsel for all parties consented to the filing of this brief. No party's counsel authored this brief in whole or in part, and no such counsel nor any party here contributed money to fund the preparation of this brief or its submission. No person other than amici, their members, or their counsel contributed money to the preparation or submission of this brief.

## INTRODUCTION

This case is a blueprint for transmuting the uninjured into billion-dollar class actions through expert reports that simply assume away the reasons why those class members have no injury. But that attempted Article III alchemy cannot survive fundamental limitations on federal jurisdiction

3

in the class action context. To the contrary: "In an era of frequent litigation"—and especially "class actions"—"courts must be more careful to insist on the formal rules of standing, not less so." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011).

The District Court relaxed those rules and omitted the rigorous analysis required under Rule 23 when it accepted an expert report as classwide proof of Article III injury. Plaintiffs' expert assumed that all class members were injured but could not square that assumption with individualized reasons why many app buyers from the Google Play store would see no impact from alleged antitrust violations. For example, a developer would not pass through small cost decreases to customers when that developer (like most) insisted on maintaining prices ending in 99 cents. Nor would a developer pass through cost decreases for an app that lacked meaningful competition. The report's ostrich approach to those individualized problems thus could not establish classwide injury-in-fact.

This Court should reverse the order certifying a Rule 23(b)(3) class of Google Play store customers seeking billions in damages. The District Court's standing analysis fails in at least three respects.

4

*First*, the District Court certified a largely (if not entirely) uninjured class. That is not permissible under Article III. The act of certification makes absent class members parties subject to the same standing requirements as named plaintiffs. But even if *some* of those class members had standing, the District Court allowed many more uninjured class members to ride on their coattails. Neither Article III nor Rule 23 permits that approach, and this Court should take the opportunity to clarify what is implicit in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and *Olean v. Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022): no damages class can be certified without evidence that each class member has Article III standing.

*Second*, even if it were permissible in some circumstances to certify a class that contains some small number of uninjured class members, it would still not be permissible to do so here because the need to winnow out those uninjured class members before judgment means that these individual inquiries would predominate over the common questions. Under Rule 23(b)(3), plaintiffs must show, among other things, that any common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). That is Plaintiffs' burden of *proof*, not

just pleading: "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  And that obligation applies to questions of Article III standing no less than the merits.  *Olean*, 31 F.4th at 668.  Here, the detailed inquiries that would be necessary to winnow out the uninjured class members would predominate over any common questions.

*Third*, the District Court erred in failing to apply the rigorous analysis required under Rule 23(b)(3).  It inverted Plaintiffs' burden of proof to show that individualized questions of injury would not predominate.  It substituted an expert's jargon-filled ipse dixit for real scrutiny of how any cost decreases would have affected each app.  And it ignored that in any trial of this matter, Google would be entitled to put on the individualized evidence that Plaintiffs' expert sought to avoid.  This Court should reverse.

## ARGUMENT

## I.    The District Court erred in certifying an overwhelmingly uninjured damages class.

### A.    Certified damages classes must exclude the uninjured.

This Court has not yet answered a fundamental class-certification question: "whether every class member must demonstrate standing before a

court certifies a class." *Van v. LLR, Inc.*, 61 F.4th 1053, 1068 n.12 (9th Cir. 2023) (quoting *Olean,* 31 F.4th at 682 n.32 (in turn quoting *TransUnion,* 141 S. Ct. at 2208 n.8)). The District Court erred twice on that score: first in thinking that *Olean* resolved that open question, and second in reading the wrong answer into *Olean*. *See* ER-23 ("Google demands that each class member individually prove an injury before certification may be granted. The law provides otherwise."). While *Olean* did not expressly resolve the question, it identified the building blocks that—when assembled—confirm why each putative class member must show standing before certifications. This Court should resolve this issue and clarify that every member of a class certified under Rule 23(b)(3) must have standing.

1. *TransUnion* insisted that "[e]very class member must have Article III standing in order to recover individual damages." 141 S. Ct. at 2208; *see also id.* ("'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring))). But that decision addressed a final judgment awarding damages to absent class members—not the class-certification order itself. The Supreme Court thus

7

did not resolve "the distinct question whether every class member must demonstrate standing *before* a court certifies a class." *Id.* at 2208 n.4.

This Court also refrained from explicitly answering that question in *Olean*. Those plaintiffs proffered an expert's model purporting to show antitrust impact on the entire class. 31 F.4th at 682. The Court concluded that the model—if believed by the jury—"adequately demonstrated Article III standing at the class certification stage . . . , whether or not that was required." *Id.* So the Court did "not consider the [defendants'] argument that the possible presence of a large number of uninjured class members raises an Article III issue." *Id.*; *see also Van*, 61 F.4th at 1068 n.12 (recognizing that this Court's precedent has not resolved "whether every class member must demonstrate standing before a court certifies a class").

2.  Further, contrary to the District Court's conclusion, *Olean* recognized that a "plaintiff is required to establish the elements necessary to prove standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* at 682 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see also TransUnion*, 141 S. Ct. at 2208 (plaintiffs must maintain standing "at all stages" of a case). At class certification, the necessary manner and degree of evidence is, at a minimum,

8

proof by a preponderance of the admissible evidence. 31 F.4th at 665 ("plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."); *see also id.* (requiring admissible evidence). So before certifying a class, and thus exercising jurisdiction over the merits of the claims of absent class members, the district court must find by a preponderance of admissible evidence that it has that jurisdiction. *See Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (unnamed class members are not "part[ies] to the class-action litigation *before the class is certified*").

Next, *Olean* confirmed that in the analogous context of intervention by right, "each plaintiff must demonstrate Article III standing in order to seek additional money damages." 31 F.4th at 682 n.32 (citing *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)). Class actions and mandatory intervention are both procedures that "enabl[e] a federal court to adjudicate claims of multiple parties at once, instead of in separate suits . . . , leav[ing] the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality op.). In each case, additional plaintiffs are in some sense joined. These plaintiffs would need independent Article III standing

in an unjoined damages lawsuit. Nothing about the procedural mechanisms for considering their claims can dispense with that irreducible constitutional requirement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act."); *see also* Fed. R. Civ. P. 82 (instructing that the "rules do not extend . . . the [subject-matter] jurisdiction of the [United States] district courts").

*Olean*'s partial overruling of *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), only confirms that each *damages* class member requires standing. *Olean* took a scalpel rather than an axe to *Mazza*'s statement that "'no class may be certified that contains members lacking Article III standing.'" 31 F.4th at 682 n.32 (quoting *Mazza*, 666 F.3d at 594). The problem with *Mazza*'s statement was that it "does not apply when a court is certifying a class seeking *injunctive or other equitable relief*," i.e., under Rule 23(b)(2). *Id.* (emphasis added). But *Olean* did not disturb *Mazza* as to Rule 23(b)(3). *See id.* ("We do not overrule *Mazza* as to any other holding which remain good law."). That distinction is sound: a single plaintiff may seek an injunction that incidentally benefits others whether or not they would

10

have standing, but that same plaintiff could not compel a court to resolve damages claims that belong to others.

This Court thus should join the other appellate courts refusing to approve the certification of damages classes containing uninjured members. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."); *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision."); 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785.1 (3d ed.) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention.").

**B.  Even if the uninjured could be damages class members, individualized inquiries into injury here create a predominance problem.**

In any event, uninjured class members may—and in this case, would—destroy predominance under Rule 23(b)(3).  The District Court gestured at

this problem, but then waved it off by improperly conflating the lack of any constitutional injury with variations in damages calculations.

1.  *Olean* confirms that uninjured class members may pose a predominance problem.  "When individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the court determine whether individualized inquiries about such matters would predominate over common questions."  31 F.4th at 668.  "Because the Supreme Court has clarified that '[e]very class member must have Article III standing in order to recover individual damages,' Rule 23 also requires a district court to determine whether individualized inquiries into this standing issue would predominate over common questions."  *Id.* at 668 n.12; *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019) (standing for unnamed class members present a "powerful problem under Rule 23(b)(3)'s predominance factor); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (if a substantial number of class members "in fact suffered no injury," the "need to identify those individuals will predominate").

The common questions in *Olean* could predominate because—as that case arrived in this Court—the plaintiffs' evidence purported to resolve the question of *each* class member's standing simultaneously.  If that jury "found

12

that [the plaintiffs' expert's] model was reliable, then the [plaintiffs] would have succeeded in showing antitrust impact on a class-wide basis." 31 F.4th at 681. And vice versa. *Id.* So "[i]n neither case would the litigation raise individualized questions regarding which members of the [class] had suffered an injury." *Id.* The *Olean* plaintiffs' theory thus addressed each class member's standing at once without predominance-destroying individual inquiries into injury. That is not the situation here, where a proper inquiry into each class member's injury would require assessing whether the developer of each of nearly *three hundred thousand* apps purchased by an individual in fact would have passed along any savings it received from Google, despite contrary incentives like focal pricing. *See also infra* Part I.D.

2. The District Court skated over the predominance problems with uninjured class members in this case, contrary to *Olean*'s instruction. Despite acknowledging that uninjured members trigger a predominance analysis, ER-23, it did not actually engage in that required analysis.

Instead, the District Court conflated the need to "individually prove injury" with the need "to prove individualized damages," treating the latter as but a speed bump on the way to certification. ER-23; *see also* ER-25. But

13

that response misconstrues the Article III problem. The need to establish injury-in-fact on an individual basis is not a mere dispute over "'damage calculations.'" ER-25 (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1984 (9th Cir. 2010)).[1] Rather, Plaintiffs have to show that each class member was concretely injured *at all*. *See, e.g.*, *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 470 (9th Cir. 2023) (common policy of not paying overtime does not predominate over individualized question "whether the class members actually worked overtime"). That inquiry will be devilishly complex in a class addressing over two hundred seventy thousand apps.

### C. The problem of uninjured class members requires rigorous analysis.

What the District Court should have done is engage in "rigorous analysis" to determine whether common issues will predominate over

---

[1] In any event, the District Court erred in brushing off predominance problems with individualized damages. This Court's observation that "damage calculations alone cannot defeat certification," *Yokoyama*, 594 F.3d at 1094, merely recognizes that calculations under an appropriate formulaic model may not be burdensome. But it does not immunize burdensome individualized damages inquiries from the predominance inquiry. *See* Google Opening Br. 57–60; *see also Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003) ("Class treatment, however, may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate.").

individualized questions. *Olean*, 31 F.4th at 664; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (quoting *Amchem*, 521 U.S. at 615) (noting "the court's duty to take a 'close look' at whether common questions predominate over individual ones."). Key to that required analysis in this case is testing the predominance of individualized *injury* issues. Indeed, as one jurist has noted, a court's injury-in-fact analysis should be "particularly rigorous" at the certification stage "given the transformative nature of the class-certification decision." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 770 (5th Cir. 2020) (Oldham, J., concurring).

Three aspects of that rigorous analysis are particularly relevant here. First, that analysis must hold Plaintiffs to *their* burden of proving classwide injury under Rule 23(b)(3). Second, that analysis must address whether Plaintiffs' putative classwide proof accounts for heterogeneities that would leave class members uninjured. Third, the analysis must consider what a trial would actually look like, considering not just Plaintiffs' case but Defendants' evidence too.

Starting with the first, Plaintiffs bear the burden of proving—not just alleging—that their claims "in fact" can be litigated on a class-wide basis without the need for individualized mini-trials. *Comcast*, 569 U.S. at 33–34.

15

That proof is not Defendants' burden. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Nor is it a burden that Plaintiffs can satisfy with mere allegations. *Comcast*, 569 U.S. at 33–34 (requiring "evidentiary proof" that elements of Rule 23 are satisfied). Plaintiffs' evidence "must meet all the usual requirements of admissibility" including Rule 702. *Olean*, 31 F.4th at 665.

Turning to the second, rigorous analysis must consider whether Plaintiffs' evidence establishes that they can prove injury on a classwide basis. As here, Plaintiffs often purport to meet their burden with expert analysis asserting generalized marketwide effects while papering over variables that reveal many class members are uninjured. The proper analysis pierces the veil of jargon to scrutinize whether any proof of injury applies to the whole class. *See* Google Opening Br. 27–28; *see also, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 252–55 (D.C. Cir. 2013) (vacating a certification order where the plaintiffs' expert evidence predicted that certain plaintiffs had been injured by a price-fixing conspiracy even though they operated under fixed-price contracts and were not exposed to overcharges caused by the conspiracy) (cited with approval at *Olean*, 31 F.4th at 666 n.9); *Blades v. Monsanto Co.*, 400 F.3d 562, 570, 574

(8th Cir. 2005) (rejecting damages model that assumed a "common, hypothetical market" and "presume[d] class-wide [*i.e.*, uniform] impact without any consideration of whether the markets . . . at issue [] actually operated in such a manner so as to justify that presumption"); *Bell Atl.*, 339 F.3d at 307 (rejecting a model that "makes no effort to adjust for the variegated nature" of the market as a basis for class certification).

And third, rigorous analysis entails attention to what a real-life trial would look like. "[C]ases are not tried on the evidence of one party." *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 986 (8th Cir. 2021). So before certifying a class, a district court must "account for issues implicated by the asserted claims *and defenses*." *Prantil v. Arkema Inc.*, 986 F.3d 570, 578 (5th Cir. 2021) (emphasis added). Ignoring a defendant's individualized evidence of no injury is fatal to a class certification decision. *See, e.g., id.* at 579 (vacating class certification because district court failed to consider how individualized issues in both claims and defenses would actually be tried); *see also Johannessohn*, 9 F.4th at 986 (affirming denial of certification because defendant "would be entitled to present contrary evidence" that plaintiff's purported proof of injury does not apply to certain class members).

17

**D.    The required rigorous analysis reveals that this class is rife with uninjured members.**

The District Court erred in all three of those aspects of its analysis and so overlooked the fatal problem of uninjured class members here.

First, the District Court failed to hold *Plaintiffs* to their burden of proof on classwide injury.  Despite acknowledging that "a class may not be certified when it would be so overinclusive that substantial numbers of uninjured people would populate it," the District Court held that "*Google* has not shown this is a concern here."  ER-23.  But it is *Plaintiffs'* burden to show that they can prove injury on a classwide basis.  *See supra* at 15–16; Google Opening Br. 35–36.

Second, the District Court gave short shrift to the variables lurking within Plaintiffs' purported classwide proof, variables that eliminate injury for many or most class members.  Plaintiffs' theory of injury (as expressed by their expert) relies on app developers passing lower costs onto customers. But the expert report simply *assumed* that all the app developers would have lowered their costs but for the fees and then used this assumption as proof of classwide injury.  That assumption was demonstrably wrong as there were powerful reasons why those developers would not have passed on cost

decreases in many cases. *See* ER-28 (acknowledging that there are "individualized questions on impact"). To name just one, developers in nearly all cases prefer to maintain a price ending in 99 cents. *See* Google Opening Br. 8. For such developers, even a substantial cost decrease will not lead them to lower customer prices unless the decrease would allow them to reach the next focal price. *See In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *8 (N.D. Cal. Mar. 29, 2022) (excluding antitrust damages expert for failing to reckon with focal-point pricing in Apple App Store). The District Court had to make this assessment at the class certification stage rather than simply accepting the expert's conclusory assumption as proof of classwide injury.

Third, the District Court ignored the rebuttal evidence that Google "would be entitled to present." *Johannessohn*, 9 F.4th at 986. The rebuttal evidence includes the developers who would testify (as at least three already have) directly to the operative question: that they would *not* have passed through any cost decreases. *See* Google Opening Br. 30–31. The defense evidence that should have been considered at class cert also evidence from a natural experiment: during a previous reduction of services fees, many of the same developers here did *not* pass through those cost decreases. *See* ER-

270.  Turning a blind eye to that evidence flouted the necessary rigorous analysis.

So even if *any* class member had Article III standing here, many would not, and that alone should have precluded class certification.  That glut of uninjured class members precludes a damages class, and in any event the individualized efforts needed to separate them from any actually affected class members would destroy predominance under Rule 23(b)(3).

## II.  Laissez-faire analysis of uninjured class members hurts our businesses and economy.

An appropriately rigorous analysis is sorely needed to combat the burdens that class action litigation on behalf of uninjured class members imposes on the business community and the public.

Class action litigation costs in the United States are eye-popping.  In 2022, those costs reached a record $3.5 billion.  *See* 2023 Carlton Fields Class Action Survey, at 4–6 (2023), available at https://ClassActionSurvey.com. Defending *even one* class action can cost a business over $100 million.  *See, e.g.*, Adeola Adele, *Dukes v. Wal-Mart: Implications for Employment Practices Liability Insurance* 1 (July 2011).  And those class actions can persist for years, accruing legal fees, with no resolution of class certification—let alone the

dispute as a whole. *See* U.S. Chamber Institute for Legal Reform, *Do Class Actions Benefit Class Members? An Empirical Analysis of Class Actions*, at 1, 5 (Dec. 2013), available at http://bit.ly/3rrHd29 ("Approximately 14 percent of all class action cases remained pending four years after they were filed, without resolution or even a determination of whether the case could go forward on a class-wide basis.").

Certifying a class—and especially a class bloated with the uninjured—creates extraordinary exposure and thus immense pressure on defendants to settle even meritless cases. Judge Friendly aptly termed these "blackmail settlements." Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973). As the Supreme Court explained, "[c]ertification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (noting "the risk of 'in terrorem' settlements that class actions entail"). Over the last five

years, most class actions have resulted in settlements—including over 73% of class actions in 2021. *See* 2023 Carlton Fields Class Action Survey 22.

Judicial recommitment to rigorous enforcement of both Article III and Rule 23 at the class-certification stage would help. These legal requirements, if properly enforced, ensure that parties do not waste time and money—and defendants do not face undue settlement pressure—litigating a certified class action through trial only for a court to conclude at final judgment that uninjured class members have run rampant. If the District Court's breezy approach to uninjured class members is affirmed as the law of this Circuit, however, then that immense pressure to settle meritless class actions will continue to balloon regardless of whether plaintiffs have suffered any actual harm. That coercion undermines the rule of law. It also hurts the entire economy, because the attorney's fees and costs accrued in defending and settling overbroad class actions are ultimately absorbed by consumers and employees through higher prices and lower wages.

## CONCLUSION

For these reasons and those in Google's brief, the Court should reverse the order granting class certification.

22

Dated: June 15, 2023                Respectfully submitted,

                                    */s/ Brian D. Schmalzbach*
                                    Brian D. Schmalzbach
                                    MCGUIREWOODS LLP
                                    Gateway Plaza
                                    800 East Canal Street
                                    Richmond, VA 23219
                                    Telephone: (804) 775-4746
                                    bschmalzbach@mcguirewoods.com

                                    *Counsel for Amici Curiae*

                                    Jennifer B. Dickey
                                    Tyler S. Badgley
                                    U.S. CHAMBER LITIGATION CENTER
                                    1615 H Street NW
                                    Washington, DC 20062

                                    *Counsel for Amicus Curiae*
                                    *Chamber of Commerce*
                                    *of the United States of America*

                                    H. Sherman Joyce
                                    Lauren Sheets Jarrell
                                    AMERICAN TORT REFORM ASSOCIATION
                                    1101 Connecticut Avenue, NW
                                    Suite 400
                                    Washington, DC 20036

                                    *Counsel for Amicus Curiae*
                                    *American Tort Reform Association*

                                    Liz Dougherty
                                    BUSINESS ROUNDTABLE
                                    1000 Maine Avenue SW
                                    Washington, DC  20024

23

*Counsel for Amicus Curiae*
*Business Roundtable*

James C. Stansel
Melissa B. Kimmel
THE PHARMACEUTICAL RESEARCH AND
MANUFACTURERS OF AMERICA
950 F Street, NW
Suite 300
Washington, DC 20004

*Counsel for Amicus Curiae*
*The Pharmaceutical Research and*
*Manufacturers of America*

24

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,504 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point size.


*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach

25

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2023, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the system.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach