23-15285

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

❖

In re: GOOGLE PLAY STORE ANTITRUST LITIGATION

MARY CARR, Individually and on behalf of all others similarly situated; DIANNE BENTLEY; JENNIFER GRACE; ADAN MOYA; CORESA TRIMBLE; ROBERT WING; BRIAN MCNAMARA, 20-7361 JD; KONDOMAR HERRERA; PURE SWEAT BASKETBALL, INC.; ZACHARY PALMER; PAUL KERIVAN; DANIEL EGERTER; FRANCIS MACAULAY; DANIEL CARROLL; BRENDA KEEGAN; ALISON KAVULAK; CONSUMER PLAINTIFFS; MATTHEW ATKINSON; SERINA MOGLIA; LEIGH SILVER; ALEX IWAMOTO,

*Plaintiffs-Appellees,*

—v.—

GOOGLE LLC; GOOGLE IRELAND LIMITED; GOOGLE COMMERCE LIMITED; GOOGLE ASIA PACIFIC PTE. LIMITED; GOOGLE PAYMENT CORP.,

*Defendants-Appellants.*

ON INTERLOCUTORY APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 21-MD-2981; NO. 3:20-CV-05761

## BRIEF OF *AMICI CURIAE* COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION AND INTERNATIONAL ASSOCIATION OF DEFENSE COUNSEL IN SUPPORT OF DEFENDANTS-APPELLANTS SEEKING REVERSAL

PHILIP S. GOLDBERG, ESQ.
SHOOK HARDY & BACON, LLP
1800 K Street, N.W., Suite 1000
Washington, DC 20006
(202) 783-8400
pgoldberg@shb.com
*Counsel for the International
  Association of Defense Counsel*

STEPHANIE JOYCE, ESQ.
COMPUTER & COMMUNICATIONS
  INDUSTRY ASSOCIATION
25 Massachusetts Avenue NW,
  Suite 300C
Washington, DC 20001
(202) 783-0070
stephaniejoyce@ccianet.org

*Attorneys for Amici Curiae*

June 15, 2023

## RULE 26.1 DISCLOSURE STATEMENT

These representations are made in order that the judges of this Court may evaluate possible disqualification of recusal.

Computer & Communications Industry Association ("CCIA") is a trade association operating as a 501(c)(6) non-profit, non-stock corporation organized under the laws of Virginia. CCIA has no parent corporation and no publicly held corporation owns 10% or more of its stock.

The International Association of Defense Counsel ("IADC") is a trade association operating as a 501(c)(3) non-profit, non-stock corporation organized under the laws of Illinois. IADC has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

PAGE

RULE 26.1 DISCLOSURE STATEMENT ........................................... i

TABLE OF AUTHORITIES ....................................................... iii

INTEREST OF *AMICI CURIAE* .................................................. 1

STATEMENT OF *AMICI CURIAE* ................................................. 2

STANDARD OF REVIEW ........................................................... 2

SUMMARY OF ARGUMENT ......................................................... 3

ARGUMENT ...................................................................... 6

    I.    THE ORDER FAILS TO ENGAGE IN THE REQUISITE RULE 23(b) ANALYSIS FOR ENSURING THAT CLASS MEMBERS SUFFERED INJURY ................................. 6

    II.   THE ORDER RAISES SERIOUS ARTICLE III AND DUE PROCESS CONCERNS ............................................. 11

    III.  LAX RULE 23(b) ANALYSIS INVITES A CRUSHING WEIGHT OF LITIGATION AND COERCED SETTLEMENTS THAT WILL HINDER COMPANIES' ABILITY TO SERVE AND INNOVATE .......................... 14

CONCLUSION .................................................................... 18

CERTIFICATE OF COMPLIANCE .................................................. 18

CERTIFICATE OF SERVICE ...................................................... 19

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*In re Aluminum Warehousing Antitrust Litig.*,
  336 F.R.D. 5 (S.D.N.Y. 2020) ............................................... 8

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................ 12

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ........................................................ 14

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) .......................................... *passim*

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..................................................... 5, 15

*Bowen v. Target Corp.*,
  No. 16-CV-2587, 2021 WL 4860690 (C.D. Cal. June 24, 2021) ........ 8

*Bowerman v. Field Asset Servs., Inc.*,
  39 F.4th 652 (9th Cir. 2022) ............................................... 4

*Bowerman v. Field Asset Servs., Inc.*,
  60 F.4th 459 (9th Cir. 2022) ...................................... 4 n.3, 7

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.*,
  288 F.3d 1012 (7th Cir. 2002) ............................................ 14

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ...................................................... 4, 9

*Cordoba v. DirecTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ................................... 9, 12, 15

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ....................................................... 12

*In re Deepwater Horizon*,
  732 F.3d 326 (5th Cir. 2013) .......................................... 13, 16

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) .............................................. 13

PAGE(S)

*Flecha v. Medicredit, Inc.*,
    946 F.3d 762 (5th Cir. 2020) ................................................. 11

*Halvorson v. Auto-Owners Ins. Co.*,
    718 F.3d 773 (8th Cir. 2013) ................................................. 12

*Krakauer v. Dish Network LLC*,
    925 F.3d 643 (4th Cir. 2019) ............................................ 9, 11

*In re Lamictal Direct Purchaser Antitrust Litig.*,
    957 F.3d 184 (3d Cir. 2020) .................................................. 8

*In re Marriott Int'l, Inc.*,
    341 F.R.D. 128 (D. Md. 2022) ................................................ 8

*Med. & Chiropractic Clinic, Inc. v. Oppenheim*,
    981 F.3d 983 (11th Cir. 2020)............................................... 10

*Microsoft Corp. v. Baker*,
    137 S. Ct. 1702 (2017) ...................................................... 14

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022)................................... 4, 7, 16, 17

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ................................................. 9

*Parker v. Time Warner Entm't Co., L.P.*,
    331 F.3d 13 (2d Cir. 2003) .................................................. 15

*Philip Morris USA Inc. v. Scott*,
    561 U.S. 1301 (2010) ....................................................... 13

*In re Pre-Filled Propane Tank Antitrust Litig.*,
    No. 14-MD-2567, 2021 WL 5632089 (W.D. Mo. Nov. 9, 2021)......... 8

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    934 F.3d 619 (D.C. Cir. 2019) ........................................ 6, 8, 10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)........................................................ 11

*In re Thalomid & Revlimid Antitrust Litig.*,
    No. 14-CV-6997, 2018 WL 6573118 (D.N.J. Oct. 30, 2018)............. 8

PAGE(S)

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ................................................ 11, 12

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016) ............................................... 5, 6, 16

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .......................................... 3, 4, 9, 13

**Rules**

Fed. R. App. P. 29 ..................................................... 1

Fed. R. Civ. P. 23 ................................................*passim*

Fed. R. Civ. P. 23(b) ............................................ 4, 14, 16

Fed. R. Civ. P. 23(b)(3) ........................................... 7, 8, 11

**Other Authorities**

2022 Class Action Survey, Carlton Fields (11th ed. 2022),
    https://www.carltonfields.com/insights/class-action-survey ............ 16

Mark Fenwick et al., *Regulation Tomorrow: What Happens When
    Technology is Faster than the Law?*, 6 Am. U. Bus. L. Rev. 561
    (2017) ............................................................. 17

Sheila B. Scheuerman, *Due Process Forgotten: The Problem of
    Statutory Damages and Class Actions*, 74 Mo. L. Rev. 103
    (2009) ............................................................. 15

## INTEREST OF *AMICI CURIAE*

The *amici curiae* are trade and professional associations. They submit this brief pursuant to Fed. R. App. P. 29 in support of Appellants Google LLC, Google Ireland Limited, Google Commerce Limited, Google Asia Pacific PTE. Limited, and Google Payment Corp. (collectively, "Google") to urge the Court to reverse the District Court's decision, which would have far-reaching consequences for companies with innovative business models (often based in the Ninth Circuit) that scale quickly and have a global reach. Such companies are prime targets for plaintiffs seeking to bring expansive class actions that can have debilitating liability exposure and are disproportionally prejudiced when a large swath of a certified class is comprised of uninjured persons.

All parties to this appeal have consented to the filing of this brief *amici curiae*.

CCIA is an international, not-for-profit trade association representing a broad cross-section of communications and technology firms. For more than 50 years, CCIA has promoted open markets, open systems, and open networks. CCIA members employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars in productivity to the global economy.

A list of CCIA members is available at https://www.ccianet.org/members.

The International Association of Defense Counsel ("IADC") is an invitation-only, peer-reviewed membership organization of about 2,500 in-house and outside defense attorneys and insurance executives. IADC is dedicated to the just and efficient administration of civil justice and improvement of the civil justice system. IADC supports a justice system in which plaintiffs are fairly compensated for genuine injuries, responsible defendants are held liable for appropriate damages, and non-responsible defendants are exonerated without unreasonable cost.

The list of IADC's Board Members, Leadership, and Staff is available at https://www.iadclaw.org/about/about-the-association/.

## STATEMENT OF *AMICI CURIAE*

This brief was authored entirely by the undersigned counsel and was funded entirely by the *amici curiae* on whose behalf this brief was created. No person or party other than these *amici curiae* contributed money to the creation, filing, or service of this brief. Defendant-Appellant Google LLC is a member of CCIA but has not provided or promised any financial support to either of these *amici* organizations for this brief.

## STANDARD OF REVIEW

The *amici* concur with and adopt the standard of review set forth in the initial brief filed by Google.

## SUMMARY OF ARGUMENT

The Court should reverse the District Court's decision,[1] which contravenes critical Rule 23, Article III, and due process protections, paving the way for artificially enlarged class actions engorged with uninjured class members. The District Court granted Plaintiffs'-Appellees' motion for class certification "in main part," Order at 1,[2] though it fully acknowledged that they "were not always crystal clear" as to why all, or nearly all, class members suffered injury as a result of the alleged conduct. *Id*. at 17. As such, the Order does not demonstrate that the District Court applied sufficiently rigorous Rule 23 analysis in order to ensure that a significant portion of the class has suffered no injury and thus lacks Article III standing. This failing warrants reversal.

The U.S. Supreme Court has stated clearly that it requires movants to "affirmatively demonstrate" that Rule 23's requirements are satisfied before any class is certified. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This requirement applies equally even if that analysis "necessarily overlaps" with the

---

[1] Order Re: Consumer Plaintiffs' Class Certification Motion and Defendants' Motion to Exclude Expert Testimony (Nov. 28, 2022) (ECF 1-2 (Addendum)), hereinafter the "Order".

[2] The certified class consists of all persons in 12 U.S. States, Puerto Rico, American Samoa, Guam, the Northern Mariana Islands, and the U.S. Virgin Islands "who paid for an app through the Google Play Store or paid for in-app digital content (including subscriptions or ad-free versions of apps) through Google Play Billing on or after August 16, 2016, to the present." Order at 27.

"merits," *id*., or is "enmeshed in the factual and legal issues comprising plaintiff's cause of action," *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (internal quotation marks omitted).

Last year, this Circuit applied *Comcast*, *inter alia*, to hold that "'if the plaintiffs cannot prove that damages *resulted* from the defendant's conduct, then the plaintiffs cannot establish predominance'" under Rule 23. *Bowerman v. Field Asset Servs*., *Inc*., 39 F.4th 652, 662 (9th Cir. 2022) (quoting *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (reversing order granting summary judgment, class certification, and attorneys' fees) (emphasis in original).[3] The Court explained that the question for a district court is not whether the calculation of damages requires individualized inquiry, but rather to ensure "the *existence* of damages in the first place." *Id*. (emphasis in original). Therefore, the District Court here was required to perform "rigorous analysis" as to whether the putative class suffered cognizable, common injury under FRCP 23(b). *Olean Wholesale Grocery Coop.,*

---

[3] The Court subsequently denied rehearing and superseded its opinion, *Bowerman v. Field Asset Servs*., *Inc*., 60 F.4th 459 (9th Cir. 2022), continuing to rely on the standard it had set forth in *Castillo*, in which class certification was denied on the ground that "common issues about the lawfulness of those formulas were outweighed by 'complicated' individualized questions" of injury. *Id*. at 471 (quoting *Castillo*, 980 F.3d at 733). The Court also continued to expect plaintiffs to demonstrate "existence of an injury" common to the class. *Id*. at 471.

*Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc).[4] The District Court did not, however, perform that analysis and yet still certified the class.

Waiting until trial to ensure that the class is not engorged with uninjured members is not a reasonable application of binding authority. *See*, *e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 464 (2016) (Roberts, C.J., concurring) ("I am not convinced that the District Court will be able to devise a means of distributing the aggregate award only to injured class members."). In fact, "when damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011). "Faced with even a small chance of devastating loss, defendants will be pressured into settling questionable claims." *Id*. In brief, the inclusion of a significant number of uninjured class members undermines the charge and purpose of the judicial system.

That risk and pressure to settle—regardless of the merits—is only amplified where, as here, the claims involve innovative technologies and products that must scale quickly in order to reach every corner of society. Unless district courts employ credible models and direct evidence to make class-wide determinations, they will

---

[4] CCIA filed an amicus brief in support of StarKist Company's Petition for Writ of Certiorari arguing that insufficient consideration was given to whether a substantial proportion of the class had suffered no injury.

inevitably pull in larger and larger swaths of uninjured class members as innovative technologies continue to proliferate and class actions become more expansive.

For the reasons discussed herein, the *amici* support reversal of the Order. Deferring the uninjured class-member question until trial all but guarantees that defendants will be stripped of important due process rights, particularly when there is usually no administratively feasible way to weed out at trial what can easily be hundreds or thousands of uninjured class members. *See Tyson Foods*, 577 U.S. at 451; *Asacol*, 907 F.3d at 58; *Rail Freight*, 934 F.3d at 627. To prevent a further instance of this injustice, *amici* urge the Court to reverse the Order and require the District Court to engage in appropriate Rule 23 analysis.

## **ARGUMENT**

### I. THE ORDER FAILS TO ENGAGE IN THE REQUISITE RULE 23(b) ANALYSIS FOR ENSURING THAT CLASS MEMBERS SUFFERED INJURY.

The District Court acknowledged that (1) "serious questions" had arisen as to whether Plaintiffs-Appellees had demonstrated that a sufficiently large proportion of the class had suffered common injury, and (2) "[i]t is true that a class may not be certified when it would be so overinclusive that substantial numbers of uninjured people would populate it." Order at 21 (citing *Olean*, 31 F.4th at 669). It nonetheless satisfied itself that the expert testimony offered by Plaintiffs-Appellees used a methodology that "***can*** be used by every class member to establish antitrust impact."

Order at 21 (emphasis added). However, the District Court did not find that the methodology **had actually established** a common antitrust impact. Waving aside the issue with the statement "predominance does not demand perfection," Order at 20, the court failed to accord appropriate weight to *Bowerman*'s instruction that class movants must demonstrate the "existence of an injury." 60 F.4th at 469.

Rule 23 is not satisfied where an appreciable minority[5] of class members suffered no demonstrable injury. The First Circuit's unanimous decision in *Asacol* held that a proposed class in which "approximately ten percent of the class had not suffered any injury attributable to defendants' allegedly anticompetitive behavior" did not satisfy Rule 23(b)(3) because "[t]he need to identify those individuals will predominate and render an adjudication unmanageable." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 45 (1st Cir. 2018) (emphasis added). As the First Circuit explained, "this is not a case in which a very small absolute number of class members might be picked off in a manageable, individualized process at or before trial." *Id.* at 53-54. Rather, there were "apparently thousands who in fact suffered no injury," and the plaintiffs failed to "offer a reasonable and workable plan" to deal with the

---

[5] In *Olean*, this Court "reject[ed]" a "de minimis" threshold for determining whether too many putative class members have suffered no injury. 31 F.4th at 669. The permissible proportion of uninjured class members thus remains an unresolved question that should be squarely addressed here and given clear, close boundaries.

uninjured class members at trial "in a manner that is protective of the defendant's constitutional rights and does not require individual issues to predominate." *Id.*

Decided in 2018, *Asacol* quickly became the leading case on this issue, followed by district courts across the country, including within the Ninth Circuit. *See*, *e.g.*, *In re Marriott Int'l, Inc.*, 341 F.R.D. 128, 141 (D. Md. 2022); *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-MD-2567, 2021 WL 5632089, at *9 (W.D. Mo. Nov. 9, 2021); *Bowen v. Target Corp.*, No. 16-CV-2587, 2021 WL 4860690, at *10-11 & n.3 (C.D. Cal. June 24, 2021); *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 45-51 (S.D.N.Y. 2020); *In re Thalomid & Revlimid Antitrust Litig.*, No. 14-CV-6997, 2018 WL 6573118, at *13 (D.N.J. Oct. 30, 2018).

Indeed, in 2019, the D.C. Circuit's unanimous decision in *Rail Freight* repeatedly cited *Asacol* in holding that a proposed class failed to satisfy Rule 23(b)(3) where 12.7% of the members were uninjured. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 623-24 (D.C. Cir. 2019); *see also id.* at 625 (suggesting "5% to 6% constitutes the outer limits of a de minimis number").

Beyond the First Circuit and D.C. Circuit, other circuits—including the Third, Fourth, Seventh, and Eleventh—have similarly recognized the imperative to resolve the issue of uninjured class members at the class-certification stage. *See In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 192-194 (3d Cir. 2020) (vacating class certification because district court failed to resolve conflicting expert

opinions about whether "up to one-third of the entire class" consisted of uninjured members, "even though [that issue] touches on the merits"); *Cordoba v. DirecTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) (vacating class certification because district court did not consider "before certification whether the individualized issue of standing will predominate . . . when it appears that a large portion of the class does not have standing"); *Oshana v. Coca-Cola Co*., 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of class certification when "[c]ountless members of [the] putative class could not show any damage"); *cf. Krakauer v. Dish Network LLC*, 925 F.3d 643, 658 (4th Cir. 2019) (analyzing *Asacol* but finding "there is simply not a large number of uninjured persons included within the plaintiffs' class").

As the Supreme Court has repeatedly emphasized, district courts must faithfully enforce Rule 23, even when a disputed class-certification issue "necessarily overlaps" with the "merits." *Dukes*, 564 U.S. at 350. After all, "Rule 23 does not set forth a mere pleading standard." *Id.* Rather, a class-action plaintiff "must affirmatively demonstrate his compliance with the Rule." *Id.* And a district court must conduct a "rigorous analysis," which "will frequently 'entail overlap with the merits of the plaintiff's underlying claim'" and be "'enmeshed in the factual and legal issues comprising plaintiff's cause of action.'" *Comcast*, 569 U.S. at 33-34 (quoting *Dukes*, 564 U.S. at 351)); *see id*. at 34 ("By refusing to entertain arguments against respondents' damages model that bore on the propriety of class certification,

simply because those arguments would also be pertinent to the merits determination, the Court of Appeals ran afoul of our precedents requiring precisely that inquiry.").

In addition, as the D.C. Circuit aptly explained in *Rail Freight*, district courts may not "defer questions about the number and nature of any individualized inquiries that might be necessary to establish liability."  934 F.3d at 626.  Resolving such questions before a proposed class is certified is "part-and-parcel of the 'hard look' required by *Walmart* and *Comcast*."  *Id.*; *see also Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 992 (11th Cir. 2020) ("Rule 23 makes clear that the district court in which a class action is filed operates as a gatekeeper").  No such "hard look" is evidenced in the order under review here.

The failure below to ensure that the class had indeed suffered a common injury is also a matter of administrative manageability at trial.  To determine whether a class action will be manageable at trial, "the district court must at the time of certification offer a reasonable and workable plan for how that opportunity will be provided in a manner that is protective of the defendant's constitutional rights and does not cause individual inquiries to overwhelm common issues."  *Asacol*, 907 F.3d at 58; *see also Rail Freight*, 934 F.3d at 627 ("In *Asacol*, the First Circuit noted the absence of even a single case 'allowing, under Rule 23, a trial in which thousands of class members testify.' That Court declined to create 'the first such case.'  So do we." (citations omitted)).

10

## II.   THE ORDER RAISES SERIOUS ARTICLE III AND DUE PROCESS CONCERNS.

Whether a class member has been injured is not only a necessary element of Rule 23 analysis (antitrust impact in this case), it also implicates Article III standing. *See Krakauer*, 925 F.3d at 652 (observing the uninjured class-member "question can be seen as implicating either the jurisdiction of the court under Article III or the procedural issues embedded within Rule 23's requirements for class certification"); *Flecha v. Medicredit, Inc*., 946 F.3d 762, 769 (5th Cir. 2020) (vacating class certification in connection with the "antecedent" Rule 23(b)(3) requirement, then questioning "whether the class additionally fails under Article III" because "[c]ountless unnamed class members lack standing"). In addition, "[t]he extent to which class treatment may constitutionally reduce the normal requirements of due process is an important question."). The District Court failed to grapple with this Article III issue, which *Olean* did not reach but Google had raised below, providing an opportunity for the Court now to review the question of uninjured class members as against bedrock principles of constitutional standing.

One of the most fundamental requirements for seeking redress in federal court is the "'irreducible constitutional minimum' of standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[U]nder Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 141 S.

11

Ct. 2190, 2203 (2021). "Importantly, this Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id*. at 2205 (quoting *Spokeo*, 578 U.S. at 341). "As the Court emphasized in *Spokeo*, 'Article III standing requires a concrete injury even in the context of a statutory violation.'" *Id*.

Nothing about a class action changes these bedrock principles: "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 141 S. Ct. at 2208 (citing *Tyson Foods*, 577 U.S. at 466 (Roberts, C.J., concurring)); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints."); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("[S]tanding is not dispensed in gross." (citation omitted)).

As many circuits have recognized, "[i]n order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision." *Halvorson v. Auto-Owners Ins. Co*., 718 F.3d 773, 778-79 (8th Cir. 2013) (emphasis added); *accord Cordoba*, 942 F.3d at 1277 ("[T]here is a meaningful difference between a class with a few members who might not have suffered an injury traceable to the defendants and a class with potentially many more, even a majority, who do not have Article III

standing."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."); *In re Deepwater Horizon*, 732 F.3d 326, 341-42 (5th Cir. 2013) ("By including claimants in the class definition that lack colorable claims, a court . . . ignores the standing requirement of Article III and creates a substantive right where none existed before.").

Further, the lack of common injury invites infringement of defendants' right to due process. In *Dukes*, the Supreme Court made clear that defendants must "have the right to raise any individual affirmative defenses that it may have" at trial, and that the Ninth Circuit could not simply adopt a "Trial by Formula" approach. 564 U.S. at 367. In other words, a "class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." *Id*.; *see also Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1303 (2010) (recognizing due-process violation when "individual plaintiffs who could not recover had they sued separately can recover only because their claims were aggregated with others through the procedural device of the class action").

As in *Asacol*, this case involves "more than a statutory defense; rather, we have a challenge to a plaintiff's ability to prove an element of liability" and Article III standing. 907 F.3d at 53. "The fact that plaintiffs seek class certification provides no occasion for jettisoning the rules of evidence and procedure, the Seventh

Amendment, or the dictate of the Rules Enabling Act, 28 U.S.C. § 2072(b)." *Id.* (citing *Tyson*, 577 U.S. at 458 (class actions do not give "plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action")). "Tempting as it is to alter doctrine in order to facilitate class treatment, judges must resist so that all parties' legal rights may be respected." *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1020 (7th Cir. 2002).

The District Court's dismissive approach to class injury thus raises constitutional concerns that independently warrant reversal of the Order.

## III. LAX RULE 23(b) ANALYSIS INVITES A CRUSHING WEIGHT OF LITIGATION AND COERCED SETTLEMENTS THAT WILL HINDER COMPANIES' ABILITY TO SERVE AND INNOVATE.

On top of the core constitutional considerations at issue, "[c]ertification of the class is often, if not usually, the prelude to a substantial settlement by the defendant because the costs and risks of litigating further are so high." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 485 (2013) (Scalia, J., dissenting). And "plaintiffs with weak merits claims may readily assume that risk, mindful that class certification often leads to a hefty settlement." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1713 (2017).

This concern is particularly acute in cases like this where plaintiffs rely on aggregate damages while leaving unresolved questions about how many putative

class members suffered no injury. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) ("[W]hen damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable. Faced with even a small chance of devastating loss, defendants will be pressured into settling questionable claims."); *Cordoba*, 942 F.3d at 1276 ("Given the 'in terrorem character of a class action,' a class defined so as to improperly include uninjured class members increases the potential liability for the defendant and induces more pressure to settle the case, regardless of the merits." (internal citation omitted)).

Moreover, "[w]hen combined with the procedural device of the class action, aggregated statutory damages claims can result in absurd liability exposure in the hundreds of millions—or even billions—of dollars on behalf of a class whose actual damages are often nonexistent." Sheila B. Scheuerman, *Due Process Forgotten: The Problem of Statutory Damages and Class Actions*, 74 Mo. L. Rev. 103, 104 (2009); *see Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) (discussing due process concerns "from the effects of combining a statutory scheme that imposes minimum statutory damages awards" with "the class action mechanism that aggregates many claims"). When Rule 23 is misapplied in this way, the liability exposure has no correlation to any actual damages suffered by the class.

Given that most class actions never make it to trial, defendants in these cases will be left paying potentially massive, outsized settlements to classes filled with uninjured class members. *See Olean*, 31 F.4th at 685-86 (Lee, J., dissenting) (recognizing that by not resolving the "dueling experts' differing opinions" until trial "that day will likely never come to pass because class action cases almost always settle once a court certifies a class" (internal citation omitted)). And just as a "jury's damages award goes only to injured class members," *Tyson Foods*, 577 U.S. at 466, the same applies to class settlements. *See*, *e.g.*, *In re Deepwater Horizon*, 732 F.3d at 341-42 ("Allowing recovery from the settlement fund by those who have no case and cannot state a claim, the court acts *ultra vires*.").

Consistent application of rigorous Rule 23(b) analysis is more critical than ever given the continued increase in class actions and the exorbitant costs of defending them. Class-action defense spending grew a record-breaking 16% in 2021, crossing the $3 billion threshold for the first time, and is expected to rise again in 2022. *See* 2022 Class Action Survey, Carlton Fields at 6-7 (11th ed. 2022), https://www.carltonfields.com/insights/class-action-survey. This increase in defense spending relates to an estimated 27% increase in class actions in 2022 for large companies—the highest number of both ongoing and total matters in over a decade. *Id*. at 4.

If the Court permits the lax analysis in the Order to stand, plaintiffs will flock to the nation's largest circuit to file massive and inflated class actions knowing that they can "extract settlements." *Olean*, 31 F.4th at 691 (Lee, J., dissenting). And this problem will disproportionally subject innovative tech companies (often based in the Ninth Circuit) that scale quickly and reach nearly every facet of society to enormous exposure. *See* Mark Fenwick *et al.*, *Regulation Tomorrow: What Happens When Technology is Faster than the Law?*, 6 Am. U. Bus. L. Rev. 561, 563, 572 (2017) (cautioning against overregulation that "stifles or distorts technological development" as "disruptive technologies arrive more frequently and at a faster pace")).

In Sections I. and II. above, the *amici* show that Rule 23 precedent and binding Article III authority demonstrate that class movants must demonstrate that a common, concrete, and apparent injury permeates the proposed class. In addition to that showing, *amici* bring their concerns about the financial and developmental impact that failure to adhere to stringent class analysis will visit upon American corporations of every size. The grave and inevitable losses that unchecked class litigation will have on the nation's commerce are further grounds to reverse the Order.

## CONCLUSION

For all these reasons, in addition to those set forth in Defendants'-Appellants' merits brief, the Court should reverse the District Court's order granting class certification.

By: /s/Philip S. Goldberg
Philip S. Goldberg, Esq.
SHOOK HARDY & BACON, LLP
1800 K Street, N.W., Suite 1000
Washington, DC 20006
Tel. 202.783.8400
pgoldberg@shb.com

*Counsel for the International
Association of Defense Counsel*

By: /s/Stephanie A. Joyce
Stephanie A. Joyce, Esq.
*Counsel of Record*
COMPUTER & COMMUNICATIONS
 INDUSTRY ASSOCIATION
25 Massachusetts Avenue, N.W., Suite 300C
Washington, DC 20001
Tel. 202.783.0070
stephaniejoyce@ccianet.org

Dated: June 15, 2023

## CERTIFICATE OF COMPLIANCE

In compliance with Fed. R. App. P. 29(a)(4), I certify that, according to the word-count function of Microsoft Word, the foregoing brief *Amici Curiae* contains 4073 words, which is less than one-half the number of words that Fed. R. App. P. 32(a)(7) generally affords to a party for its principal brief.

/s/Stephanie A. Joyce
Stephanie A. Joyce, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 15, 2023, the foregoing brief *Amici Curiae* was filed with the Clerk of the U.S. Court of Appeals for the Ninth Circuit via CM/ECF. I further certify that the foregoing brief *Amici Curiae* was served electronically via CM/ECF on all parties' counsel who have appeared and are registered in the CM/ECF system.

/s/Stephanie A. Joyce
Stephanie A. Joyce, Esq.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-15285

I am the attorney or self-represented party.

**This brief contains** 4,073 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/Stephanie A. Joyce **Date** June 15, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*