No. 23-15285

In the

# United States Court of Appeals
## For the Ninth Circuit

_____

MARY CARR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED, et al.,

Plaintiffs-Appellees,

v.

GOOGLE LLC, et al.,

Defendants-Appellants.

_____

On Interlocutory Appeal from the United States District Court
for the Northern District of California
No. 21-md-2981; No. 20-cv-5761

_____

**BRIEF OF AMICUS CURIAE**
**THE PRODUCT LIABILITY ADVISORY COUNCIL, INC.**
**IN SUPPORT OF DEFENDANTS-APPELLANTS**

D. Matthew Allen
Nathaniel G. Foell
CARLTON FIELDS
Corporate Center Three at
International Plaza
4221 W. Boy Scout Blvd.
Suite 1000
Tampa, FL 33607
Telephone: (813) 229-4304

Jeffrey A. Cohen
CARLTON FIELDS
2 MiamiCentral
700 N.W. 1st Avenue
Suite 1200
Miami, FL 33136
Telephone:  (305) 530-0050

*Counsel for The Product Liability Advisory Council, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the Product Liability Advisory Council, Inc. states that it is a nonprofit organization with no parent corporation and no stockholders.

# TABLE OF CONTENTS

**Page(s)**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

INTEREST OF AMICUS CURIAE .......................................................................1

STATEMENT OF COMPLIANCE WITH RULE 29(a) ..........................................2

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................2

STATEMENT OF ISSUES .................................................................................5

ARGUMENT .....................................................................................................6

I.  THE DISTRICT COURT'S CLASS CERTIFICATION ORDER IS
    INFECTED BY IMPROPER PRESUMPTIONS AND SHORTCUTS
    THAT HAVE LONG SINCE BEEN DISCARDED ...................................6

    A.  The District Court Acknowledged That It Was Required To
        Perform A Rigorous Analysis Of Class Certification .........................6

    B.  Instead Of Performing A Rigorous Analysis Of Class
        Certification, The District Court Employed—Explicitly Or
        Implicitly—A Number Of Improper Presumptions And
        Shortcuts That Were Characteristic Of An Outmoded And
        Condemned Approach To Class Certification ....................................7

        1.  The District Court's Undue Deference to Dr. Singer's
            Model ...................................................................................8

        2.  The Certification Order Is Infected by the Improper
            Presumption that Price Fixing Class Actions Should
            Almost Always Be Certified .................................................14

        3.  The District Court Erroneously Flipped the Burden of
            Proof to Google ...................................................................15

        4.  The District Court Wrongly Deferred Until Trial the
            Question of Whether Uninjured Class Members can Be
            Identified in a Manner that Does not Defeat
            Predominance .......................................................................16

ii

5. The Certification Order Is Infected by the Improper Shortcut that Damages Determinations can Never Defeat Predominance, No Matter How Individualized and Involved .................................................................................19

C. The District Court's Throwback Analysis Creates Substantial Mischief .................................................................................20

II. IMPROPER PRESUMPTIONS AND SHORTCUTS ASIDE, THE DISTRICT COURT FAILED TO PROPERLY EVALUATE PREDOMINANCE.................................................................................21

CONCLUSION .................................................................................23

CERTIFICATE OF SERVICE .................................................................................25

CERTIFICATE OF COMPLIANCE .................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Pepper*,
   139 S. Ct. 1514 (2019)...................................................................3

*Brown v. Electrolux Home Prods., Inc.*,
   817 F.3d 1225 (11th Cir. 2016) ..................................................13,16

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993)...............................................11

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).......................................................................*passim*

*Cordoba v. DIRECTV, LLC*,
   942 F.3d 1259 (11th Cir. 2019) ........................................................17

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..............................................................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)..........................................................................15

*In re Hotel Telephone Charges*,
   500 F.2d 86 (9th Cir. 1974) ...............................................................18

*In re Hydrogen Peroxide*,
   552 F.3d 305 (3d Cir. 2008) .........................................................12,13

*In re Initial Pub. Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) ...............................................................12

*Kang v. Credit Bureau Connection, Inc.*,
   2022 WL 658105 (E.D. Cal. Mar. 4, 2022).......................................22

*Martin v. Behr Dayton Thermal Prods. LLC*,
   896 F.3d 405 (6th Cir. 2018) ............................................................22

*Menocal v. GEO Grp., Inc.*,
   882 F.3d 905 (10th Cir. 2018) ..........................................................22

iv

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651 (9th Cir. 2022) (*en banc*) .......................................*passim*

*In re Playmobil Antitrust Litig.,*
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) .................................... 11

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869
    (Rail Freight I),*
    725 F.3d 244 (D.C. Cir. 2013) ....................................................13, 14

*Robinson v. Tex. Auto. Dealers Ass'n,*
    387 F.3d 416 (5th Cir. 2004) ............................................14

*State of Ala. v. Blue Bird Body Co., Inc.,*
    573 F. 2d 309 (5th Cir. 1978) ............................................22

*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir. 2011) ............................................19

*In re Sumitomo Copper Litig.,*
    182 F.R.D. 85 (S.D.N.Y. 1998) ........................................ 11

*Szabo v. Bridgeport Machines, Inc.,*
    249 F.3d 672 (7th Cir. 2001) ............................................20

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ......................................................16

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ......................................................*passim*

*Windham v. Am. Brands, Inc.,*
    565 F.2d 59 (4th Cir. 1977) (*en banc*) ............................15

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
    594 F.3d 1087 (9th Cir. 2010) ........................................19

**Statute**

28 U.S.C. § 2072(b) ................................................................17

**Rule**

Fed. R. Civ. P. 23 ...............................................................*passim*

v

**Other Authorities**

D. Matthew Allen & Chris S. Coutroulis, *Back to the Future:*
  *Toward a More Rigorous Analysis of Antitrust Class Actions*,
  The Antitrust Bulletin 463 (2003) ............................................................7, 11, 14

Donald Hawthorne & Margaret Sanderson, *Rigorous Analysis of*
  *Economic Evidence on Class Certification in Antitrust Cases*,
  24 Antitrust 55 (2009)............................................................................................7

William Kolasky & Kevin Stemp, *Antitrust Class Actions: More*
  *Rigor, Fewer Shortcuts*, 30 Class Action Reports 1 (2009)................................7

Ian Simmons, Alexander P. Okuliar, & Nilam A. Sanghvi,
  *Without Presumptions: Rigorous Analysis in Class Certification*
  *Proceedings*, 21 Antitrust 61 (2007) .................................................................14

**INTEREST OF AMICUS CURIAE**

The Product Liability Advisory Council, Inc. (PLAC) is a non-profit professional association of corporate members representing a broad cross-section of American and international product manufacturers.[1] PLAC seeks to contribute to positive developments in the law, with emphasis on the law governing the liability of product manufacturers and those in the supply chain. PLAC's perspective is derived from the experiences of a corporate membership that spans a diverse group of industries in various facets of the manufacturing sector. In addition, several hundred of the leading product-litigation defense attorneys are sustaining (non-voting) members of PLAC. Since 1983, PLAC has filed more than 1,200 briefs as amicus curiae in both federal and state courts, including this Court.[2] Those briefs present the broad perspective of product manufacturers seeking a sensible balance in the application and development of the law as it affects product risk management.

PLAC has a strong interest in this case because it illustrates a concerning rearguard action in class certification law. Plaintiffs in putative class actions against product manufacturers have long asked trial courts to certify classes on the basis of

---

[1] A list of PLAC's corporate members can be found at *https://plac.com/PLAC/ Membership/Corporate_Membership.aspx*. Defendant-Appellant Google LLC is a PLAC member. It was not involved in authoring or funding this brief.

[2] *See, e.g.*, Brief of Amicus Curiae the Product Liability Advisory Council, Inc. in Support of Defendant-Appellee, *Braverman v. BMW of N. Am., LLC.*, 2023 WL 2445684 (9th Cir. Mar. 10, 2023) (Case No. 21-55427), 2022 WL 468439.

legal presumptions and shortcuts, particularly in antitrust cases. The Supreme Court decisively rejected the use of such presumptions and shortcuts in a series of landmark decisions, making clear that Federal Rule of Civil Procedure 23 requires a "rigorous analysis" of class certification. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Here the district court disregarded that central teaching of those decisions, employing presumptions and shortcuts characteristic of what should be a bygone age in class certification law. This appeal is an opportunity for this Court to reinforce that the presumptions and shortcuts employed by the district court have no place in the rigorous analysis of class certification required by Rule 23, whether in the antitrust or any other context.

## STATEMENT OF COMPLIANCE WITH RULE 29(a)

No party or party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no person except amicus curiae itself contributed money intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This is an antitrust case about the Google Play Store. The district court certified a Rule 23(b)(3) class of all people in 17 states and U.S. territories "who

2

paid for an app through the Google Play Store or paid for in-app digital content (including subscriptions or ad-free versions of apps) through Google Play Billing on or after August 16, 2016, to the present." I-ER-29. This sprawling class includes over 21 million consumers who made over a billion purchases involving 272,500 apps during the class period. *See* I-ER-5-6.

Plaintiffs contend that all class members suffered antitrust injury, also known as antitrust impact, and damages because Google's monopoly power allowed it to charge app developers a supra-competitive service fee of up to 30% on the price of apps purchased through the Google Play Store and in-app purchases processed through Google Play Billing. I-ER-5. Crucially, this theory works only if each consumer paid a higher price because every app developer passed on Google's service fee. If an app developer did not pass on the service fee, then consumers of its app did not suffer antitrust impact or damages. *See Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1523 (2019). Whether that "pass-through" contention could be proven at trial through common evidence was the focus of the class certification briefing in the district court.

Plaintiffs argued that the need to prove this pass-through contention for 21 million consumers would not defeat Rule 23(b)(3) predominance because the proof would be supplied by common evidence, namely the model of their economics expert, Dr. Hal Singer. Dr. Singer's model purports to show that each class member

paid higher prices because of pass-through. III-ER-359-363. But Google's analysis showed that this contention was more an assumption of Dr. Singer's model than a conclusion of it, that this assumption likely does not hold for many class members, and that whether this assumption holds for a given class member is an individualized and involved question. II-ER-238-242.

The district court did not rigorously analyze those criticisms of Dr. Singer's model, much less resolve their import for class certification, despite acknowledging that it was required to perform such a rigorous analysis. The district court instead employed—explicitly or implicitly—a number of improper presumptions and shortcuts:

- the district court showed undue deference to Dr. Singer's model, brushing aside with little or no analysis fundamental flaws in that model;
- the district court presumed that price fixing class actions should almost always be certified;
- the district court erroneously flipped the burden of proof on class certification to Google;
- the district court essentially deferred until trial the question of whether uninjured class members can be identified in a manner that does not defeat predominance; and
- based on the shortcut that damages determinations can never defeat predominance, the district court did not analyze whether those determinations would be individualized and involved.

Those improper presumptions and shortcuts, which were once especially common in antitrust class actions, harken back to a time before the Supreme Court made clear in *Wal-Mart* and *Comcast* that Rule 23 requires a rigorous analysis of class certification free from such artifices.

Also, improper presumptions and shortcuts aside, the district court failed to properly evaluate predominance. Conducting a proper evaluation of predominance requires clearly characterizing issues as common or individual, whereas here the district court made conflicting statements on whether it considered the issue of antitrust impact to be a common or individual one. That indecision at the heart of the district court's predominance analysis rendered its analysis inadequate.

This appeal presents this Court with an opportunity to arrest any return to an outmoded and rightly condemned approach to class certification, and to reinforce the proper method for assessing predominance.

## STATEMENT OF ISSUES

1.      Whether the district court performed the rigorous analysis of class certification required by Rule 23 when it employed—explicitly or implicitly—improper presumptions and shortcuts in assessing the model of antitrust impact and damages put forward by plaintiffs.

2. Whether, improper presumptions and shortcuts aside, the district court properly evaluated predominance when it failed to clearly characterize as common or individual the issue of antitrust impact.

## ARGUMENT

## I. THE DISTRICT COURT'S CLASS CERTIFICATION ORDER IS INFECTED BY IMPROPER PRESUMPTIONS AND SHORTCUTS THAT HAVE LONG SINCE BEEN DISCARDED

### A. The District Court Acknowledged That It Was Required To Perform A Rigorous Analysis Of Class Certification

The district court acknowledged that it was required by Rule 23 to perform a rigorous analysis of class certification, and that this requirement extends to the "analysis of expert testimony for class certification." I-ER-9. More specifically, the district court acknowledged that it "may not certify a class just because the expert evidence is admissible." *Id.* (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)). The district court also acknowledged that it "must directly answer the Rule 23 question of 'whether the plaintiffs' evidence is capable of resolving a common issue central to the plaintiffs' claims.'" *Id.* (quoting *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) (*en banc*)). Lastly, the district court acknowledged that it must "decide if the expert's methodology is 'capable of showing class-wide antitrust impact' in light of 'factors that may undercut the model's reliability (such as unsupported assumptions, erroneous inputs, or nonsensical outputs such as false positives),'" and

that as part of this decision it must "resolve disputes raised by the parties" regarding the expert evidence bearing on class certification. *Id.* (quoting *Olean*, 31 F.4th at 683; cleaned up).

And yet, the district court did none of this in its class certification order.

**B.  Instead Of Performing A Rigorous Analysis Of Class Certification, The District Court Employed—Explicitly Or Implicitly—A Number Of Improper Presumptions And Shortcuts That Were Characteristic Of An Outmoded And Condemned Approach To Class Certification**

Historically, in antitrust class actions courts "generally eschewed a fact-driven analysis, choosing instead to place categories of cases into ready-made slots based on legal presumptions and policy considerations," and showed "an unusual deference to plaintiffs' allegations and experts." D. Matthew Allen & Chris S. Coutroulis, *Back to the Future: Toward a More Rigorous Analysis of Antitrust Class Actions*, The Antitrust Bulletin 463, 467 (2003) (hereinafter Allen & Coutroulis, *Back to the Future*).[3]

---

[3] *See also* Donald Hawthorne & Margaret Sanderson, *Rigorous Analysis of Economic Evidence on Class Certification in Antitrust Cases*, 24 Antitrust 55, 55 (2009) ("Some courts, influenced by their reading of the Supreme Court's *Eisen* decision, have held that plaintiffs need only offer a 'valid' or 'colorable method' by which they can prove common impact at trial and that, in ruling on a class certification motion, courts must refrain from determining the merits or deciding 'duels' between opposing experts."); William Kolasky & Kevin Stemp, *Antitrust Class Actions: More Rigor, Fewer Shortcuts*, 30 Class Action Reports 1, 1 (2009) ("In 1997, many district courts paid little more than lip service to the Supreme Court's instruction in *General Telephone Co. of the Southwest v. Falcon*, that a class

The district court's class certification order is reminiscent of those pre-*Wal-Mart* and *Comcast* days when legal presumptions and shortcuts often substituted for rigorous analysis of class certification. Indeed, the district court explicitly or implicitly employed five improper presumptions and shortcuts.

### 1.    The District Court's Undue Deference to Dr. Singer's Model

Despite the district court acknowledging that it was required by Rule 23 to perform a rigorous analysis of class certification, when it came time to do so with regard to the model of antitrust impact and damages developed by Dr. Singer, the district court blinked. Notwithstanding the overall length of the district court's class certification order—it devotes many pages to aspects of Dr. Singer's model that are not particularly significant—its analysis of the most significant flaws identified by Google was far from rigorous.

In ruling that Dr. Singer's pass-through formula was "suitable as an element of classwide proof of antitrust impact," I-ER-19, the court brushed aside the substantial evidence showing a significant number of class members suffered no impact at all. More specifically, the district court paid little attention to several serious problems with Dr. Singer's model.

---

should be certified *only* if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." (citation and quotation marks omitted)).

First, Google presented real-world data that when it had lowered its service fee in 2018, 2021, and 2022, numerous app developers did not pass through any of that reduction to customers. Google's real-world data matched the testimony of a number of app developers, who said that that Google's service fee did not affect at all how they set prices for consumers. Doc. 300 at 4-5.[4] It is on this basis that Google's economics expert, Dr. Michelle Burtis, justifiably called Dr. Singer's opinion that pass-through would be universal "verifiably wrong." *Id.* at 6.

The district court dismissed Google's real-world data in just a few sentences, calling it of "minimal value" because "Dr. Singer raised several serious questions about" the data. I-ER-23. But the district devoted essentially no effort—a mere half a sentence—to identifying what those questions were and explaining why they were serious enough to undermine the probative value of Google's real-world data. *See id.*

Second, Google presented evidence showing that many app developers were unlikely to pass-through any reduction in Google's service fee because about 97% of Google Play Store transactions involved "focal-point pricing," which is the strategy of setting prices ending in $.99. As Google points out, app developers who set the price for an app at $1.99 (for example) are not likely to reduce the price to

---

[4] Because this document is not included in the Excerpts of Record, this and all subsequent citations of this document are to the district court docket.

$1.93 or $1.72 or any other pennies-small number in response to a lower service fee. Appellants' Br. at 15. The district court never specifically addressed this evidence, instead lumping it together with other "observations" that the district court treated as showing that Dr. Singer's model "may not totally eliminate the possibility of some individualized issues for class members." I-ER-22. The district court brushed aside those "observations" with the statement that "predominance does not demand perfection." *Id.* This was far from a rigorous analysis of the significant impact that focal-point pricing had on the case for class certification.

Third, Dr. Singer's model relies on the assumption that every app in each of the 35 Google Play Store categories is a substitute for all of the other apps in its category, an assumption that Google established is erroneous. The district court said that the significance of this point was "entirely unclear" and that its "persuasive value" was "negligible," noting that Google and Apple use similar categories in their respective app stores. I-ER-21. But the fact that Google and Apple use similar categories for marketing purposes does not make those categories appropriate for the entirely different purpose to which Dr. Singer puts them, namely determining which apps are substitutes for each other.

Fourth, Google presented evidence that many consumers have benefited from the Google Play Store's business model by obtaining free apps and secure devices,

and that plaintiffs have no common method of proving whether a particular consumer would have been better off with or without that model. Doc. 300 at 6.

The district court waved away all of these serious problems by pointing to Dr. Singer's pronouncement "that his method can be customized to fit particular situations." I-ER-22. In other words, the district court deferentially accepted that Dr. Singer's model would prove classwide impact and simultaneously ignored the inconvenient facts strongly indicating otherwise. In sum, the district court showed undue deference to Dr. Singer's model, failing to rigorously analyze whether that model could provide common proof of antitrust impact and damages.

In years past, courts often certified antitrust class actions by conducting a deferential analysis of plaintiffs' expert submissions, frequently stating that it is not the job of the district court at the certification stage to weigh conflicting expert evidence through engaging in "statistical dueling of experts" or a "battle of the experts." Allen & Coutroulis, *Back to the Future*, at 488-91; *see also*, *e.g.*, *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 247 (E.D.N.Y. 1998) ("As in most instances, the battle of the experts is properly left for the trier of fact to determine."); *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 91 (S.D.N.Y. 1998) (expert testimony's "deficiency is a matter to be ascertained by trial and not for a determination as to the appropriateness of class certification"); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1042 (N.D. Miss. 1993) ("Whether or not

11

[plaintiffs' expert] is correct in his assessment of common impact/injury is for the trier of fact to decide at the proper time.").

The district court reverted to this approach when it refused to rigorously analyze the patent deficiencies in Dr. Singer's model, blithely observing that what really mattered was that plaintiffs "*may still argue*, using Dr. Singer's analysis, that everyone was injured." I-ER-24 (emphasis added).

Both the Supreme Court in *Comcast* and this Court in *Olean* unequivocally rejected this deferential approach. In *Comcast*, the Supreme Court held that "[b]y refusing to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, the Court of Appeals ran afoul of our precedents requiring precisely that inquiry." 569 U.S. at 34. In *Olean*, this Court emphasized that in making the determinations necessary to find Rule 23(b)(3) satisfied, the district judge "must proceed 'just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit.'" 31 F.4th at 666 (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006)).

*Olean* further emphasized that when deciding class certification, the district court "must make a 'rigorous assessment of the available evidence and the method or methods by which the plaintiffs propose to use the [class-wide] evidence to prove' the common question in one stroke." *Id.* (quoting *In re Hydrogen Peroxide*, 552 F.3d

305, 312 (3d Cir. 2008)). This rigorous assessment "may include '[w]eighing conflicting expert testimony' and 'resolving expert disputes.'" *Id.* (quoting *Hydrogen Peroxide*, 552 F.3d at 323-24); *see also Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) ("[I]f a question of fact or law *is* relevant to [the Rule 23] determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor.").

Indeed, when the evidence establishes that certain putative class members have not been impacted by an alleged antitrust violation yet the model put forward to support class certification yields the opposite and demonstrably false conclusion that they have been, that model does not support class certification. *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869 (Rail Freight I)*, 725 F.3d 244, 252-55 (D.C. Cir. 2013) (vacating certification order because the case for certification depended on a model of antitrust impact that "yielded false positives" and "detect[ed] injury where none could exist").

Here, the district court gave a passing nod to its obligation to weigh conflicting testimony and resolve the battle of the experts. But it did no such thing. The district court instead uncritically accepted plaintiffs' assurances that at trial Dr. Singer's model will prove antitrust impact and damages as to all class members, and ignored the substantial evidence that a significant number of class members have not been impacted or damaged at all—evidence that refuted Dr. Singer's model by proving it

is impermissibly over-inclusive. As in *Rail Freight I*, the certification order should be vacated.

### 2. The Certification Order Is Infected by the Improper Presumption that Price Fixing Class Actions Should Almost Always Be Certified

The district court appeared to be influenced by the fact that antitrust price fixing cases have often been certified as class actions, stating that this case "is not unlike a price-fixing case," I-ER-23, which the district court took to create "an inference of class-wide impact," *id.* (citation omitted). In the years before *Wal-Mart* and *Comcast*, courts often certified price fixing and other antitrust class actions by relying on legal presumptions and shortcuts that failed to comport with the rigorous analysis called for by Rule 23. *See* Allen & Coutroulis, *Back to the Future*, at 477-84; *see also* Ian Simmons, Alexander P. Okuliar, & Nilam A. Sanghvi, *Without Presumptions: Rigorous Analysis in Class Certification Proceedings*, 21 Antitrust 61, 63 (2007) ("Courts historically have lightened the arguably slight burden on plaintiffs seeking to certify a class in antitrust cases, effectively presuming that certification is warranted or at a minimum erring in favor of certification.").

Perhaps recognizing that reliance on a discarded legal presumption predicated on a questionable analogy would be reversible error,[5] the district court added that it

---

[5] *See, e.g.*, *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 420-21 (5th Cir. 2004) ("There are no hard and fast rules regarding the suitability of a particular type of antitrust case for class action treatment." (cleaned up)).

was "not deciding the question of certification here on the basis of price fixing cases." I-ER-24. And yet, the district court's analysis nonetheless was infected by this outmoded price fixing presumption as it went on to opine that "a defendant's common practices are often a good basis for establishing classwide proof of liability and injury." *Id.*

### 3. The District Court Erroneously Flipped the Burden of Proof to Google

The district court flipped the burden of proof to Google, concluding that Google "has not shown" that the potential for a large number of uninjured class members "is a concern." I-ER-23. This too was a reversion to a long-discredited approach to class certification. For example, as far back as 1977, the *en banc* Fourth Circuit repudiated a statement in a panel decision that there should be "almost a rebuttable presumption in favor of class action treatment for anti-trust suits." *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 64 n.6 (4th Cir. 1977) (*en banc*) (citation and quotation marks omitted). The full Fourth Circuit explained that "[t]his rule, if adopted, would operate to remove the burden of establishing right to class action treatment from the plaintiff in an anti-trust suit and impose it on the defendant." *Id.*

Both the Supreme Court and this Court repeatedly have held that plaintiffs bear the burden of proving that their proposed class satisfies each requirement of Rule 23, including the predominance requirement of Rule 23(b)(3). *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275-76 (2014); *Olean*, 31 F.4th at

664. *See also Brown*, 817 F.3d at 1233-34 ("The party seeking certification has a burden of *proof*, not a burden of pleading."). Flipping the burden of proof to the defendants constitutes clear legal error.

> **4.     The District Court Wrongly Deferred Until Trial the Question of Whether Uninjured Class Members can Be Identified in a Manner that Does not Defeat Predominance**

The Supreme Court has squarely held that "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). This means that before the district court could render a damages judgment in favor of the 21 million class members, it would need adequate assurance that *each* of them has suffered Article III injury. According to plaintiffs, it is Dr. Singer's model that will provide this assurance.

As to whether Dr. Singer's model is up to that task, the district court concluded its discussion of Google's criticisms of Dr. Singer's model with the following coda: "As is the case for all of Google's attacks on Dr. Singer, it may argue the point at trial, but it does not erode plaintiffs' showing of common evidence to prove antitrust impact." I-ER-25 (citation omitted). Earlier in its class certification order, the district court noted that "Google may cross-examine Dr. Singer about its objections at trial, but they are not a reason to deny class certification." I-ER-22.

The district court thus certified the class while deferring until trial a determination of whether Google's criticisms of Dr. Singer's model are merited. But

given the content of Google's criticisms of Dr. Singer's model, as discussed above, this amounts to deferring until trial a determination of whether uninjured class members can be identified in a manner that does not defeat predominance. Rule 23 simply does not permit a district court to certify a class before it finds that plaintiffs have proven by a preponderance of the evidence that the answer to that question is yes. *Olean*, 31 F.4th at 668 ("When individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the court determine whether individualized inquiries about such matters would predominate over common questions."); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019).

And for good reason. Should trial reveal that uninjured class members cannot be identified without thousands or even millions of separate mini-trials, the district court would be faced with two options. First, recognizing that it obviously could not hold that many mini-trials, the district court could employ a presumption or shortcut to determine damages. The Rules Enabling Act, which provides that a procedural rule "shall not abridge, enlarge, or modify any substantive right," bars this first option. 28 U.S.C. § 2072(b). As a claim-aggregating device, Rule 23 "leaves the parties' legal rights and duties intact and the rules of decision unchanged," and "it does not affect the substance of the claims or plaintiffs' burden of proof." *Olean*, 31 F.4th at 663 (citations and quotation marks omitted).

Simply put, predominance cannot be satisfied by sacrificing Google's right to challenge each class member's damages claim. *In re Hotel Telephone Charges*, 500 F.2d 86, 90 (9th Cir. 1974) ("[A]llowing gross damages by treating unsubstantiated claims of class members collectively significantly alters substantive rights under the antitrust statutes. Such enlargement or modification of substantive statutory rights by procedural devices is clearly prohibited by the Enabling Act that authorizes the Supreme Court to promulgate the Federal Rules of Civil Procedure.").

The second option would be to decertify the class. While this would be the correct course of action under the hypothetical circumstances, it would underscore that a class never should have been certified before a rigorous determination that uninjured class members could be identified in a manner that would not defeat predominance. Rule 23 does not allow district courts to impose on defendants the expense of preparing for a class trial or the pressure to settle a sprawling class action merely because at trial the evidence for certification *may* withstand the scrutiny it should have received at the certification stage. *Hotel Telephone Charges*, 500 F.2d at 90 ("The issues raised by the apparent existence of numerous individual questions must be resolved *before* a class is certified . . . ." (emphasis added)).

**5.** **The Certification Order Is Infected by the Improper Shortcut that Damages Determinations can Never Defeat Predominance, No Matter How Individualized and Involved**

The district court did not inquire into how damages determinations affect the class certification calculus in this case, giving as one reason "that it is well-established circuit law that 'damage calculations alone cannot defeat certification.'" I-ER-25 (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). But all this phrase from *Yokoyama* means is that "the *mere fact* that there might be differences in damage calculations is not sufficient to defeat class certification." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) (citing *Yokoyama,* 594 F.3d at 1094 (emphasis added)), *abrogated on other grounds by Comcast*, 569 U.S. 27. It does not mean that damages determinations can always be ignored at class certification, no matter how individualized and involved they might be; such formalistic line-drawing has never been Ninth Circuit law.

Even if that once was Ninth Circuit law, it is no longer after this Court's *en banc* decision in *Olean*, which explained that the law in this Circuit is that "there is no *per se rule* that a district court is precluded from certifying a class if plaintiffs may have to prove individualized damages at trial." *Olean*, 31 F.4th at 681-82 (emphasis added). Rule 23(b)(3) does require, however, "that the district court determine after rigorous analysis whether the common question predominates over any individual questions, including individualized questions about injury *or*

19

*entitlement to damages*." *Id.* at 669 (emphasis added). The district court here erred by ignoring individualized questions about entitlement to damages, and thus by failing to determine after rigorous analysis whether those questions defeat predominance.

### C. The District Court's Throwback Analysis Creates Substantial Mischief

The formalistic approach taken by the district court in certifying the class harkens back to a bygone era when courts regularly certified class actions, especially antitrust class actions, based on legal presumptions and shortcuts. This approach should be rejected again for all the same reasons it was criticized and discarded in the first place, plus the fact that controlling precedent now compels that result.

Over twenty years ago, Judge Easterbrook observed for the Seventh Circuit that treating class certification as a mere pleading matter by "[c]ertifying classes on the basis of incontestable allegations in the complaint moves the court's discretion to the plaintiff's attorneys—who may use it in ways injurious to other class members, as well as ways injurious to defendants." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). The same is true when improper presumptions and shortcuts render an expert model virtually "incontestable." "Both the absent class members and defendants are entitled to the protection of independent judicial review of the plaintiff's allegations" and of their expert evidence offered in support of class certification. *Id.*

20

In short, if it stands, the district court's class certification order would create substantial mischief in the district courts of this Circuit by authorizing certification of classes based on legal presumptions and shortcuts that have no place in the rigorous analysis required by Rule 23.

## II.   IMPROPER PRESUMPTIONS AND SHORTCUTS ASIDE, THE DISTRICT COURT FAILED TO PROPERLY EVALUATE PREDOMINANCE

The district court's class certification order is also plagued by a deeper flaw: it is not clear whether the district court intended to hold that antitrust impact was (1) a common issue that could be decided for each class member based on common evidence, or (2) an individual issue that, like damages, would not defeat class certification if outweighed by the common issue(s). On one hand, the district court said Google's criticisms of Dr. Singer's model did not "erode plaintiffs' showing of common evidence to prove antitrust impact." I-ER-25. On the other, the district court dismissed Google's evidence on the ground that the existence of individual issues does not preclude class certification if common issues predominate over those issues. I-ER-22 ("Dr. Singer's methods may not totally eliminate the possibility of some individualized issues for class members. They do not need to.").

Adding to the uncertainty, the district court concluded its Rule 23(b)(3) analysis by acknowledging that "some attention will need to be given to fine-tune

how the individualized questions on impact and damages can be managed at trial."
I-ER-28.

This uncertainty in the district court's class certification order is significant because it indicates that the court failed to properly evaluate predominance. "The predominance inquiry logically involves two steps: 'a court must first characterize the issues in the case as common or individual and then weigh which predominate.'" *Kang v. Credit Bureau Connection, Inc.*, 2022 WL 658105, at *5 (E.D. Cal. Mar. 4, 2022) (quoting 2 Newberg on Class Actions § 4:50); *accord, e.g.*, *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 918 (10th Cir. 2018). If the district court was muddled on whether antitrust impact was a common question or an individual one, it could not have properly evaluated predominance.

After all, the district court recognized that plaintiffs' antitrust claims have three elements: (1) an antitrust violation, (2) antitrust injury or impact, and (3) measurable damages. I-ER-16. The parties apparently agreed that the issue of an antitrust violation was a common one, and the district court appeared to recognize that measurable damages was an individual issue that would have to be decided on an "app-by-app" level. This made the accurate characterization of antitrust injury as a common or individual issue especially critical. *See State of Ala. v. Blue Bird Body*

*Co., Inc.*, 573 F. 2d 309, 327 (5th Cir. 1978) (emphasizing importance of "impact" element of an antitrust claim on class certification analysis).

And yet, it is not at all clear how the district court characterized the antitrust impact issue. As noted, the district court adopted inconsistent characterizations of that issue at different places in the class certification order. That is a fundamental failing, because without clearly characterizing issues as common or individual, a court cannot properly evaluate which set of issues predominates. And that is reason enough for this Court to reverse and remand, with instructions that the district court conduct a proper evaluation of predominance.

## CONCLUSION

Based on the foregoing discussion and authorities, this Court should reverse the district court's class certification order, and in so doing should reiterate that the improper presumptions and shortcuts employed by the district court have no place in the rigorous analysis of class certification required by Rule 23. The Court should also make clear that, improper presumptions and shortcuts aside, the district court failed to properly evaluate predominance.

Dated:  June 15, 2023                    Respectfully submitted,

                                          */s/ Jeffrey A. Cohen*
                                          Jeffrey A. Cohen
                                          CARLTON FIELDS
                                          2 MiamiCentral
                                          700 N.W. 1st. Avenue.
                                          Suite 1200
                                          Miami, FL 33136
                                          Telephone:  (305) 530-0050
                                          E-mail: jacohen@carltonfields.com

                                          *-and-*

                                          D. Matthew Allen
                                          Nathaniel G. Foell
                                          CARLTON FIELDS
                                          Corporate Center Three at
                                          International Plaza
                                          4221 W. Boy Scout Blvd.
                                          Suite 1000
                                          Tampa, FL 33607
                                          Telephone:  (813) 229-4304
                                          E-mail: mallen@carltonfields.com
                                                  nfoell@carltonfields.com

                                          *Counsel for The Product Liability
                                          Advisory Council, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2023, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

_/s/ Jeffrey A. Cohen_____
Jeffrey A. Cohen

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-15285

I am the attorney or self-represented party.

**This brief contains** | 5,379 | **words,** including | 0 | words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [                    ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Jeffrey A. Cohen | **Date** | 06-15-2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                      *Rev. 12/01/22*

26