No. 23-15285

# United States Court of Appeals for the Ninth Circuit

MARY CARR, ET AL.,

*Plaintiffs-Appellees,*

- v. -

GOOGLE LLC, ET AL.,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court for the
Northern District of California, No. 3:20-cv-05761-JD

## BRIEF *AMICUS CURIAE* OF TECHNET IN SUPPORT OF APPELLANTS

EBBIE YAZDANI
TECHNET
1420 New York Ave., NW
Suite 825
Washington, D.C. 20005

JOSHUA J. FOUGERE
CODY M. AKINS
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Tel.: (202) 736-8000
Fax: (202) 736-8711

*Counsel for Amicus Curiae*

## RULE 26.1 CORPORATE
## DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* states that it has no parent corporation and that no publicly held corporation owns any part of it.

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ..............................i

TABLE OF AUTHORITIES .................................................................iii

INTEREST OF *AMICUS CURIAE* ....................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 4

ARGUMENT ...................................................................................... 5

    I.    THE DISTRICT COURT SHIFTED THE RULE 23 BURDEN TO DEFENDANTS.......................................................... 5

        A.    Courts Cannot Fault Defendants for Defects in Class Plaintiffs' Proposed Proof........................................... 6

        B.    Unresolved Disputes Over Compliance with Rule 23 Preclude Certification................................................ 9

    II.    INDIVIDUAL INJURY QUESTIONS BAR CERTIFICATION........................................................... 12

        A.    Commonality Requires the Same Evidence, Not the Same Method of Proof. ........................................... 13

        B.    Damages Are Not Exempt From the Predominance Inquiry. ..................................................................... 16

CONCLUSION ................................................................................. 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ........................................................................ 4, 13

*Apple Inc. v. Pepper,*
139 S. Ct. 1514 (2019) ........................................................................2

*In re Asacol Antitrust Litig.,*
907 F.3d 42 (1st Cir. 2018).................................................................13

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) ............................................................................2

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975) .............................................................16

*Bowerman v. Field Asset Servs., Inc.,*
60 F.4th 459 (9th Cir. 2023) ..............................................................17

*In re Bridgestone/Firestone, Inc.,*
288 F.3d 1012 (7th Cir. 2002) .............................................................2

*Brown v. Electrolux Home Prods., Inc.,*
817 F.3d 1225 (11th Cir. 2016) ................................................... 7, 8, 9

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ............................................................................6

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013)..................................................................... 9, 14, 17

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011) .............................................................10

*In re Rail Freight Fuel Surcharge Antitrust Litig.–MDL No.
1869,*
725 F.3d 244 (D.C. Cir. 2013) ............................................... 7, 9, 10, 11

*In re Graphics Processing Units Antitrust Litig.*,
  253 F.R.D. 478 (N.D. Cal. 2008) .................................................... 11, 12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ...................................................................5

*Hansberry v. Lee*,
  311 U.S. 32 (1940) .....................................................................4

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ........................................................16

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ................................................. 5, 9, 11, 14

*Parko v. Shell Oil Co.*,
  739 F.3d 1083 (7th Cir. 2014) .......................................................4

*Pereida v. Wilkinson*,
  141 S. Ct. 754 (2021) ............................................................. 6, 8

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .............................................................. 12, 13

*Vaquero v. Ashley Furniture Indus., Inc.*,
  824 F.3d 1150 (9th Cir. 2016) ......................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................... 4, 6, 9, 12, 15

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
  725 F.3d 1213 (10th Cir. 2013) .....................................................6

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) ......................................................17

## Other Authorities

4 Newberg and Rubenstein on Class Actions § 12:4 (6th ed. 2023) ..................................................................................17

David S. Evans & Richard Schmalensee, *Matchmakers: The New Economics of Multisided Platforms* (2016) ....................................3

Fed. R. Civ. P. 23(b)(3) ..............................................................12

Elisabeth Kempf & Oliver G. Spalt, *Attracting the Sharks: Corporate Innovation and Securities Class Action Lawsuits* (Eur. Corp. Governance Inst.–Fin. Working Paper No. 614/2019, 2022), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3143 690 ..........................................................................................3

Alex Verkhivker, *Class Action Lawsuits Hit Innovative Companies the Hardest*, Chi. Booth Rev., Oct. 4 2018, https://www.chicagobooth.edu/review/class-action-lawsuits-hit-innovative-companies-hardest ...........................3

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* TechNet is a national, bipartisan network of technology CEOs and senior executives that promotes the growth of the innovation economy by advocating a targeted policy agenda at the federal and state levels. TechNet's membership includes dynamic American businesses ranging from startups to the most iconic companies on the planet. It represents over five million employees and countless customers in the fields of information technology, e-commerce, the sharing and gig economies, advanced energy, cybersecurity, venture capital, and finance. TechNet champions legal frameworks that foster a vibrant climate of innovation and competition.

The district court's class certification order threatens the innovation economy at the heart of TechNet's mission. The decision to certify a class with *21 million* members may well prove, in practice, to be case-dispositive. "Aggregating millions of claims on account of multiple products . . . sold across more than [six] years makes the case so unwieldy, and the stakes so large, that settlement becomes almost inevitable—and at a price that reflects

---

[1] No party's counsel authored this brief in whole or part; no party nor party's counsel contributed money intended to fund preparing or submitting it; and no person—other than *amicus*, its members, or its counsel—contributed money intended to fund preparing or submitting it. All parties have consented to the filing of this brief.

1

the risk of a catastrophic judgment as much as, if not more than, the actual merit of the claims." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015–16 (7th Cir. 2002). Because technology companies often serve a broad and diverse customer base, the threat of *in terrorem* class action settlements stifles innovation. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) ("Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims. Other courts have noted the risk of 'in terrorem' settlements that class actions entail . . . .").

While the settlement risks of class certification are nothing new, the Supreme Court's recent decision in *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), heightened those risks for the innovation economy. *Apple* held that consumers who purchase products in a two-sided market—one in which an intermediary unites buyers and sellers—may sue the intermediary for alleged antitrust overpayment injuries, even though the sellers ultimately determine the price. 139 S. Ct. at 1518–19. The theory underlying that case and this one is that the market operator's alleged anticompetitive conduct allows it to charge supracompetitive commissions to product sellers, with sellers then increasing retail prices as a result. For businesses that operate two-sided markets, many of whom are major or emerging technology

companies,[2] *Apple* exposes them to an entirely new category of putative plaintiffs and raises the stakes of class certification.

The district court's decision overlooks all of these concerns, certifying a massive class without holding the plaintiffs to their burden and without even considering whether individualized injury questions precluded certification. If left standing, the opinion risks becoming a roadmap for a watered-down Rule 23 analysis—inspiring copycat plaintiffs to file suit, secure class certification, and then pressure major and emerging tech companies into massive settlements even for lawful conduct. For technology companies serving a wide customer base, that creates suffocating litigation risk that stifles innovation.[3] Unless courts steadfastly hold plaintiffs to the strictures of Rule 23—as both the Rule and precedent demand—innovation as the driver of the

---

[2] David S. Evans & Richard Schmalensee, *Matchmakers: The New Economics of Multisided Platforms* 1, 8 (2016) ("Three of the five most valuable companies in the world in 2015—Apple, Google, and Microsoft—use [a multi-sided platform] business model. So do seven of the ten start-ups with the highest market values . . . .").

[3] Elisabeth Kempf & Oliver G. Spalt, *Attracting the Sharks: Corporate Innovation and Securities Class Action Lawsuits* 2 (Eur. Corp. Governance Inst.–Fin. Working Paper No. 614/2019, 2022), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3143690; *see also* Alex Verkhivker, *Class Action Lawsuits Hit Innovative Companies the Hardest*, Chi. Booth Rev., Oct. 4 2018, https://www.chicagobooth.edu/review/class-action-lawsuits-hit-innovative-companies-hardest.

modern American economy will be threatened by the risk of *in terrorem* settlements from gigantic classes. *Amicus* thus has a strong interest in this case and in preventing such an outcome.

## INTRODUCTION AND
## SUMMARY OF ARGUMENT

For more than 75 years, the Supreme Court has been clear that class litigation is not the norm, and that Rule 23 is designed to ensure that this claims-aggregating device is reserved for the exceptional case. *Hansberry v. Lee*, 311 U.S. 32, 40–41 (1940). Subsection (a), for example, limits the class's claims to "those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). When plaintiffs seek to proceed under the "adventuresome innovation" of subsection (b)(3), *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (quotation marks omitted), the predominance provision requires that efficiency gains outweigh "the complications, the unwieldiness, the delay, and the danger that class treatment would expose the defendant or defendants to settlement-forcing risk," *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

This brief focuses on two ways the district court failed to ensure that class certification was warranted here.

First, the district court improperly shifted the Rule 23 burden to the defendants. When doubts arose about whether common issues predominated, the court faulted *defendants* for some of those doubts and failed to resolve others. Class certification is *plaintiffs'* burden, and the court was wrong to relieve the putative class of that burden.

Second, the district court granted certification without properly assessing questions of individual injury and damages. By mistaking a common *method* of showing injury for common *evidence* of injury, the court failed to consider whether individualized injury questions predominated. The court compounded its mistake by holding that individualized damages questions cannot ever preclude certification—a sweeping rule that cannot be squared with Rule 23 or binding precedent. The Court should reverse.

## ARGUMENT

## I. THE DISTRICT COURT SHIFTED THE RULE 23 BURDEN TO DEFENDANTS.

It is axiomatic that plaintiffs seeking class certification bear the burden of proving compliance with Rule 23. *E.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc). That burden allocation stems from the very nature of class litigation as "an

exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979); to proceed as a class, plaintiffs must "justify a departure from that rule," *Wal-Mart*, 564 U.S. at 348.

The district court lost sight of this burden—faulting defendants for flaws in the plaintiffs' case and certifying the class despite unresolved doubts about plaintiffs' statistical model. Reversal is necessary to reaffirm that plaintiffs must "affirmatively demonstrate" that they "in fact" satisfy each element of Rule 23. *Wal-Mart*, 564 U.S. at 350.

## A. Courts Cannot Fault Defendants for Defects in Class Plaintiffs' Proposed Proof.

Because plaintiffs bear the Rule 23 burden, any doubt about the Rule's prerequisites must be resolved against certification. *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013). Indeed, that is a necessary and critical corollary to assigning the burden of proof in the first place: an "allocation of the burden of proof will sometimes matter a great deal." *Pereida v. Wilkinson*, 141 S. Ct. 754, 764 (2021). "[T]he entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses.'"

*Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016) (quoting *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997)).

Here, however, the district court upended the burden of proof and let plaintiffs off the hook. To prove common antitrust injury, plaintiffs proffered expert evidence purporting to show that, if the defendants' commission on app sales were reduced, each app developer would lower its price to consumers at a rate proportional to an app's market share in its selected Google Play Store category. The defendants responded that this pass-through theory relied on a false premise—not all apps within each of the 35 Play Store categories are competitors. In other words, plaintiffs had not carried their burden of showing that their model could prove classwide injury. *See In re Rail Freight Fuel Surcharge Antitrust Litig.–MDL No. 1869*, 725 F.3d 244, 252–53 (D.C. Cir. 2013) ("Common questions of fact cannot predominate where there exists no reliable means of proving classwide injury in fact.").

Rather than meeting that objection head-on, the district court blamed defendants. The court was adamant that plaintiffs' expert could "only work with [the Play Store categories] Google actually does." 1-ER-21. Here is what that assertion actually means: because Google did not structure the Play Store in a manner conducive to the plaintiffs' expert model, the concomitant

7

uncertainty in the model was resolved *against* Google. That is precisely backwards. *Brown*, 817 F.3d at 1233. Plaintiffs bore the burden of proving compliance with Rule 23, so any uncertainties—even if attributable to the nature of Google's products—"should not redound to [their] benefit." *Pereida*, 141 S. Ct. at 767.

The district court did the same thing in connection with uninjured class members. The court recognized that, under this Court's precedent, a "class may not be certified when it would be so overinclusive that substantial numbers of uninjured people would populate it." 1-ER-23 (citing *Olean*, 31 F.4th at 669). But the district court brushed that concern aside with the assertion that "*Google* has not shown this is a concern here." *Id.* (emphasis added). Again, however, that is upside down, because it was not Google's burden to *dis*prove Rule 23's requirements.

The district court's reasoning is particularly dangerous for the innovation economy. Some of the most valuable and groundbreaking technologies of the past quarter century improve the way we consume information—collecting, organizing, and displaying quantities of data that were previously incomprehensible. Think of how Netflix recommends a new show, Apple a new podcast, or Amazon a new book. Effectively categorizing information has

been a keystone of the information revolution, but the district court's reasoning uses these innovations as a basis for class certification. This Court should reverse and reiterate that evidentiary gaps like plaintiffs' mean that the plaintiffs did not meet their burden of proof.

## B. Unresolved Disputes Over Compliance with Rule 23 Preclude Certification.

Just as plaintiffs must carry the burden of proof to establish class certification, district courts must decide unresolved disputes over whether plaintiffs have carried that burden *before* certifying a class. *Brown*, 817 F.3d at 1233–34; *see also Olean*, 31 F.4th at 667. This is true even if the dispute overlaps with the merits, *Wal-Mart*, 564 U.S. at 351, or involves "the soundness of statistical models that purport to show predominance," *In re Rail Freight*, 725 F.3d at 255.

There are countless appellate decisions reversing certification orders for failing to heed this requirement. In *Comcast Corp. v. Behrend*, for example, the Court reversed a decision claiming that, at the certification stage, the plaintiffs did not need show that their damages model was tied to the common theory of antitrust liability. 569 U.S. 27, 36–38 (2013). *In re Rail Freight* vacated certification when the district court failed to consider whether false positives in a damages model undermined the model's ability

9

to reliably prove classwide injury. 725 F.3d at 252–53, 255. And, in *Ellis v. Costco Wholesale Corp.*, this Court vacated certification when the district court failed to resolve a dispute between experts over whether the plaintiffs' statistical model could show a classwide policy of discrimination. 657 F.3d 970, 983–84 (9th Cir. 2011).

These cases, and the many others like them, preclude district courts from taking a "wait and see" approach to fundamental flaws in a plaintiffs' proposed class—granting certification on the premise that core Rule 23 issues can be sorted out later. Those issues need to be confronted and dealt with at the outset.

The district court failed to do so here. Recall that one of the defendants' key objections to plaintiffs' pass-through model was that not all apps within a Play Store category are competitors. If defendants are right that the model rests on such a fatally flawed assumption, then the model cannot possibly answer the pass-through question for every class member: "[n]o damages model, no predominance, no class certification." *In re Rail Freight*, 725 F.3d at 253. Rather than decide that issue, however, the district court demurred with the statement that "Google may cross-examine Dr. Singer about its

objection at trial." 1-ER-22. That was a derogation of the analysis that Rule 23 demands.

Elsewhere, defendants maintained that their expert's empirical analysis contradicted the conclusions generated by the plaintiffs' theoretical model. More specifically, defendants argued that plaintiffs' model produced false positives and thus could not reliably show classwide pass-through injury. *See In re Rail Freight*, 725 F.3d at 254 ("As things stand, we have no way of knowing the overcharges the damages model calculates for class members is any more accurate than the obviously false estimates it produces for legacy shippers."). The district court's response? Another punt: the court declared that it was not "enough to deny certification *at this time*." 1-ER-23 (emphasis added).

For businesses facing massive antitrust class actions, this kind of "close enough" or "good enough for now" analysis is profoundly troubling. "Antitrust plaintiffs have in recent years trended toward presenting an econometric formula or other statistical analysis to show class-wide impact." *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 491 (N.D. Cal. 2008). While both the Supreme Court and this Court have held that such models may show commonality, *e.g.*, *Olean*, 31 F.4th at 676, Rule 23's

strictures still apply, *see Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016). Unless certification is to become "automatic every time counsel dazzle the courtroom with graphs and tables," *In re Graphics Processing*, 253 F.R.D. at 491, courts must apply the same scrutiny to this kind of evidence as they apply to any other—*before* determining that certification is proper. The court should reverse and reaffirm that a "court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23, advisory committee's notes to 2003 amendment.

## II.    INDIVIDUAL INJURY QUESTIONS BAR CERTIFICATION.

A district court may not certify a class seeking money damages unless "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see also Wal-Mart*, 564 U.S. at 362 ("[I]ndividualized monetary claims belong in Rule 23(b)(3)."). "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods*, 577 U.S. at 453. In doing so, the court may certify the class only if the common issues are "more prevalent or important" than the individualized ones. *Id.*

The district court strayed from these principles in assessing antitrust injury and damages.

## A. Commonality Requires the Same Evidence, Not the Same Method of Proof.

The "demanding" predominance standard requires comparing the number and importance of common questions to individual questions. *Amchem*, 521 U.S. at 624. The difference between common and individual questions is evidentiary. On the one hand, if "the same evidence" could be used to answer a question on which each class member's claim depends, then it is a common question. On the other hand, if the necessary evidence "varies from member to member," the question is individual. *Tyson Foods*, 577 U.S. at 453 (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012)).

Even the most sophisticated statistical model is no different than any other method of proving a contested fact: it is not enough that the *method* of proof be the same. No one would suggest, for example, that because every class member's injury could be established by his individual trial testimony—a method of proof common to the entire class—that injury is therefore a common question. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018) ("Inefficiency can be pictured as a line of thousands of class members waiting their turn to offer testimony and evidence on individual

13

issues."). If a method of proving a critical contention must be adapted for each class member, then that contention presents an individual question.

The district court misunderstood this foundational concept. In challenging commonality and predominance of the antitrust injury element of plaintiffs' claims, the defendants argued that the plaintiffs' expert's model did not account for a variety of developer-specific factors that may have prevented passing on alleged overcharges to consumers. The district court rejected these arguments because, in its view, "the salient point" was that "the same methodology"—the expert's model—could be "customized to fit particular situations" and thus "used by every class member to establish antitrust impact." 1-ER-22–23.

That reasoning shows precisely why antitrust impact is *not* a common question. If a method of proof must be "customized" to show antitrust injury for each class member, then antitrust injury, by definition, is not a common question. *See Olean*, 31 F.4th at 663 ("[A]n individual question is one where members of a proposed class will need to present evidence that varies from member to member."). Having identified an individualized question, the court must then "take a close look" at whether that individual question predominates over common ones. *Comcast*, 569 U.S. at 34 (cleaned up).

14

Compounding its error, the district court made no such "close look." The court should have considered, for example, whether the defendants would challenge the expert's model for each app or each developer, as is their right. *See Wal-Mart*, 564 U.S. at 367 ("[A] class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims."). If so, the court should have then asked whether those individual challenges would overwhelm the common questions. But the district court stopped short, resting on the erroneous conclusion that a common method of proof suffices under Rule 23.

The district court's reasoning is particularly dangerous in class action litigation against technology companies, where plaintiffs often rely on expert models to prove classwide injury. As the class size grows, the models will become more complicated, and plaintiffs will be more and more prone to assuage courts' predominance concerns by assuring them that the model can be "customized" later. This case is a prime example, as the district court forgave the lack of "customiz[ation]" by noting that plaintiffs' expert faced "obvious space and time constraint[s]." 1-ER-22. If courts uncritically accept these assurances—either by conflating a common model for common proof or by failing to scrutinize exactly how the model will be modified (or both)—

it will have the perverse effect of lowering the Rule 23 burden as the class size increases.

The Court should reverse and reaffirm that what matters for commonality and predominance is common *evidence*, not common methodology.

## B. Damages Are Not Exempt From the Predominance Inquiry.

Like any other element of a plaintiff's case, damages are subject to the strictures of Rule 23. The district court misunderstood how Rule 23 applies to damages issues, and the Court should take this opportunity to provide much-needed clarity on the subject.

Because damages almost always vary by individual, courts have struggled with how to fit that inherently individualized characteristic into the Rule 23 framework. The correct rule is straightforward. On one side, if calculating individual damages "will be virtually a mechanical task," then the individual damages questions generally do not predominate. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (noting damages did not predominate because they could "feasibly and efficiently be calculated once the common liability questions are adjudicated").

On the other side, plaintiffs "cannot show Rule 23(b)(3) predominance" when "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast*, 569 U.S. at 34. Put another way, "[i]f a case is likely to devolve into thousands of individual mini-trials concerning each class member's damages," individual damages questions preclude certification. 4 Newberg and Rubenstein on Class Actions § 12:4 (6th ed. 2023). Or, as this Court recently held, "prohibitively cumbersome" damages calculations preclude certification. *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023).

A necessary consequence of these rules is equally straightforward: "the need for individualized findings as to the amount of damages does not defeat class certification" *all by itself*. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016). As this Court has also recognized, "damage calculations *alone* cannot defeat certification." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (emphasis added).

Like other courts before it, however, the district court here overread these statements as presenting a *per se* exemption from Rule 23 for damages-based objections. There was no need to engage with damages issues, the district court held, because "it is well-established circuit law that 'damage

calculations alone cannot defeat certification,' and 'the presence of individu-alized damages cannot, by itself, defeat class certification under Rule 23(b)(3).'" 1-ER-25 (citations omitted) (quoting *Yokoyama*, 594 F.3d at 1094, then *Leyva*, 716 F.3d at 514). The court thus "readily dispatched" with the issue in a single paragraph. *Id.*

The Court should make clear that the proper analysis is not so cursory. The district court did not ask whether calculating damages for 21 million people who made purchases from hundreds of thousands of different apps would be "virtually mechanical" (answer: no), or whether it would instead be "prohibitively cumbersome" (answer: yes). The district court merely invoked the adage that "damage calculations alone cannot defeat certification" and declared plaintiffs' model good "enough for now." 1-ER-25. It is well past time to put an end to the repeated misunderstanding that this "analysis" reflects. Such shorthand relieves plaintiffs of the burden of satisfying Rule 23 for an element that exists in every case seeking monetary relief, thus substantially lowering the certification bar and increasing the risk of *in terrorem* settle-ments that follow from certification.

**CONCLUSION**

For the foregoing reasons, and those provided by defendants, the Court should reverse the district court's certification order.

June 15, 2023                                   Respectfully submitted,


                                                /s/ *Joshua J. Fougere*
                                                JOSHUA J. FOUGERE
                                                CODY M. AKINS
                                                SIDLEY AUSTIN LLP
                                                1501 K Street, NW
                                                Washington, D.C. 20005
                                                Tel.: (202) 736-8000
                                                Fax: (202) 736-8711

                                                EBBIE YAZDANI
                                                TECHNET
                                                1420 New York Ave., NW
                                                Suite 825
                                                Washington, D.C. 20005

                                                *Counsel for Amicus Curiae*

19

## CERTIFICATE OF COMPLIANCE

Under Federal Rule of Appellate Procedure 32(g), I certify that:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure Rule 29(a)(5), which sets the length of an amicus brief as one-half the length of a party's principal brief. The foregoing brief contains 3,760 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

The brief also complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) because it has been prepared using Microsoft Word Century Schoolbook font measuring no less than 14 points.

June 15, 2023.

/s/ *Joshua J. Fougere*
Joshua J. Fougere

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2023, I caused the foregoing brief to be served on all registered counsel through the Court's CM/ECF system.

June 15, 2023.

/s/ *Joshua J. Fougere*
Joshua J. Fougere