No. 23-15285

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION

MARY CARR, ET AL.,

*Plaintiffs-Appellees*,

v.

GOOGLE LLC, ET AL.,

*Defendants-Appellants*.

On Interlocutory Appeal from the United States District Court
for the Northern District of California, No. 21-md-2981; No. 20-cv-5761
The Honorable James Donato

**BRIEF OF AMICUS CURIAE PUBLIC CITIZEN
IN SUPPORT OF APPELLEES AND AFFIRMANCE**

Wendy Liu
Scott Nelson
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Amicus Curiae
Public Citizen*

August 1, 2023

## CORPORATE DISCLOSURE STATEMENT

Amicus curiae Public Citizen is a nonprofit, non-stock corporation. It has no parent corporation, and no publicly traded corporation has an ownership interest in it.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF AUTHORITIES .....................................................................iii

INTEREST OF AMICUS CURIAE ........................................................... 1

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ............................................................................................ 4

I.  Rule 23 permits certification of a class that may include
uninjured members. .................................................................... 4

A.  This Court has properly rejected a per se rule barring
certification on the basis that the class may include
uninjured members. ............................................................ 4

B.  Individualized issues of injury are evaluated on a case-by-case
basis to determine whether Rule 23 predominance is met. ... 13

II.  The district court did not abuse its discretion in finding that
Rule 23's predominance requirement was satisfied. ..................... 17

A.  Individualized issues of antitrust impact do not defeat
predominance in this case. .................................................. 18

B.  Individualized issues of Article III injury-in-fact do not defeat
predominance in this case. .................................................. 22

III.  Absent class members need not establish Article III standing at
the certification stage. ................................................................ 24

CONCLUSION ...................................................................................... 34

CERTIFICATE OF COMPLIANCE ....................................................... 35

CERTIFICATE OF SERVICE ............................................................... 36

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................... 11

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,*
  568 U.S. 455 (2013) ................................................................. 9

*Bouaphakeo v. Tyson Foods, Inc.,*
  214 F. Supp. 3d 748 (D. Iowa 2016) ....................................... 34

*Bowerman v. Field Asset Services, Inc.,*
  60 F.4th 459 (9th Cir. 2023) .......................................... 6, 15

*Chin v. Port Authority,*
  685 F.3d 135 (2d Cir. 2012) .................................................. 12

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ............................................................... 26

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006) ................................................. 30

*DG ex rel. Stricklin v. Devaughn,*
  594 F.3d 1188 (10th Cir. 2010) ............................................. 26

*Frank v. Gaos,*
  139 S. Ct. 1041 (2019) .................................................. 26, 28

*Franks v. Bowman Transportation Co.,*
  424 U.S. 747 (1976) ............................................................... 12

*Halvorson v. Auto-Owners Ins. Co.,*
  718 F.3d 773 (8th Cir. 2013) .......................................... 30, 31

iii

*In re Asacol Antitrust Litigation*,
    907 F.3d 42 (1st Cir. 2018) ........................................... 16, 31

*In re Deepwater Horizon*,
    732 F.3d 326 (5th Cir. 2013) ........................................ 30, 31

*In re Hydrogen Peroxide Antitrust Litigation*,
    552 F.3d 305 (3d Cir. 2008) ............................................... 20

*In re Hyundai & Kia Fuel Economy Litigation*,
    926 F.3d 539 (9th Cir. 2019) ............................................... 8

*In re Nexium Antitrust Litigation*,
    777 F.3d 9 (1st Cir. 2015) ................................................ 26

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
    934 F.3d 619 (D.C. Cir. 2019) ........................................... 16

*In re Zurn Pex Plumbing Prods. Liability Litigation*,
    644 F.3d 604 (8th Cir. 2011) ............................................. 33

*International Brotherhood of Teamsters v. United States*,
    431 U.S. 324 (1977) ................................................... 12, 13

*Kohen v. Pacific Investment Management Co.*,
    571 F.3d 672 (7th Cir. 2009) ......................................... 10, 26

*Lara v. First National Insurance Co. of America*,
    25 F.4th 1134 (9th Cir. 2022) ......................................... 8, 13

*Lopez-Marroquin v. Garland*,
    9 F.4th 1067 (9th Cir. 2021) ............................................... 8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................... 23

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................... 25, 29, 30

iv

*Messner v. Northshore University HealthSystem,*
  669 F.3d 802 (7th Cir. 2012) ............................................................. 5, 6

*Neale v. Volvo Cars of North America, LLC,*
  794 F.3d 353 (3d Cir. 2015) ................................................................ 26

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC,*
  31 F.4th 651 (9th Cir. 2022) (en banc) ........................................ *passim*

*Parko v. Shell Oil Co.,*
  739 F.3d 1083 (7th Cir. 2014) ............................................................... 9

*Ruiz Torres v. Mercer Canyons Inc.,*
  835 F.3d 1125 (9th Cir. 2016) ...................................................... *passim*

*Sali v. Corona Regional Medical Center,*
  909 F.3d 996 (9th Cir. 2018) ............................................................... 22

*Sinochem International Co. v. Malaysia International Shipping Corp.,*
  549 U.S. 422 (2007) ............................................................................. 32

*Sosna v. Iowa,*
  419 U.S. 393 (1975) ............................................................................. 26

*Steel Co. v. Citizens for a Better Environment,*
  523 U.S. 83 (1998) ............................................................................... 32

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) ................................................................. *passim*

*Tyson Foods, Inc. v. Bouaphakeo,*
  577 U.S. 442 (2016) ...................................................................... *passim*

*Uzuegbunam v. Preczewski,*
  141 S. Ct. 792 (2021) .......................................................................... 32

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) .......................................... 6, 9, 14, 21, 27

*Van v. LLR, Inc.*,
   2021 WL 4238988 (D. Alaska Sept. 16, 2021) ....................................... 7

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
   529 U.S. 765 (2000) ................................................................. 25

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................. 20

## Rules

Federal Rules of Civil Procedure
   23 ................................................................. *passim*
   23(b)(3) ...................................................... *passim*
   23(c) ................................................................. 10

## Other Authorities

Robert H. Klonoff, *Class Actions Part II: A Respite from the Decline*,
   92 N.Y.U. L. Rev. 971 (2017) .................................................. 32

## INTEREST OF AMICUS CURIAE[1]

Public Citizen is a nonprofit consumer advocacy organization with members in all 50 states. Public Citizen appears on behalf of its members before Congress, administrative agencies, and the courts on a wide range of issues involving protecting consumers and workers, public health and safety, and maintaining openness and integrity in government.

Public Citizen believes that class actions are an essential tool for seeking justice where a defendant's wrongful conduct has harmed many people and resulted in injuries that are large in the aggregate, but not cost-effective to redress individually. In that situation, which is present in many antitrust cases, a class action offers the best means for individual redress and deterrence, while also serving the defendant's interest in achieving a binding resolution of the claims on a broad basis, consistent with due process. Public Citizen has often participated as amicus curiae in cases involving issues concerning class action standards and requirements. As relevant here, Public Citizen has filed amicus

---

[1] Counsel for all parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part, and no party or party's counsel made a monetary contribution to fund preparation or submission of this brief. No person or entity other than amicus made a monetary contribution to preparation or submission of this brief.

briefs in this Court and other appellate courts addressing class certification in contexts where the class may include uninjured members. *E.g.*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021), *and on reh'g en banc*, 31 F.4th 651 (9th Cir. 2022); *In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018).

## SUMMARY OF ARGUMENT

In this antitrust action based on the anti-competitive practices of Google, the district court certified a Rule 23(b)(3) class of plaintiff consumers who made purchases involving apps in the Google Play Store. On appeal, Google contends that the district court erred in granting certification because plaintiffs did not show that "the majority of the class" was injured by Google's anti-competitive conduct. Google is wrong for several reasons.

To start, there is no rule precluding (b)(3) certification on the basis that the class may include uninjured members. Google's suggestion that certification is improper if "there are more than a de minimis number of uninjured class members" has been squarely rejected by this Court, sitting en banc. Rather than imposing any per se rule requiring a court to tally how many absent class members are injured, Rule 23 requires a

case-by-case analysis of whether Rule 23(b)(3)'s predominance requirement is met.

Here, the district court did not err in finding predominance. The court did not abuse its discretion in determining that the analysis offered by the plaintiffs' expert was capable of providing classwide proof of the common question of antitrust impact and that questions of individualized injury did not overwhelm common questions for that reason. In finding predominance, the district court rigorously analyzed the record and ultimately credited the arguments of the plaintiffs and their expert over those of Google and its expert. Google's attempt to relitigate the district court's determination should be rejected.

Finally, some of Google's amici (but not Google) contend that every class member must demonstrate Article III standing at the certification stage. This Court need not reach that question here because plaintiffs' evidence is capable of establishing Article III standing for all class members. In any event, the correct answer under this Court's precedents is that the possible presence of uninjured class members at certification is not an Article III jurisdictional barrier to the certification and adjudication of the class's claims.

# ARGUMENT

## I. Rule 23 permits certification of a class that may include uninjured members.

This Court has rejected a bright-line rule barring certification of a class due to the possible inclusion of certain numbers of uninjured members. Because this Court's precedent on the issue is both binding and correct, Google's invitation (at 26 n.4) that the Court adopt a rule precluding certification in circumstances where the class may include uninjured members should be rejected.

### A. This Court has properly rejected a per se rule barring certification on the basis that the class may include uninjured members.

**1.** Just last year, in an en banc decision, this Court squarely rejected "a per se rule that a class cannot be certified if it includes more than a de minimis number of uninjured class members"—the very rule advocated by Google here. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.13 (9th Cir. 2022) (en banc). The Court explained that such a position is "inconsistent with Rule 23(b)(3), which requires only that the district court determine after rigorous analysis whether the common question predominates over any individual

questions, including individualized questions about injury or entitlement to damages." *Id.* at 669.

Seeking to avoid *Olean*'s holding, Google asserts (at 25 & 26 n.4) that footnote 14 suggests that "a great number" of uninjured members precludes certification. That assertion is incorrect. Footnote 14 explains that district courts must examine whether the class definition is "fatally overbroad" in circumstances where the class may include members who were never even *exposed* to injurious conduct. Quoting *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012), the footnote states that "[w]hen 'a class is defined so broadly as to include a great number of members who for some reason *could not have been* harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification.'" *Olean*, 31 F.4th at 669 n.14 (emphasis added). Read in context, the phrase "a great number" refers to a circumstance where the court must examine the breadth of the class definition, not a bright-line rule precluding certification due to the inclusion of uninjured members. Indeed, after quoting *Messner*, the Court observed that, even where a class may include a great number of uninjured members, "the problem of a potentially 'over-inclusive' class

5

'can and often should be resolved by refining the class definition rather than by flatly denying class certification on that basis.'" *Id.*

Since *Olean*, this Court has twice rejected a per se rule barring Rule 23(b)(3) certification based on the likely inclusion of uninjured members. For example, in *Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459 (9th Cir. 2023), the Court stated that individualized evidence "to establish the existence of an injury and the amount of damages … would not necessarily have doomed class certification—so long as common questions continued to predominate." *Id.* at 469 (footnote omitted). Although the Court ultimately determined that (b)(3) certification was improper, the Court's reasoning rested on its analysis of the facts of the case, not on a bright-line rule based on the number of uninjured class members.

Likewise, *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023), rejected a per se rule. There, a plaintiff class of Alaskan consumers alleged that a retail clothing company charged improper sales taxes in violation of Alaska law. The parties agreed that class members who received discounts offsetting the improper tax would not have a claim for damages against the company. *Id.* at 1068. The district court stated that

6

certification was proper because "the number of proposed class members … who[ ] it can presently be determined received a discount to offset the sales tax being billed is de minimis." *Id.* Applying *Olean*, this Court held that "[t]he district court's analysis rests on a misunderstanding of the Rule 23 inquiry" because "Rule 23 does not demand proof of who will win or lose at trial." *Id.* The propriety of certification, the Court explained, did not depend on whether the number of "uninjured" members was "de minimis," but on whether Rule 23(b)(3)'s predominance requirement was met. *See id.* at 1069.[2]

This Court's rulings rejecting a per se rule are binding precedent. The Court's rejection of the position that "Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members," *Olean*, 31 F.4th at 669—the same rule advocated by Google here (at 26 n.4)—has not been undercut by the U.S. Supreme Court or by this Court sitting en banc, and it is thus

_____

[2] Notably, the *Van* district court's certification decision was issued *before* this Court's en banc decision in *Olean. See Van v. LLR, Inc.*, 2021 WL 4238988 (D. Alaska Sept. 16, 2021).

binding on this panel. *See Lopez-Marroquin v. Garland*, 9 F.4th 1067, 1073 (9th Cir. 2021).

**2**. Moreover, the Court's rulings rejecting a per se rule are correct: Nothing in the text of Rule 23(b)(3) requires that all class members have suffered injury. Instead, Rule 23(b)(3) requires that common questions must "*predominate* over any questions affecting only individual [class] members" (emphasis added). "Predominance is not … a matter of nose-counting." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "It is an assessment of 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* "[M]ore important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Id.* "[E]ven if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)); *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) (similar).

8

Thus, Rule 23 does not require resolution of the *merits* question of whether all class members can demonstrate the injuries necessary to recover for the claims brought by the class. A class does "not have to 'first establish that it will win the fray' in order to gain class certification under Rule 23(b)(3)." *Olean*, 31 F.4th at 681 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)); *see Van*, 61 F.4th at 1068–69 ("Rule 23 does not demand proof of who will win or lose at trial."). Indeed, it "would 'put the cart before the horse' [to] requir[e] plaintiffs to show at certification that they will prevail on the merits." *Olean*, 31 F.4th at 667 (quoting *Amgen*, 568 U.S. at 460). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466. "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." *Id.* at 460 (cleaned up). "How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

Moreover, conditioning certification on proof that certain numbers of the class members were injured would create practical conundrums at odds with Rule 23's structure and purpose. Although Rule 23(c)(1)(A) requires certification at an "early practicable time," assessing class members' injuries at certification is often infeasible because the members' identities are unknown. For a class to "include persons who have not been injured by the defendant's conduct … is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009). This phenomenon merely "highlights the possibility that an injurious course of conduct may sometimes fail to cause injury to certain class members." *Ruiz Torres*, 835 F.3d at 1136. "Such a possibility or indeed inevitability does not preclude class certification." *Kohen*, 571 F.3d at 677. In addition, because class certification can be revisited, *see* Fed. R. Civ. P. 23(c)(1)(C), Rule 23's central efficiency goals would be thwarted by requiring complete decertification upon a showing, at any stage, that more than a de minimis percentage of a certified class were uninjured.

**3.** Limiting Rule 23 certification to classes where the plaintiffs could prove at the time of certification that substantially all members were injured would have a particularly severe impact on the utility of class actions in consumer, securities, and antitrust cases. The Supreme Court has recognized that such cases are often appropriate for certification under Rule 23(b)(3) because "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing Fed. R. Civ. P. 23, advisory comm. notes to 1966 amendment). However, violations in cases that affect large numbers of victims in similar ways—those most suited to class actions—are also likely to involve some class members who at least arguably did not suffer injury for some reason.

Limiting class actions to cases where the plaintiffs could prove at certification that substantially all class members suffered compensable injuries would also threaten legitimate use of class actions to pursue other types of substantive claims. In *Tyson Foods*, for example, the employer followed a uniform set of practices that denied payment of millions of dollars of wages required by law to hundreds of employees,

11

but the evidence indicated that some class members might not have suffered injuries entitling them to share in the damages award. *See* 577 U.S. at 460–61. Had certification been precluded in such circumstances, the *injured* class members would have gone uncompensated, and the employer would have retained substantial benefits from violating wage-and-hour laws.

Similarly, in Title VII cases using pattern-or-practice proof— generally available *only* in class actions or government enforcement actions, *see Chin v. Port Auth.*, 685 F.3d 135, 148–50 (2d Cir. 2012)—a court first adjudicates whether a discriminatory practice exists and then holds individualized hearings on each class member's injury and entitlement to a remedy. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360–61 (1977); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 772–73 (1976). Limiting classes to plaintiffs who show injury at the outset would contradict the holding in *Franks* that such a showing is not necessary to class certification, but "become[s] material" only at the remedial stage. 424 U.S. at 772. As the Supreme Court has explained, "[a]t the initial, 'liability' stage of a pattern-or-practice suit the [plaintiff] is not required to offer evidence that each person for whom it will

ultimately seek relief was a victim of the employer's discriminatory policy." *Teamsters*, 431 U.S. at 360.

## B. Individualized issues of injury are evaluated on a case-by-case basis to determine whether Rule 23 predominance is met.

Rather than imposing any per se rule, Rule 23(b)(3) must be applied "on a case-by-case basis." *Olean*, 31 F.4th at 669 n.13. Rule 23(b)(3)'s predominance requirement is satisfied where, under the particular facts of the case, "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Lara*, 25 F.4th at 1138 (quoting *Tyson Foods*, 577 U.S. at 453). "When individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the court determine whether individualized inquiries about such matters would predominate over common questions." *Olean*, 31 F.4th at 668. Predominance remains the standard for certification even when questions on the injury status of class members raise individualized questions of Article III injury-in-fact that must be resolved before the court may provide relief to those members. In such cases, "Rule 23 also requires a district court to determine whether individualized inquiries

13

into this standing issue would predominate over common questions." *Olean*, 31 F.4th at 669 n.12 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021)).

In determining whether predominance is present, "[t]he question is not whether a great number of plaintiffs will win or lose at trial on the individualized issue." *Van*, 61 F.4th at 1067 n.11. "Rather, the district court must assess the necessity and manageability of the potential class-member-by-class-member discovery process and trial." *Id.* If a "class-member-by-class-member assessment of the individualized issue will be unnecessary or workable," then individualized issues do not defeat common ones. *Id.* at 1069.

Thus, in *Olean*, this Court affirmed the district court's (b)(3) certification of the class, explaining that the district court reasonably concluded that the common question of antitrust impact—an element of the plaintiff class's claims—predominated over individual questions. The Court explained that "each class member could have relied on [the plaintiff's expert model] to establish liability if he or she had brought an individual action." 31 F.4th at 679 (quoting *Tyson Foods*, 577 U.S. at 455). "While individualized differences … may require a court to determine

14

*damages* on an individualized basis, such a task would not undermine the [expert] model's ability to provide evidence of common *impact*." *Id.* (internal citation omitted). Critical to this Court's decision that predominance existed was that the plaintiff offered evidence that was "capable of resolving a class-wide question in one stroke," *id.* at 666, because it was "capable of answering the question whether there was antitrust impact due to the [defendant's] collusion on a class-wide basis," *id.* at 676.

In contrast, the predominance requirement was not satisfied in *Bowerman*. There, this Court affirmed that individualized evidence "to establish the existence of an injury and the amount of damages … would not necessarily have doomed class certification—so long as common questions continued to predominate." 60 F.4th at 469. Unlike the plaintiffs in *Olean*, however, the plaintiffs in *Bowerman* lacked common, "representative evidence going to liability." *Id.* at 470. Instead, each class member had to "rely[ ] on individual testimony to establish the existence of an injury and the amount of damages." *Id.* at 469. Because of the "complexity of the individualized questions and the absence of any representative evidence introduced to fill the class members' evidentiary

gap," the Court determined that the district court did not err in finding that common issues did not predominate over individualized ones. *Id.* at 471.

Moreover, Rule 23(b)(3)'s predominance requirement may not be satisfied "when the need to identify uninjured class members 'will predominate and render an adjudication unmanageable.'" *Olean*, 31 F.4th at 669 n.13 (quoting *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53–54 (1st Cir. 2018), and citing *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 625 (D.C. Cir. 2019)). For example, in *Asacol*, the First Circuit explained that common issues did not predominate because of the absence of a reliable mechanism to differentiate injured and uninjured members that would not require trying the question of injury through the testimony of "thousands of class members." 907 F.3d at 57–58. Likewise, in *Rail Freight*, the D.C. Circuit affirmed the district court's denial of certification where the district court determined that identifying which of thousands of class members had suffered injury would require individualized inquiries, and the "need for individualized proof of injury and causation" to "winnow[] away [uninjured members] as part of the liability determination" would "destroy predominance." 934

16

F.3d at 624. If, however, the determination of injury status could be determined based on common or representative evidence, even the possibility that significant numbers of class members might ultimately be determined not to have a compensable injury would not preclude a finding of predominance. *See Olean*, 31 F.4th at 681 n.30 (explaining that even where common evidence may not support a finding of antitrust injury to an entire class, it "may nevertheless sustain a jury finding of antitrust injury to … part of the class").

## II.    The district court did not abuse its discretion in finding that Rule 23's predominance requirement was satisfied.

In certifying a (b)(3) class of consumers who made purchases involving apps in the Google Play Store, the district court found that the common questions of anticompetitive conduct and antitrust injury (also called antitrust impact) predominate over individualized issues, including any individualized issues of injury. The court's predominance finding rested on its determination that the analysis by plaintiffs' expert Dr. Singer—notwithstanding the critiques of Google and its rebuttal expert Dr. Burtis—was capable of proving antitrust impact for all class members. The court explained that the "same methodology [of Dr. Singer] can be used by every class member to establish antitrust impact" because

17

Dr. Singer's common analysis, if credited by the jury, would demonstrate that "the headline rate, which was the starting point for all negotiations, was affected," resulting in classwide antitrust injury. ER-24.

In this Court, Google attempts to relitigate the determination that injury involves common issues that, together with other common questions presented by the case, predominates over individualized issues. Because the "district court is in the best position to determine whether individualized questions, including those regarding class members' injury, will overwhelm common ones," the district court's determination must be upheld if it "falls within a broad range of permissible conclusions." *Olean*, 31 F.4th at 669 (quotation marks omitted). The district court's determination easily satisfies that standard.

## A. Individualized issues of antitrust impact do not defeat predominance in this case.

The district court did not abuse its discretion in concluding that plaintiffs' expert analysis was capable of providing classwide proof of the common element of antitrust impact. This Court has explained that "a district court does not abuse its discretion" in concluding that an expert model "may be capable of showing class-wide antitrust impact, provided

that the district court considers factors that may undercut the model's reliability (such as unsupported assumptions, erroneous inputs, or nonsensical outputs such as false positives) and resolves disputes raised by the parties." *Olean*, 31 F.4th at 683. Here, the district court did just that: It concluded that Dr. Singer's analysis was valid and capable of resolving the common issue of antitrust impact after the court evaluated the various arguments by the dueling experts and the objections made by Google. Ultimately, the district court credited Dr. Singer's expert analysis, explaining that though Google could "argue the point at trial," Google's objections did not "erode plaintiffs' showing of common evidence to prove antitrust impact." ER-25. Because every class member could rely at trial on Dr. Singer's expert analysis, that analysis provided a means of resolving a key issue for all class members, and thus supported the district court's conclusion that injury was a common question.

The district court did not abuse its discretion in finding that antitrust injury did not involve individualized questions that overwhelmed common ones. Because Dr. Singer offers a classwide method of demonstrating antitrust impact, Google's arguments, if accepted by a jury, would imply that the class as a whole had not shown

19

impact based on Dr. Singer's model. Such arguments do not defeat predominance, because the class will win or lose on that issue "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Google contends that predominance is defeated because of purported differences in the extent to which developers passed through Google's supra-competitive fees to consumers. But the district court considered that argument and rejected it. *See* ER-20–23. Further, Google conflates the element of antitrust injury with that of damages: To show antitrust injury, a plaintiff need establish only that the defendant's anti-competitive conduct caused *some* injury, regardless of its extent; the extent goes to damages. *Cf. In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009) (stating that "proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)" (citation omitted)). Thus, to establish the common element of antitrust injury, whether class members were injured in differing amounts does not matter, as long as they were harmed in *some* amount. Here, Dr. Singer's analysis, if accepted by the jury, would demonstrate that all class members were harmed in some amount

because his expert methodology shows that the prices of app-related purchases in the Google Play store were artificially inflated as a result of Google's anti-competitive conduct. *See* ER-24.

Moreover, the possibility that individualized issues of injury may arise at trial does not defeat certification. The district court explained that, if necessary, Dr. Singer's analysis could account for individualized issues because "his method can be customized to fit particular situations." ER-22; *id.* (stating that Dr. Singer's "same methodology can be run 'at an app-by-app level'" that "could allow for the[] percentage overcharges to vary by app."). Class certification is not an abuse of discretion in such circumstances. *Cf. Van*, 61 F.4th at 1067 n.11 (stating that "if the district court determines that the individualized issue … will … be simple to investigate and present at trial, the district court might reasonably certify the class in the face of the individualized issue").

Finally, Google's assertion that the district court failed to "rigorously analyze" the issue of predominance is meritless. The "district court's 'rigorous analysis' at the class certification stage" does not require the court to "conduct[ ] a mini-trial," for "transforming a preliminary stage into an evidentiary shooting match inhibits an early determination

of the best manner to conduct the action." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018). Here, in concluding that individualized issues did not overwhelm common questions, the district court rigorously analyzed whether predominance was satisfied: It considered the record, held an evidentiary hearing, entertained oral argument on the *Daubert* and certification motions, and detailed in its opinion the reasons that it was not persuaded by the objections made by Google and its expert. That it did not ultimately agree with Google's position is not an abuse of discretion.

## B. Individualized issues of Article III injury-in-fact do not defeat predominance in this case.

Citing *Olean*, Google asserts (at 3) that "Plaintiffs must prove that common questions *about Article III standing* will predominate over individualized questions at trial before a class can be certified" (emphasis added). That is not an accurate recitation of this Court's statement in *Olean*. There, the Court stated that "[b]ecause …. 'every class member must have Article III standing in order to recover individual damages,' Rule 23 … requires a district court to determine whether *individualized inquiries into this standing issue would predominate over common questions*." 31 F.4th at 669 n.12 (quoting *TransUnion*, 141 S. Ct. at 2208)

22

(emphasis added). Plaintiffs need not prove that there are "common questions about Article III standing," let alone that those specific questions predominate over individual questions. Rather, predominance is met so long as *whatever* common questions are identified by the court (here, anticompetitive conduct and antitrust impact) are not overwhelmed by individualized issues—including any individualized issues of Article III standing.

Google makes no argument on Article III injury-in-fact distinct from its arguments on antitrust injury, and no such argument would succeed. As this Court has recognized, "antitrust impact—i.e., that the [defendants' anti-competitive conduct] had a common, supra-competitive impact on a class-wide basis—is sufficient to show an injury-in-fact traceable to the defendants and redressable by a favorable ruling." *Id.* at 682. Moreover, because Article III standing must be shown "with the manner and degree of evidence required at the successive stages of the litigation," it is sufficient at the certification stage to show that Article III standing is capable of proof at trial with common evidence. *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Accordingly, in *Olean*, because the plaintiffs' evidence "was capable of establishing

23

antitrust impact on a class-wide basis," the plaintiffs had "adequately demonstrated Article III standing at the class certification stage for all class members," regardless of whether such a showing was required. *Id.* at 681.

Similarly, here, because the analysis by Dr. Singer is capable of establishing classwide antitrust impact, the plaintiffs' evidence is capable of establishing Article III injury-in-fact at trial for all class members using common proof. Individualized questions of Article III injury-in-fact do not defeat predominance here.

## III. Absent class members need not establish Article III standing at the certification stage.

Because the plaintiffs' evidence is capable of establishing Article III injury for all class members, this Court, like in *Olean*, need not address the question whether all class members must make a showing of Article III standing at certification. Indeed, not even Google stakes a position on that question. Seeking to go beyond the scope of Google's argument, Google's amici ask this Court to rule that "no damages class can be certified without evidence that each class member has Article III standing." Chamber of Commerce Br. 5; *see also* Wash. Legal Found. Br. 7. Should this Court reach the issue, it should hold the possible inclusion

24

of uninjured class members at the certification stage is not an Article III jurisdictional defect.

**A.** Under this Court's precedents, the possible inclusion of uninjured class members at certification does not present any Article III concern. Indeed, the Court in *Olean* squarely rejected such a position in the context of class actions seeking injunctive or equitable relief and "overrule[d]" the statement in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), that "no class may be certified that contains members lacking Article III standing." 31 F.4th at 682 n.32 (quoting *Mazza*, 666 F.3d at 594). The Court explained that "in cases seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing to satisfy Article III." *Id.*

That same principle applies to damages class actions. If a single class member's injury suffices to create a justiciable controversy over her entitlement to redress, the controversy exists whether the form of redress is compensatory or prospective. Standing principles apply to actions aimed at either "obtaining compensation for, or preventing, the violation of a legally protected right." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000). If a single plaintiff

"demonstrate[s] standing … for each form of relief sought," the court has jurisdiction to resolve the plaintiffs' claims. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted). Accordingly, "as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied." *Kohen*, 571 F.3d at 676; *see Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 31 (1st Cir. 2015); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010). Jurisdiction to entertain a class action depends on whether "any named plaintiff has alleged [injuries] that are sufficiently concrete and particularized to support standing." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019). Once the named plaintiff establishes Article III injury and membership in the class, the inquiry shifts "from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.'" *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

This Court's precedents agree that the possible presence of uninjured members in a damages class action at certification is not impermissible under Article III. For example, in *Ruiz Torres*, this Court

affirmed the (b)(3) certification of a class of farm workers alleging violations of wage-and-hour laws. Rejecting the defendant's objections that some absent class members were uninjured, the Court stated that proof of injury to one named plaintiff suffices at the time of certification and that Article III does not require that the class consist entirely of members who "did suffer injury, or that they must prove such injury at the certification phase." 835 F.3d at 1137 n.6. It is enough that the class be defined to encompass persons "exposed to" the defendants' injurious conduct. *Id.* at 1137.

Likewise, *Van* reflects that the certification of a class that includes uninjured members is not an Article III jurisdictional defect. There, although the Court declined to rule on the question "whether every class member must demonstrate standing before a court certifies a class," 61 F.4th at 1068 n.12 (quoting *Olean*, 31 F.4th at 682 n.32), it acknowledged that "at least some purchasers lack meritorious claims because they were … uninjured." *Id.* at 1068 n.13. Had the presence of "at least some [uninjured] purchasers" presented an Article III barrier to certification or adjudication, *id.*, this Court would have had to address the issue, for a

federal court has an "obligation to assure [itself] of litigants' standing under Article III," *Frank*, 139 S. Ct. at 1046 (citation omitted).

Similarly, the Supreme Court's decision in *Tyson Foods* also illustrates that the possible inclusion of uninjured members in a damages class action at the time of certification is not impermissible, let alone a defect in a court's Article III jurisdiction. There, Tyson Foods' petition for certiorari argued that a class may not be certified it if contains uninjured members, but its merits brief "concede[d] that '[t]he fact that federal courts lack authority to compensate persons who cannot prove injury does not mean that a class action … can never be certified in the absence of proof that all class members were injured.'" 577 U.S. at 460. The Supreme Court held that because Tyson Foods had abandoned the argument, "the Court need not, and does not, address it." *Id.* Like this Court's statement in *Van*, the Supreme Court's statement in *Tyson Foods* that it need not address the argument reflects the Court's conclusion that the question of noninjury does not go to Article III jurisdiction.

Neither *TransUnion* nor *Olean* compels a contrary conclusion. In *TransUnion*, the Supreme Court explained that "[e]very class member must have Article III standing in order to recover individual *damages*"

because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." 141 S. Ct. at 2208 (citation omitted; emphasis added). The Court, however, expressly left open "the distinct question whether every class member must demonstrate standing before a court certifies a class." *Id.* at 2208 n.4. Thus, *TransUnion* did not provide any "implicit" ruling, Chamber Br. 5, supporting the position embraced by Google's amici.

*Olean* likewise did not rule on the question. 31 F.4th at 682. Although this Court stated that individualized issues of Article III standing were relevant to whether the requirements of *Rule 23* were met, it did not hold that such issues presented an Article III concern. Rather, it found that the plaintiffs had "adequately demonstrated Article III standing at the class certification stage for all class members," regardless of whether such a showing was required. *Id.* Moreover, the Court's overruling of *Mazza*'s statement that "no class may be certified that contains members lacking Article III standing," *id.* at 682 n.32 (quoting *Mazza*, 666 F.3d at 594)—the very position that Google's amici invite this Court to adopt—belies the assertion that *Olean* provided "the building blocks," Chamber Br. 7, to support such a position.

Decisions by other courts of appeals likewise do not support the notion that all absent class members must have Article III standing at certification. The Second Circuit's statement in *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), that "no class may be certified that contains members lacking Article III standing" was the statement that *Mazza* quoted, 666 F.3d at 594, and that *Olean* overruled, 31 F.4th at 682 n.32. Moreover, as this Court has explained, the statement in *Denney*, when "taken in context[,] signifies only that it must be possible that class members have suffered injury, not that they did suffer injury, or that they must prove such injury at the certification phase." *Ruiz Torres*, 835 F.3d at 1137.

Dicta in other court of appeals decisions cited by Google's amici parrot *Denney*'s out-of-context statement and are wrong for that reason. *See Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013) (quoting *Denney*); *In re Deepwater Horizon*, 732 F.3d 326, 342 (5th Cir. 2013) (same). Moreover, the Eighth Circuit denied certification in *Halvorson* because the "individual inquiries" to determine whether class members had suffered injury would "overwhelm questions common to the class." *Halvorson*, 718 F.3d at 779. The court's analysis was thus

30

"ground[ed] … in the predominance requirement of Rule 23(b)(3)," not Article III. *Asacol*, 907 F.3d at 57 (discussing *Halvorson*).

Finally, the Fifth Circuit's holding in *Deepwater Horizon* was grounded in its statement that a plaintiff "must actually have a legal claim before getting in line for a legal *recovery*." 732 F.3d at 342 (citation omitted and emphasis added). That statement, like the Supreme Court's statement in *TransUnion*, does not require Article III standing for all absent class members at *certification*. Indeed, the Fifth Circuit recognized that the certification or settlement of a class action "certainly can encompass unmeritorious claims," so long as the claim is "colorable" because the plaintiff can *allege* standing and the elements needed to state the claim. *Id.*; *see also id.* at 342 n.9

**B.** The critical point by which uninjured class members (if any) must be excluded from the class or from receiving a share of a damages award is at final judgment on the merits. That is all that *TransUnion* requires. *See* 141 S. Ct. at 2208 ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."). That uninjured plaintiffs cannot share in a money judgment follows from the principle that a binding adjudication yielding a merits judgment

presupposes a case or controversy between the parties to be bound by that judgment. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–104 (1998). Article III jurisdiction "is vital … if the court proposes to issue a judgment on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citation omitted). "[N]o federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021). Therefore, to obtain a merits judgment awarding monetary relief to members of a class, a plaintiff must establish by a preponderance of the evidence that they are entitled to that relief, including that they have the necessary standing. *Cf. TransUnion*, 141 S. Ct. at 2208*; see also* Robert H. Klonoff, *Class Actions Part II: A Respite from the Decline*, 92 N.Y.U. L. Rev. 971, 986 (2017) (noting that an "Article III problem would arise only if a court intended to distribute funds to uninjured people").

Adoption of a rule barring the certification of a class that may include uninjured members is unnecessary to prevent such class members from sharing in a money judgment. If the existence, or possible existence, of uninjured members comes to light before or after trial,

several procedural solutions are available: (1) narrowing the class; (2) summary judgment as to the uninjured members; (3) instructing the jury not to base any award of damages on uninjured individuals; and/or (4) requiring a process to identify such members (if any) and exclude them from sharing in a classwide damages award. *See, e.g.*, *Tyson Foods*, 577 U.S. at 461–62 (remanding for trial-court proceedings to determine whether class members who had no damages could be identified); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 617–18 (8th Cir. 2011) (noting that courts may amend class definitions or grant summary judgment to defendants on claims that turn out to be barred).

In determining which of these courses to take, a district court should carefully determine whether the issue is lack of standing or failure of proof on the merits. Class members who were never exposed to the injurious conduct of the defendant may be excluded from the class and from the binding effect of the judgment. Those who properly claimed to suffer legal injury but lose on the merits because they cannot prove damages should take nothing from the class-action judgment while being subject to its binding effect. Regardless, where a definable class has proved injury, liability, and entitlement to relief, the failure (for whatever

reason) of claims of some class members should not deprive other class members of the ability to proceed as a class or, if they prevail on the merits, of the fruits of their victory. *See*, *e.g.*, *Bouaphakeo v. Tyson Foods, Inc.*, 214 F. Supp. 3d 748 (D. Iowa 2016) (remand proceedings).

## CONCLUSION

For the foregoing reasons, the district court's decision should be affirmed.

Respectfully submitted,

/s/ Wendy Liu
Wendy Liu
Scott L. Nelson
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Amicus Curiae*
*Public Citizen*

August 1, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that the foregoing brief is proportionately spaced, has a type-face of 14 points, and, as calculated by my word processing software (Microsoft Word for Microsoft 365), complies with the word limit of Fed. R. App. P. 29(a)(5) because it contains 6,766 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and the rules of this Court.

/s/ Wendy Liu
Wendy Liu

**CERTIFICATE OF SERVICE**

I certify that on August 1, 2023, I caused the foregoing to be filed

with the Clerk of the Court through the Court's ECF system, which will

serve notice of the filing on all filers registered in the case, including all

parties required to be served.


/s/ Wendy Liu
Wendy Liu