No. 23-15285

# In The United States Court of Appeals for the Ninth Circuit

IN RE: GOOGLE PLAY STORE ANTITRUST LITIGATION

MARY CARR, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED, ET AL.,
*Plaintiffs-Appellees,*

v.

GOOGLE LLC, ET AL.,
*Defendants-Appellants.*

On Interlocutory Appeal from the United States District Court
for the Northern District of California
No. 21-md-2981; No. 20-cv-5761
Honorable James Donato

## BRIEF FOR AMERICAN ECONOMIC LIBERTIES PROJECT AS *AMICUS CURIAE* IN OF PLAINTIFFS-APPELLEES

Katherine Van Dyck
Lee A. Hepner
AMERICAN ECONOMIC LIBERTIES PROJECT
2001 Pennsylvania Avenue NW, Suite 540
Washington, DC 20006
(202) 904-8101
kvandyck@economicliberties.us

*Counsel for Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, amicus American Economic Liberties Project is a nonprofit, non-stock corporation. It has no parent corporations, and no publicly traded corporations have an ownership interest in it.

Dated: August 7, 2023

*s/ Katherine Van Dyck*
Katherine Van Dyck
Lee A. Hepner
American Economic Liberties Project
2001 Pennsylvania Avenue NW
Suite 540
Washington, DC 20006
(202) 904-8101
kvandyck@economicliberties.us

Counsel for Amicus Curiae

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF AUTHORITIES................................................... iii

CITATION ABBREVIATIONS ...............................................vi

INTEREST OF AMICUS ..........................................................1

SUMMARY OF ARGUMENT ................................................2

ARGUMENT ......................................................................6

I.   THE POLICIES BEHIND THE SHERMAN ACT AND
     RULE 23 DEMAND CLASS CERTIFICATION ...........................6

     A.   The Sherman Act and Rule 23 Were Designed to
          Combat Corporate Power........................................6

     B.   The Wrongdoer Bears the Risk of Uncertainty ..................12

     C.   Congress Intended to Impose Large Penalties on
          Monopolists ...........................................18

II.  GOOGLE'S ARGUMENT WOULD IMPROPERLY WREST
     THIS CASE FROM THE JURY....................................22

III. CONCLUSION ..............................................25

CERTIFICATE OF COMPLIANCE......................................27

CERTIFICATE OF SERVICE...............................................27

# TABLE OF AUTHORITIES

## Cases

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) ..........................7

*Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019) .....................................11

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ....................................................12

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ...................................................................................... 19, 20

*Beacon Theatres v. Westover*, 359 U.S. 500 (1959) .............................24

*Bigelow v. RKO Radio Pictures*, 327 U.S. 251 (1946) ........... 12, 14, 17

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).....7, 13

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ..........7

*Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311 (9th Cir. 1995) .........................................................................................22

*Dimick v. Schiedt*, 293 U.S. 474 (1935) ..............................................23

*Eastman Kodak Co. of New York v. S. Photo Materials Co.*, 273 U.S. 359 (1927) ...........................................................................12

*Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017 (9th Cir. 2022).........23

*FTC v. Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020).........................4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................19

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..................................................................................19

*In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675 (N.D. Ga. 2016)................................................................19

*In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143 (E.D. Pa. 1979).......11

*In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180 (D.N.J. 2003) ....................................... 10

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ...........24

*In re Pork Antitrust Litig.*, No. 18-1776, ___ F. Supp. 3d ___, 2023 WL 26964975 (D. Minn. Mar. 29, 2023) ....................................... 19

*In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280 (N.D. Cal. 2018) ....................................... 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010), *amended in part*, No. M 07-1827 SI, 2011 WL 3268649 (N.D. Cal. July 28, 2011) .................................... 4

*In re Urethane*, 768 F.3d 1245 (10th Cir. 2014) ................................ 10

*In re Vitamins Antitrust Litig.*, 209 F.R.D. 251 (D.D.C. 2002) ..........10

*Jacob v. City of New York*, 315 U.S. 752 (1942) ................................ 23

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ....................................... 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ............................. 21

*N. Pac. Ry. Co. v. United States*, 356 U.S. 1 (1958) ........................... 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022) ................................... passim

*Package Closure Corp. v. Sealright Co.*, 141 F.2d 972 (2d Cir. 1944) ....................................... 20

iv

*Paramount Famous Lasky Corp. v. United States*, 282 U.S. 30 (1930) ................................................................................... 6

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931) ................................................ 5, 12, 17, 20

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .......... 13, 16, 17

*Withrow v. FCA US LLC*, No. 19-13214, 2021 WL 2529847 (E.D. Mich. June 21, 2021) .................................................... 19

## Statutes

15 U.S.C. § 1 ................................................................................. 5

15 U.S.C. § 15 ............................................................................ 18

## Journals

John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries Are Mostly Less Than Single Damages*, 100 IOWA L. REV. 1997 (2014) ................................................................ 22

Nicola Giocoli, *Rejected! Antitrust Economists as Expert Witnesses in the Post-Daubert World*, 42 J. HISTORY ECON. THOUGHT 203 (July 2020) ................................................ 25

Robert H. Lande, *Are Antitrust "Treble" Damages Really Single Damages?*, 54 OHIO ST. L.J. 115 (1993) ........................ 18

## Rules

Fed. R. App. P. 29 ......................................................................... 1

Fed. R. Civ. P. 23 ................................................................... 5, 14

## Other Sources

U.S. CONST. amend. VII .............................................................. 23

## CITATION ABBREVIATIONS

This Brief uses the following abbreviations when referring to filings in the instant appeal:

| | |
|---|---|
| CCAI Br. | Brief of Amici Curiae Computer & Communications Industry Association and International Association of Defense Counsel in Support of Defendants-Appellants Seeking Reversal |
| Chamber Br. | Brief of Amici Curiae the Chamber of Commerce of the United States of America, the American Tort Reform Association, Business Roundtable and the Pharmaceutical Research and Manufacturers of America in Support of Defendants-Appellants |
| Def. Br. | Brief for Defendants-Appellants |
| Plf. Br. | Brief for Plaintiffs-Appellees |

## INTEREST OF AMICUS

American Economic Liberties Project ("AELP") is an independent nonprofit research and advocacy organization dedicated to understanding and addressing the problem of concentrated economic power in the United States.[1] AELP organizes and employs a diverse set of leading policy experts in a wide range of areas impacted by concentrated power that include the healthcare industry, private equity, airlines, and the digital marketplace. It advocates for policies that address today's crisis of concentration through legislative efforts and public policy debates. AELP submits this *amicus* brief because our antitrust laws cannot protect competition if a monopolist can insulate itself from liability by arguing that its market power has become so vast that the individualized damages flowing from its unlawful conduct preclude class certification.

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), no party's counsel authored this brief in whole or part. In addition, no party or party's counsel, and no person other than the amicus curiae, its

---

[1] https://www.economicliberties.us/.

1

supporters, or its counsel, contributed money that was intended to fund preparing or submitting the brief. Counsel for all parties consented to the filing of this brief.

## SUMMARY OF ARGUMENT

Google is a monopolist. Its tentacles have spread through our lives to control every aspect of how we access digital information and products. It controls search engines, digital advertising, and for this Court's purposes, the distribution of Android mobile device applications (or "apps") to tens of millions of consumers and those consumers' ancillary in-app purchases. Google acquired and maintained its monopoly power in the Android App Distribution Market and In-App Aftermarket (the "Relevant Markets") through a wide range of anticompetitive acts and illegal restraints on competition. And it has used its monopoly power to impose supra-competitive commissions on developers in the Relevant Markets, which are in turn passed on to consumers in the form of supra-competitive prices for apps and in-app purchases.

The district court held a lengthy hearing, heard extensive expert testimony, and reviewed a massive record of documents and argument from both sides about Google's anticompetitive behavior. After a rigorous

analysis, it properly determined that (1) the damages model built by Plaintiffs' expert, Dr. Hal Singer, is reliable, relevant, and capable of proving antitrust injury and damages for the putative class; and (2) that any individualized damages issues that might exist do not predominate over the enormous common issue of Google's liability under the Sherman Act and California's Cartwright Act and Unfair Competition Law. It then certified a Rule 23(b)(3) class of consumers who paid for Android apps through the Google Play Store or for in-app digital content through Google Play Billing, from August 2016 to the present (the "Consumer Class"). (1-ER-20, 29.)

Google asks this Court to overturn the class certification order. But in doing so, Google is attempting to wield the very monopoly power that gives rise to Plaintiffs' claims as a shield against liability. Google claims that the problem it created cannot be resolved through a class action because the injuries resulting from its anticompetitive conduct, which Google concedes for class certification was uniform in planning and

implementation,[2] are too "complex and individualized" to be certified. (Def. Br. 59.) According to Google, because its uniform conduct impacted such a wide swath of apps and consumers, determining antitrust injury and calculating the individualized damages that resulted will predominate over the glaring common issue of whether Google willfully acquired and maintained monopoly power in the Relevant Markets.[3] Accepting this argument and allowing Google to weaponize its size to effectively avoid liability would subvert the most fundamental goals of the Sherman Act and Rule 23 and should be rejected.

———————————

[2] Google "*does not disagree* that common evidence is available to prove Google's alleged antitrust violations in the relevant markets." (1-ER-17) (emphasis added). Google also does not challenge the district court's typicality on appeal. Nor could it. "The overarching scheme [to monopolize and restrain trade in the relevant markets] is the linchpin of plaintiffs'... complaint, regardless of the [app] purchased, the market involved or the price ultimately paid. Furthermore, the various [apps] purchased and the different amount of damage sustained by individual plaintiffs do not negate a finding of typicality, provided the cause of those injuries arises from a common wrong." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593–94 (N.D. Cal. 2010), *amended in part*, No. M 07-1827 SI, 2011 WL 3268649 (N.D. Cal. July 28, 2011).

[3] "To establish liability under § 2, a plaintiff must show: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (cleaned up).

4

The Sherman Act, 15 U.S.C. § 1, *et seq.*, and Rule 23 of the Federal Rules of Civil Procedure are both aimed squarely at combatting the type of outsized corporate power that Google has amassed, to level the playing field and deter unlawful conduct that individuals like those in the Consumer Class are normally powerless to stop. If Google has its way, it avoids accountability to the Consumer Class solely because intermediary app developers passed on varying amounts of the supra-competitive commissions that Google collected. But Google "is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which [it] alone is responsible for making, were otherwise." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). Nor does the size of the damages calculations give cause for complaint. The drafters of our antitrust laws allowed for treble damages, and Rule 23 allows consumers to aggregate their claims precisely because concentrated economic power is so dangerous and difficult to contest. Any claim that large damages pose a danger to our judicial system is fiction.

The order certifying the Consumer Class is a proper exercise of the district court's discretion and recognizes the importance of preserving

issues such as credibility and correctness of witness testimony for the trier of fact. Adopting Google's position would wrest those issues from the jury, violating the Consumer Class's constitutional rights guaranteed by the Seventh Amendment. For these reasons, explained more fully below, the district court's ruling should be affirmed.

**ARGUMENT**

## I. THE POLICIES BEHIND THE SHERMAN ACT AND RULE 23 DEMAND CLASS CERTIFICATION

### A. The Sherman Act and Rule 23 Were Designed to Combat Corporate Power

The Sherman Act and Rule 23 are both designed to combat outsized corporate power. The former is "a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 4 (1958). It "'w[as] enacted to prevent not the mere injury to an individual which would arise from the doing of the prohibited acts, but *the harm to the general public* ….'" *Paramount Famous Lasky Corp. v. United States*, 282 U.S. 30, 42 (1930) (emphasis added) (citation omitted). "'The fundamental purpose of the Sherman Act was to secure equality of opportunity and to protect the public against evils commonly incident to destruction of competition through monopolies and combinations in restraint of trade.'" *Id.*

6

Just as the Sherman Act was designed to protect against injury to the general public, Rule 23 is aimed at the "vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017). The policy at the very core of the class action mechanism is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). While large classes inevitably invoke concerns of disparate injury and damages, as the Honorable Richard Posner opined regarding the practical intent of Rule 23:

> "A class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all."

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). And unlike other types of mass injury involving questions of liability affecting individuals in different ways, "predominance is a test *readily met* in certain cases alleging … violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at 625 (emphasis added). It is no surprise, then, that private enforcement of the Sherman Act and Rule 23 frequently work in

tandem to hold powerful corporations accountable for the inherently broad and diffused harms of antitrust violations.

The Sherman Act and Rule 23 are perfectly attuned to address Google's unlawful monopoly power, its anticompetitive conduct, and the resulting injury to the Consumer Class. Google is one of the largest companies in the world and in history, valued at over $1.5 trillion.[4] According to Plaintiffs, "[i]n 2020 alone, the Google Play Store generated revenues of $38 billion, accounting for over 20 percent of the company's total revenue in that year of $182 billion." (1-ER-4) (quoting SAC ¶86). But Google did not gain its power in the Relevant Markets organically, by offering lower prices or superior products. Rather, it was acquired by brute force, through a combination of kickbacks to wireless carriers, technical barriers and misleading warnings, and by pressuring would-be competitors not to create their own app distribution systems. Ultimately, Google "illegally created and maintained a stranglehold over the distribution of apps and in-app content on Android mobile devices, with

---

[4] Patrick McGee, *Alphabet's digital advertising and cloud revenue rises*, FINANCIAL TIMES (July 25, 2023), *available at* https://www.ft.com/content/7617c221-ada8-467a-a443-39968c623d86.

a market share exceeding 90 percent." (Plf. Br. 10) (citing 1-SER-466-67). And with that power, Google controls how over 21 million members of the Consumer Class access apps and purchase in-app content on their Android devices.

Now, Plaintiffs' expert, who has used his expertise in the econometrics field to build a model that estimates overcharges, has calculated class-wide damages at around $18.76 million for app downloads and an additional $4.71 billion for in-app purchases. (2-ER-300; 3-ER-319; 1-ER-20). Yet because each individual class member's damages are so small, sometimes less than a dollar, (3-ER-351), it would be impossible for any of them to proceed individually against Google in court. This is precisely why Rule 23 allows for aggregation of claims, and it is the type of market power—some of the biggest the world has ever seen—that the Sherman Act is meant to confront.

Nonetheless, Google argues that its market power is too broad to be addressed in a single proceeding. Never mind that Google concedes its anticompetitive conduct was uniform. (1-ER-17.) Never mind that it extracted supra-competitive commissions from nearly *every purchase* in the Google Play Store. (1-ER-11.) And never mind that Dr. Singer

9

performed multiple tests using real world data to confirm the accuracy of his pricing model as to individual apps. (1-ER-23.) In the face of evidence that Google engaged in uniform anticompetitive behavior that led to uniform overcharges being levied on nearly every app developer in the Android ecosystem, Google argues that consumers cannot proceed as a class because Google harmed too many people in too varying degrees. But adopting Google's position leaves consumers without any meaningful alternative remedy. And this Circuit and others have rejected these arguments again and again.[5] As *Olean* instructed in an *en banc* decision just last year,

---

[5] *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668–69 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022) ("we have held that a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial"); *In re Urethane*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("The presence of individualized damages issues" does not preclude a court from certifying a class because "[c]lass-wide proof is not required for all issues."); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003) ("Antitrust defendants resisting class certification routinely argue that the complexity of their particular industry make it impossible for common proofs to predominate on the issue of antitrust impact …. [T]he argument is 'usually rejected where the conspiracy issue is the overriding one.'") (citation omitted); *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 266 (D.D.C. 2002) ("[C]ourts have found common impact in

> the district court determined that … [the] model was *capable* of showing that the [] class members suffered antitrust impact on a class-wide basis, *notwithstanding* [the defense expert]'s critique. This was all that was necessary at the certification stage. The [] class did not have to "first establish that it will win the fray" in order to gain certification under Rule 23(b)(3).

*Olean*, 31 F.4th at 681. In other words, Dr. Singer has constructed a model that is capable of determining antitrust impact and damages both at a class-wide level and at a more granular class member-by-class member level. That is all that Rule 23 requires. Allowing a different result for the largest monopolist in history "would provide a roadmap for monopolistic retailers to structure transactions with manufacturers or suppliers so as to evade antitrust claims by consumers and thereby thwart effective antitrust enforcement." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1516 (2019). The entire purpose of the Sherman Act and Rule 23 would be undermined.

---

cases alleging price-fixing despite individual negotiations, varied purchase methods and different amounts, prices, and types of products purchased …."); *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 151–52 (E.D. Pa. 1979) (noting that diversity of product, marketing practices, and pricing have not been fatal to class certification in numerous cases where conspiracy is "the overriding predominant question") (citation omitted); (Pet. Br. 70–71) (collecting cases).

**B.      The Wrongdoer Bears the Risk of Uncertainty**

The Sherman Act and Rule 23 also impose less stringent requirements on proof of damages. The former because "the risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party." *Story Parchment*, 282 U.S. at 563. "[I]t would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." *Id*.; *see also Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 552 (1983) ("Insofar as the amount of damages is concerned, an antitrust plaintiff need only provide a reasonable estimate of the damages stemming from an antitrust violation"); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) ("The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery for a proven invasion of the plaintiff's rights."); *Eastman Kodak Co. of New York v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927) ("a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they

cannot be measured with the same exactness and precision as would otherwise be possible"); *cf. Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) ("the remedial nature of [the FLSA] and the great public policy which it embodies militate against making the burden of proving uncompensated work an impossible hurdle for the employee") (cleaned up).

Rule 23 similarly eschews a need for uniform damages calculations and perfect class definitions. *Olean*, 31 F.4th at 668–69. "[A] district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial." *Id.* at 669. Nor does the need for individualized damages calculations, or the presence of uninjured class members, necessarily undermine the ability to prove common impact. *Id.* at 670, 681-82 & n.32.

As this Court stated when it rejected a strict administrative feasibility requirement, ""ensuring perfect recovery at the expense of any recovery would undermine the very purpose of Rule 23(b)(3)." *Briseno*, 844 F.3d at 1129; *see also Bouaphakeo*, 577 U.S. at 455 ("In many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability."); *Messner v.*

*Northshore Univ. HealthSystem*, 669 F.3d 802, 808 (7th Cir. 2012) ("it is important not to let a quest for perfect evidence become the enemy of good evidence"). And this Court has rightly rejected attempts to place a higher burden of proof on antitrust plaintiffs' claim for monetary damages. *See Olean*, 31 F.4th at 664–65 (rejecting argument that damages should be subject to "clear and convincing evidence" standard); *Bigelow*, 327 U.S. at 264 ("juries are allowed to act on probable and inferential as well as (upon) direct and positive proof") (quotations and citations omitted). The district court correctly acknowledged that "Rule 23 does not demand that all of the world's complexities be smoothed away." (1-ER-22.) It merely requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

Google's erroneous demand for precision, and its assertion that the district court improperly put the burden on Google to demonstrate the number of uninjured class members, (Def. Br. 17), would flip these governing ideas on their heads. This Court is facing a monopolist that controls over 90 percent of the Relevant Markets. (Plf. Br. 10) (citing 3-ER-366-67). Throughout the Class Period, Google has applied a uniform

commission structure affecting all apps and purchases of in-app content, preventing competition that would drive the commission rate lower. (3-ER-349.) An expert economist has determined that Google imposed a supra-competitive "take rate" of 30.1 percent for paid apps (compared to a competitive take rate of 23.4 percent) and a 29.2 percent take rate for in-app content (compared to a competitive take rate of 14.8 percent), resulting in a respective $18.7 million and $4.7 billion in national overcharges.[6] (3-ER-318-319, 351, 362.) This showing of antitrust impact is all that is necessary at the class certification stage. *Olean*, 31 F.4th at 681.

What Google seems to suggest is that "a putative class of 21 million plaintiffs … would be utterly unworkable, cumbersome, and inefficient," (Def. Br. 60), but facing 21 million individual plaintiffs in small claims courts would be preferrable, all because Plaintiffs' damages model does not achieve perfection. This is of course entirely impractical, given that each individual plaintiff would still have to engage in the same costly

---

[6] Google did not challenge Dr. Singer's qualifications, which include a Ph.D. in economics from Johns Hopkins University, numerous academic publications, testimony before Congress, and involvement in antitrust issues throughout his career. (1-ER-10.)

economic analysis and rely on the same expert report to prove overcharges. It is precisely why the Supreme Court has instructed that class action plaintiffs do not have to prove their damages with precision.[7] *Bouaphakeo*, 577 U.S. at 456–57.

In *Bouaphakeo*, employees performed the same work, in the same facility, under the same policy. *Id*. at 459. Tysons objected to certification because each employee worked a different amount of hours, and they were relying on representative evidence that calculated the average time it cook for employees to perform the work that went uncompensated. *Id*. at 450, 454. However, "[i]f the employees had proceeded with 3,344 individual lawsuits, each employee likely would have had to introduce [the expert's] study to prove the hours he or she worked," all of which varied. *Id*. at 456–57. So the Supreme Court instructed that, "under these circumstances the experiences of a subset of employees c[ould] be probative as to the experiences of all of them." *Id*. at 459. And it made clear:

_____

[7] Nonetheless, Dr. Singer has testified that his model uses the same methodology regardless of the app category and can even be run "at an app-by-app level." (2-ER-125.)

16

> In many cases, a representative sample is "the only practicable means to collect and present relevant data" establishing a defendant's liability. In a case where representative evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class. To so hold would ignore the Rules Enabling Act's pellucid instruction that use of the class device cannot "abridge ... any substantive right."

*Id*. at 455 (citing Manual of Complex Litigation § 11.493, p. 102 (4th ed. 2004); 28 U.S.C. § 2072(b)).

To the extent the Consumer Class encompasses some uninjured consumers and consumers with varied damages, long-standing precedent tells us that Google should, as the party who violated the Sherman Act in unprecedented ways, bear that risk and not Google's victims. *See Story Parchment*, 282 U.S. at 565 ("Whatever of uncertainty there may be in this mode of estimating damages, is an uncertainty caused by the defendant's own wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced."). To hold otherwise and require a perfect class definition with a perfectly precise damages model would violate "[t]he most elementary conceptions of justice and public policy." *Bigelow*, 327 U.S. at 265

### C. Congress Intended to Impose Large Penalties on Monopolists

Finally, the Clayton Act and Rule 23 work together to give effect to the goals of the Sherman Act. The former states that private plaintiffs "*shall recover* threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a) (emphasis added). It recognizes the extraordinary harm monopolists like Google can cause to plaintiffs and our markets and the difficulty in quantifying them. Robert H. Lande, *Are Antitrust "Treble" Damages Really Single Damages?*, 54 Ohio St. L.J. 115, 123 (1993). And it is designed both to compensate victims and to deter anticompetitive behavior. *Id*. The latter, Rule 23, is not dependent on the amount of damages at issue and so applies "even though it may expose defendants to the imposition of aggregate liability." *Olean*, 31 F.4th at 665 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010)). "If the size of a defendant's potential liability alone was a sufficient reason to deny class certification, … the very purpose of Rule 23(b)(3)—'to allow integration of numerous small individual claims *into a single powerful*

18

*unit*'—would be substantially undermined."[8] *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010) (emphasis added) (citation omitted).

Amici supporting Google argue that, because the Relevant Markets are so large and the anticompetitive effects of its monopolization of those markets is so widespread, class certification goes against public policy. (Chamber Br. 20–22; CCAI Br. 14–17.) They warn of dangers looming over the head of monopolists in the form of meritless lawsuits extracting outsized settlements from innocent defendants. (Chamber Br. 20–22; CCAI Br. 14–17.) But the size of the class at issue is hardly novel,[9] and

---

[8] So too would Rule 23's goals of "efficiently resolv[ing] the claims of many [and] eliminat[ing] inconsistent rulings" be compromised. *Withrow v. FCA US LLC*, No. 19-13214, 2021 WL 2529847, at *7 (E.D. Mich. June 21, 2021) (citing 7A Charles Wright, Arthur Miller, and Mary Kane, Fed. Prac. and P. § 1754 (3d ed.)).

[9] *See, e.g.*, *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 939 n.4 (9th Cir. 2011) (class with over 100 million purchases); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("nationwide class with millions of class members residing in fifty states"); *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 318 (N.D. Cal. 2018) (settlement class of over 200 million); *In re Pork Antitrust Litig.*, No. 18-1776, ___ F. Supp. 3d ___, 2023 WL 26964975, at *14 (D. Minn. Mar. 29, 2023) (certifying a consumer class composed of "tens of millions of individuals"); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 693 (N.D. Ga. 2016) (class involved "tens of millions of first-bag fee transactions").

the issue of expense is not limited to antitrust cases or even class action litigation more generally. *Package Closure Corp. v. Sealright Co.*, 141 F.2d 972, 978 (2d Cir. 1944).

> To impose peculiarly stiff requirements in treble damage suits will be to frustate the Congressional intent …. "Congress evidently foresaw the wholesome effect of pecuniary responsibility for injuries resulting from such forbidden combinations and the courts should not devitalize the remedy by strained interpretations calculated to encourage disregard of the law."

*Id*. at 978. Thus, "[a]ll that is required of the victim of an antitrust violation is evidence showing 'the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'" *Story Parchment*, 282 U.S. at 563. As this Court stated in a case involving statutory damages under FACTA, "the reason that damages can become enormous … 'does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards [similar to treble damages].'" *Bateman*, 623 F.3d at 722 (citation omitted).

Declaring Google's monopoly "too big to certify" would wholly undermine these principles. Congress recognized the enormous harms that flow from anticompetitive behavior, and it authorized treble damages with the understanding that ordinary calculations would

neither fully compensate the monopolists' victims nor deter the behavior in the first instance. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 635 (1985) ("The treble-damages provision wielded by the private litigant is a chief tool in the antitrust enforcement scheme, posing a crucial deterrent to potential violators."). And in any event, the dystopian picture amici paint is not just exaggerated—it is nearly non-existent.

Empirical studies have shown that antitrust class actions rarely lead to the recovery of treble damages. Instead, recoveries are generally for amounts well below the economic losses that plaintiffs' experts estimate. For example, one study analyzing antitrust cartel cases from 1990 to 2014 found that

> the victims of only 14 of the 71 cartels (20%) recovered their initial damages (or more) in settlement. Only seven (10%) received more than double damages. The rest—the victims in 57 cases—received less than their initial damages. In four cases the victims received less than 1% of damages and in 12 they received less than 10%. Overall the median average settlement was 37% of single damages.

John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries Are Mostly Less Than Single Damages*, 100 IOWA L. REV. 1997,

1998 (2014).[10] In other words, despite Congress intending for the Clayton Act to impose stiff penalties for antitrust violations, offenders rarely if ever feel the full force of the law, and refusing to certify a class because Congress deemed anticompetitive conduct worthy of treble damages is simply not necessary or merited.[11]

## II. GOOGLE'S ARGUMENT WOULD IMPROPERLY WREST THIS CASE FROM THE JURY

The thrust of Google's appeal is that Plaintiffs' expert is wrong and their expert is right. "But the test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). It raises, as the district court correctly noted, a factual issue that falls exclusively within the province of the jury. (1-ER-38); *see Elosu v.*

---

[10] Though this study looked at recoveries in cartel cases, it was noted that "[i]t is much easier to show that a discovered cartel has violated the antitrust laws than a discovered monopoly, so an extremely high multiplier might be appropriate for these cases as well." Connor & Lande, 100 Iowa L. Rev. at 2018.

[11] Or as Professors Connor and Lande concluded, "Because awarded damages are not as a practical matter even close to true treble damages, judges should [] refrain from being ungenerous to victims when they decide standing issues or compute the amounts of damages to award." Connor & Lande, 100 Iowa L. Rev. at 2020–21.

*Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("'[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury'") (citation omitted) (alteration in original). To invade the jury's territory on the factually specific questions raised by Google, for 21 million consumers, would run afoul of one of the most basic principles of our judicial system and the Seventh Amendment to the United States Constitution.

The Seventh Amendment demands that, "[i]n suits at common law, where the value in controversy exceeds twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII. The Supreme Court has extolled its virtues and given the amendment an expansive reading. *See*, *e.g.*, *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) ("Maintenance of the jury as a factfinding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."); *Jacob v. City of New York*, 315 U.S. 752, 752–53 (1942) ("The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh

Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts.").

Unquestionably, this "right to trial by jury applies to treble damage suits under the antitrust laws, and is, in fact, *an essential part of the congressional plan* for making competition rather than monopoly the rule of trade." *Beacon Theatres v. Westover*, 359 U.S. 500, 504 (1959) (emphasis added). And when the factual disputes, including the credibility of an expert, are taken away from the jury, the class members' right to a jury trial is compromised. *See Olean*, 31 F.4th at 681 ("Reasonable minds may differ as to whether the [overcharge] calculated is probative as to all purchasers in the class, but that is a question of persuasiveness for the jury") (cleaned up); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 750 & n.20 (3d Cir. 1994) (recognizing that the Federal Rules of Evidence "favor admissibility" and refusing to set the bar for expert testimony too high, in part because of the Seventh Amendment right to a jury trial). Yet this happens time and again in antitrust cases. "[S]ystematic analysis … reveals that antitrust economists testifying for the plaintiff have approximately a one-in-two

chance that at least part of their opinion will be excluded—an abnormal percentage in comparison with other disciplines, including other areas within economics." Nicola Giocoli, *Rejected! Antitrust Economists as Expert Witnesses in the Post-Daubert World*, 42 J. HISTORY ECON. THOUGHT 203, 210 (July 2020).

The overly restrictive evaluation of expert testimony that Google suggests creates an enormous barrier to private antitrust enforcement that is perilously close to denying victims of monopolization their constitutional right to a jury a trial. The questions Google raises about Dr. Singer's testimony are, as the district court found, not ones of admissibility; they are appropriate for cross-examination. (1-ER-22.) To hold otherwise simply absolves Google of its wrongdoing and enhances its power over the Relevant Markets, with no end in sight.

## III. CONCLUSION

For the foregoing reasons, the district court's class certification ruling should be affirmed.


[signature of counsel on following page]


25

Dated: August 7, 2023                Respectfully submitted,

_s/ Katherine Van Dyck_
Katherine Van Dyck
Lee A. Hepner
American Economic Liberties Project
2001 Pennsylvania Avenue NW
Suite 540
Washington, DC 20006
(202) 904-8101
kvandyck@economicliberties.us

Counsel for Amicus Curiae

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this is an amicus brief that complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 5,227 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief further complies with the type size and typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14- point size.

*s/ Katherine Van Dyck*
Katherine Van Dyck
Counsel for Amicus Curiae

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2023, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the system.

*s/ Katherine Van Dyck*
Katherine Van Dyck
Counsel for Amicus Curiae

27