**Docket No. 23-15285**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

In re: GOOGLE PLAY STORE ANTITRUST LITIGATION,

MARY CARR, Individually and on behalf of all others similarly situated, et al.,

*Plaintiffs-Appellees,*

v.

GOOGLE, LLC, et al.,

*Defendants-Appellants.*

AMAZON.COM LLC,

*Intervenor.*

_____

*Appeal from a Decision of the United States District Court for the Northern District of California,*
*No. 3:20-cv-05761-JD · Honorable James Donato*

**BRIEF *AMICUS CURIAE* OF THE COMMITTEE TO SUPPORT THE**
**ANTITRUST LAWYERS IN SUPPORT OF APPELLEES MARY CARR, ET AL.**

VICTORIA SIMS, ESQ.*admission pending
CUNEO GILBERT & LADUCA
4725 Wisconsin Avenue NW, Suite 200
Washington, District of Columbia 20016
(202) 789-3960 Telephone
Vicky@cuneolaw.com

JENNIFER R. SCULLION, ESQ.
HILLARY FIDLER, ESQ.
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
(973) 639-9100 Telephone
jscullion@seegerweiss.com
hfidler@seegerweiss.com

*Counsel For Amicus Curiae The Committee to Support the Antitrust Lawyers*

 COUNSEL PRESS INC. · (213) 680-2300          PRINTED ON RECYCLED PAPER 

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, the Committee to Support the Antitrust Laws states that it is a nonprofit corporation and no entity has any ownership interest in it.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ...........................................i

TABLE OF CONTENTS........................................................ ii

TABLE OF AUTHORITIES ................................................. iii

INTEREST OF AMICUS CURIAE ......................................1

I.    INTRODUCTION ..........................................................1

II.    ARGUMENT..............................................................5

    A.    A Rule 23 Rigorous Analysis Looks to the Capacity to Resolve Issues on a Classwide Basis, Not Which Side Will Win .....................5

        1.    The District Court Conducted a Rigorous Analysis .................8

        2.    Rule 23 Does Not Require the District Court to Determine Which Expert is Correct About the "But-For World" to Find Predominance ..................................11

    B.    Google's Intent to Challenge the Accuracy of Dr. Singer's Models Does Not Turn a Common Issue Into an Individual Issue.......................................................13

    C.    The Potential for Individualized Damages Calculations Does Not Preclude Class Certification .......................................16

    D.    Antitrust Policy Supports Class Certification ....................................19

III.    CONCLUSION.......................................................21

CERTIFICATE OF COMPLIANCE.....................................................22

CERTIFICATE OF SERVICE .......................................................23

# TABLE OF AUTHORITIES

## CASES

*Abernathy v. DoorDash, Inc.*,
    438 F. Supp. 3d 1062 (N.D. Cal. 2020) ..................................................19, 20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)...........................................................5, 6, 8, 13, 14

*Beacon Theatres, Inc. v. Westover*,
    359 U.S. 500 (1959)...................................................................................7

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)....................................................................................16

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ...................................................................13

*Gonzalez v. U.S. Immigration & Customs Enf't*,
    975 F.3d 788 (9th Cir. 2020) ...................................................................18

*Hawaii v. Standard Oil Co.*,
    405 U.S. 251 (1972)..................................................................................19

*In re Korean Ramen Antitrust Litig.*,
    2017 WL 235052 (N.D. Cal. Jan. 19, 2017)..............................................12

*In re Lidoderm Antitrust Litig.*,
    2017 WL 679367 (N.D. Cal. Feb. 21, 2017).........................................11, 12

*In re Optical Disk Drive Antitrust Litig.*,
    2016 WL 467444 (N.D. Cal. Feb. 8, 2016)................................................12

*In re Packaged Seafood Prod. Antitrust Litig.*,
    332 F.R.D. 308 (S.D. Cal. 2019) ..............................................................10

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ............................................................16, 17

*Lambert v. Nutraceutical Corp.*,
    870 F.3d 1170 (9th Cir. 2017), *rev'd and remanded on other grounds*,
    139 S. Ct. 710 (2019)..................................................................................17

iii

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ......................................................................17

*Memorex Corp. v. Int'l Bus. Machines Corp.*,
555 F.2d 1379 (9th Cir. 1977)......................................................................1

*Mitsubishi  Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ......................................................................................1

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods*,
31 F.4th 651 (9th Cir. 2022) ................................................................*passim*

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)......................................................................................7

*Perma Life Mufflers, Inc. v.  Int'l Parts Corp.*,
392 U.S. 134 (1968) ......................................................................................1

*Ross v. Bernhard*,
396 U.S. 531 (1970)......................................................................................7

*Ruiz Torres v. Mercer Canyons*,
835 F.3d 1125 (9th Cir. 2016) ....................................................................7

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)......................................................................................7

*Stockwell v. City & County of San Francisco*,
749 F.3d 1107 (9th Cir. 2014) ..................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)....................................................................3, 6, 14, 16

*United States v. Falstaff Brewing Corp.*,
410 U.S. 526 (1973)....................................................................................13

*United States v. Topco Assocs., Inc.*,
405 U.S.  596 (1972) ....................................................................................1

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..............................................................................12, 13

*Weeks. v. Bareco Oil Co.*,
    125 F.2d 84 (7th Cir. 1941) ............................................................................20

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ......................................................................16

## COURT RULES

Federal Rules of Civil Procedure Rule 23 ........................................................5

Federal Rules of Civil Procedure Rule 23(b)(3)..............................................2, 5, 7

Federal Rules of Civil Procedure Rule 52 ........................................................10

Federal Rules of Civil Procedure Rule 23(f) ...................................................4

## OTHER AUTHORITIES

Michelle M. Burtis & Darwin V. Neher, *Correlation and Regression*
    *Analysis in Antitrust Class Certification*,
    77 Antitrust L.J. 495 (2011) ..........................................................................6

## <u>INTEREST OF AMICUS CURIAE</u>

"Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972). The Supreme Court and this Court have long recognized the key role private litigants play in enforcing federal antitrust laws. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 635 (1985) ("Without doubt, the private cause of action plays a central role in enforcing this regime."); *Memorex Corp. v. Int'l Bus. Machines Corp.*, 555 F.2d 1379, 1383 (9th Cir. 1977) ("[T]he purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws.") (quoting *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968)).

The Committee to Support the Antitrust Laws (COSAL) is an independent, nonprofit corporation devoted to preventing, remediating, and deterring anticompetitive conduct through the enactment, preservation, and enforcement of a

1

strong body of antitrust laws.[1] Victims of Google's misconduct here would have no recompense without private action.

## I.  INTRODUCTION

This Circuit has vigilantly guarded the distinction between a plaintiff's burden at class certification and its burden at trial. It should reject Google's arguments, each of which seeks to impose unworkably high standards on the use of expert models that lie at the heart of modern antitrust class actions. That Google is among the world's largest companies interacting daily with tens of millions of U.S. consumers is reason to ensure effective access to class remedies, not raise new obstacles.

*          *          *

A District Court must "rigorous[ly]" assess whether a plaintiff has shown its proposed class meets Rule 23(b)(3)'s requirements, including "predominance." *Olean Wholesale Grocery Coop. v. Bumble Bee Foods*, 31 F.4th 651, 664 (9th Cir. 2022). But when deciding whether an issue is "common," the court looks only to whether the plaintiff's evidence is "capable" of giving a classwide answer. *Id*. at 666-67. The persuasiveness of the evidence is the exclusive province of the jury. *Id*.

---

[1] Amicus states that no counsel for a party has authored this brief in whole or in part, and no party, party's counsel, or any other person or entity—other than COSAL— has contributed money that was intended to fund its preparation or submission. In addition, no COSAL member whose firm is counsel for a party had any involvement in the organization's decision to file this amicus brief. All parties have consented to the filing of this brief.

This fundamental distinction between the capacity of the evidence and its ultimate persuasiveness applies with equal force when a class plaintiff relies on expert modeling or aggregate data analyses to prove an element of its case. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *Olean*, 31 F.4th at 667-68. Where a plaintiff's model is capable of proving an issue on a classwide basis, the fact that a defendant seeks to prove the model is "unrepresentative or inaccurate" as to individual class members does not turn a common issue into an individualized one. *Tyson Foods*, 577 U.S. at 459-60. Such challenges to a model are themselves "common to the claims made by all class members." *Id.* at 457.

The District Court below followed all of these rules. It conducted a robust and rigorous analysis, actively probing both sides' expert evidence. The District Court did not gloss over Dr. Burtis' challenges to Dr. Singer's analyses. It simply found her evidence did not show Dr. Singer's models were <u>incapable</u> of proving pass-through on a classwide basis. (ECF No. 383 (hereinafter Op.) at 10-11 & 18-20.) Under *Olean*, that ended the inquiry for purposes of class certification.

Google points to no grounds to disturb the District Court's assessment. It feigns to assert the District Court committed three "errors" of law. But Google's appeal boils down to one complaint: that the District Court did not "credit" Google's view of the "evidence" (Dr. Burtis' opinions) over Dr. Singer's analysis.

3

(Defendants' Petition for Permission to Appeal an Order Granting Class Certification Pursuant to Rule 23(f) (hereinafter Pet.) at 23.)

Because the law plainly prohibits such decisions at class certification, Google claims Dr. Singer and the Court ignored "real-world evidence" that, Google argues, precludes Dr. Singer's classwide pass-through model and raises the spectre of millions of uninjured class members.  (Pet. at 17-20)

This is smoke and mirrors. The dispute between Drs. Singer and Burtis was not about what happened in the "real-world," i.e., the world constrained by Google's antitrust violations. The dispute was over what would have happened in a hypothetical "but-for world" free of Google's constraints. Drs. Singer and Burtis each analyzed—but fundamentally disagreed—on whether Google app developers who used "Focal Point Pricing" in the "real-world" would have used the same pricing strategy in the "but-for world."

Similar disagreements among economists over how to extrapolate from "real-world" behavior to hypothetical "but-for world" behavior occur in nearly every antitrust case. The District Court was not required to determine which expert's view was correct or even more persuasive. Whether a jury ultimately agrees with Dr. Singer or Dr. Burtis, the issue will still be a common one—i.e., how developers who used Focal Point Pricing in the "real-world" would price their apps in a "but-for world" free from Google's competitive constraints.

If the jury agrees with Dr. Singer's analysis, the model will identify the fact and extent of injury on a classwide (or, if needed, app-by-app basis) without a need for individualized trials. Conversely, if Dr. Burtis' view prevails, Plaintiffs' proof on a central element will fail, the litigation will end, and Google will not be exposed to millions of individual trials, let alone millions on uninjured class members. But the fact that Dr. Singer and Dr. Burtis disagree on big numbers does not alter the Rule 23 analysis—and does not make a Google Play consumer class "too big to certify."

## II.  ARGUMENT

### A.  A Rule 23 Rigorous Analysis Looks to the Capacity to Resolve Issues on a Classwide Basis, Not Which Side Will Win

Google expressly—and improperly—urges this Court to do on appeal what the District Court was prohibited from doing below: "credit" Google's view of "overwhelming evidence" that, Google claims, compels individual injury trials. (Pet. at 23). Google's approach would turn the established rules of class certification on end.

Although a court must conduct a "rigorous" analysis to determine whether a plaintiff has met Rule 23(b)(3)'s requirements for class certification, the rule requires only that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original). Even if a

district court "considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue," it "cannot decline certification" on that basis. *Olean*, 31 F. 4th at 667.

*Olean* squarely holds that these rules apply with equal force when plaintiffs rely on experts' models to prove injury and damages. *Id.* at 685. A district court is in the best position to evaluate the quality of a plaintiffs' proffered evidence on a "common" issue. It does not abuse its discretion in finding an issue is "common" unless the proffered evidence is so "flawed" that it is "<u>incapable</u> of providing class-wide proof" because it would not "sustain a jury verdict." *Id.* (emphasis added).

The views of Dr. Burtis and other frequent defense experts criticizing the use of models to prove classwide injury are well known and oft heard. *Id.* at 684-85 (citing Michelle M. Burtis & Darwin V. Neher, *Correlation and Regression Analysis in Antitrust Class Certification*, 77 Antitrust L.J. 495, 518 (2011)). Again, this Circuit has held a firm line: the mere fact that a defendant may seek to prove at trial that a plaintiff's model is "unrepresentative or inaccurate" as to individual class members does not turn a common issue into an individualized one. *Id.* at 668 (quoting *Tyson Foods,* 577 U.S. at 459-60). Such challenges to a model are themselves "common to the claims made by all class members." *Id.* (quoting *Tyson Foods*, 577 U.S. at 457); *Amgen*, 568 U.S. at 468. And where, as here, a plaintiff class has staked their case on proving an element solely through common, classwide

evidence—such as a model—a failure of proof will result in <u>preclusive</u> classwide judgment for the defendant, not a series of individual trials. *E.g.*, *Ruiz Torres v. Mercer Canyons*, 835 F.3d 1125, 1139-40 (9th Cir. 2016) (affirming class certification; questions as to whether plaintiffs' aggregate data set accurately reflected actual hours worked were matters for summary judgment).

It is critically important that district courts do not cross the line from a rigorous analysis for class certification to, as Google seeks, decide which side's expert to believe on the merits. Antitrust class plaintiffs have a Seventh Amendment right to have their claims decided by a jury. *E.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959) ("[T]he right to trial by jury applies to treble damage suits under the antitrust laws."); *Ross v. Bernhard*, 396 U.S. 531, 541 (1970) ("class action plaintiffs may obtain a jury trial on any legal issues they present."). This Circuit underscored in *Olean* that class certification under Rule 23(b)(3) is a procedural mechanism intended only to enhance plaintiffs' practical ability to recover damages, but otherwise "leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Olean*, 31 F.4th at 663 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010)). It was not meant to— nor could it Constitutionally—be used to dilute or negate class members' rights to a jury trial. *See e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845-46 (1999) (construing Rule 23 to avoid conflicts with Seventh Amendment).

Here, the District Court properly held the line between class certification and merits decisions. It engaged in a robust, rigorous analysis of the evidence Plaintiffs proffered to prove injury and calculate damages on a classwide basis. The record demonstrates that Dr. Singer's models and opinions were well-grounded in both economic theory and the record. He also cogently explained why he disagreed (a) with Dr. Burtis' interpretation of Google's "real-world evidence" of developer pricing behavior and (b) with Dr. Burtis' opinions on whether the same pricing behavior would have prevailed in the very different, hypothetical "but-for world" without Google's challenged business restraints. Contrary to what Google argues, no case authorizes—let alone requires—a District Court to decide on class certification which expert to "credit" about how a hypothetical, "but-for world" would have operated. *See Olean*, 31 F.4th at 679 (explaining defendants' arguments against the expert model "improperly conflates the question whether evidence is capable of proving an issue on a class-wide basis with the question whether the evidence is persuasive. A lack of persuasiveness is not fatal at certification." (citing *Amgen*, 568 U.S. at 459–60)).

### 1. The District Court Conducted a Rigorous Analysis

Google's claim that the District Court "failed to engage" with Google's criticisms of Dr. Singer's analysis (Pet. at 3) cannot be squared with the extensive

record to the contrary. Class certification must be "rigorous." But it is not summary judgment or trial.

By any measure, the District Court's approach to class certification was robust, deliberate, and engaged and far exceeded anything required by Rule 23. The court (i) reviewed extensive briefing by both parties and experts, including the experts' reports, (ii) moderated a live, expert "hot tub" session, during which it pointedly questioned both experts on "top areas of disagreement" that each expert had been asked to identify to the court in advance, (iii) sought and obtained additional clarification from the experts after the "hot tub", and (iv) held a hearing on the parties' cross-motions for class certification and *Daubert* exclusion. *See generally* Hr'g Tr., No. 21-md-02981 (N.D. Cal. July 19, 2022), ECF No. 302 (hereinafter "Hot Tub Tr."); Hr'g Tr., No. 21-md-02981 (N.D. Cal. Aug. 4, 2022), ECF No. 318.

The District Court's opinion spans more than 25 pages. Again, the rigor of its analysis is undeniable. That rigor is evident in the court's detailed, thoughtful explication of Dr. Singer's three models, the pass-through analysis, and Dr. Burtis' criticisms. (Op. at 8-11; 16-21). Ultimately, it concluded those criticisms raised only issues for trial, rather than fatally undermining Dr. Singer's model.

Relevant here, the court observed that Dr. Singer did not simply "assume" that the Google Play app categories reflected "meaningful arena[s] of competition." *Id.*

at 10. He <u>tested</u> and found "a very tight fit" for each category. *Id.* The court also noted Dr. Singer had explained why he chose to use a logit model, instead of a more "traditional" regression analysis—and, again, that Dr. Singer tested the model to confirm it was fit for the task. *Id.* at 11. The District Court (and Dr. Singer) each also addressed Dr. Burtis' Focal Point Pricing arguments. (Op. at 20); (Dr. Singer Reply Report, ECF No. 251-4 (hereinafter "Singer Reply") at ¶¶ 26-31).

Google's complaint that the District Court did not "explain" its thinking on Google's "real-world evidence" of pricing behavior (Pet. at 4) falls flat. Class certification is not a "mini-trial" on the merits and a class certification order does not require the equivalent of Fed. R. Civ. P. 52 findings of fact. As in *Olean [Packaged Seafood Prod.]*, it is enough that Dr. Singer in fact addressed Dr. Burtis' arguments about the alleged relevance of Focal Point Pricing to developer pricing in the "but-for world,"[2] and that the District Court was not persuaded that Google's evidence raised anything more than the potential for some "idiosyncratic" behavior. (Op. at 20). *Compare In re Packaged Seafood Prod. Antitrust Litig.*, 332 F.R.D. 308, 343 (S.D. Cal. 2019) (summarily observing that plaintiffs' expert discussed "focal point pricing" in his report).

---

[2] Singer Reply at ¶¶ 26-31.

**2.     Rule 23 Does Not Require the District Court to Determine Which Expert is Correct About the "But-For World" to Find Predominance**

Google portrays this case as one in which Plaintiffs' expert and the District Court ignored "real-world" evidence concerning the use of Focal Point Pricing among developers and certain developers' reactions in the "real-world" to Google lowering its service fees (in limited circumstances). Google is wrong. Both Dr. Singer and Dr. Burtis addressed the "real-world pricing" evidence. But they fundamentally disagreed on the <u>significance</u> of pricing behaviors in the "real-world"—the world constrained by Google's monopolistic actions—to project pricing behavior in a hypothetical "but-for world" without Google's unlawful conduct. Dr. Singer explained in detail (i) the serious limitations of the pricing data Dr. Burtis relied on, (ii) errors in her analysis of the pricing data, and (iii) why, in the absence of Google's constraints, a profit-maximizing developer <u>would</u> pass on savings from lower Google service fees, even if that meant pricing its apps or in-app features at figures that do not end in $.99. (Singer Reply ¶¶ 26-31); (Hot Tub Tr. 67:23-69:18).

Such "battles of the experts" are common in antitrust cases. They are the stuff of cross-examination on the merits, not grounds that preclude class certification as a matter of law. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *18, 23 (N.D. Cal. Feb. 21, 2017) (discussing expert disputes and reasoning that "[w]hat,

11

in the end, the but-for price is determined to be is subject to further merits-based determinations and findings by the trier of fact..."; "[the court] will not determine the impact of that 'real world' data on a motion for class certification."); *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *13, 16 (N.D. Cal. Jan. 19, 2017) (granting class certification stating "Defendants' criticisms as to [Plaintiffs' expert's] costs, and the role they play in setting his but-for price, rest primarily on disputes of fact and the reasonableness of assumptions made by the experts on both sides… [which] can be attacked at summary judgment or trial."); *In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444, at *10-11 (N.D. Cal. Feb. 8, 2016) (granting class certification and weighing experts disputes on price points and real world evidence that cost-savings are not always passed through; defendants "have merely created a triable issue of fact…The crucial point is that whether the IPPs theory is right or wrong, it is something that can be decided on a class-wide basis.").

The dispute between Dr. Singer and Dr. Burtis over hypothetical "but-for world" pricing behavior is also fundamentally different from the types of factual disputes courts sometimes need to decide to determine whether a plaintiff's evidence is capable of resolving a common issue for the class. *See Olean*, 31 F.4th at 667. For example, before certifying a nationwide class alleging employment discrimination, a court may need to determine whether the employment decisions were made pursuant to a national policy or local discretion. *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 357-59 (2011); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011). Here, Google does not contend (and Dr. Burtis did not opine) that there was anything about the structure of the "but-for world" that would <u>preclude</u> developers from acting in the profit-maximizing manner Dr. Singer demonstrated. And it is inherently reasonable to assume market participants will act to maximize profits. "[C]orporations are, after all, profit making institutions, and, absent special circumstances, they can be expected to follow courses of action most likely to maximize profits." *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 568 (1973) (Marshall, J., concurring). Thus, the dispute here is over <u>whether</u> developers would act as Dr. Singer predicts or as Dr. Burtis predicts in the "but-for world." Such disputes go to the ultimate merits and, therefore, are not appropriate to resolve on class certification. *See*, *e.g.*, *Amgen*, 568 U.S. at 460 (courts must not "put the cart before the horse" by requiring resolution of disputed merits issues); *Olean*, 31 F.4th at 667.

### B. Google's Intent to Challenge the Accuracy of Dr. Singer's Models Does Not Turn a Common Issue Into an Individual Issue

It is well established that class plaintiffs can offer economic or statistical modeling to prove key elements of their case on a common, classwide basis. *See Tyson Foods,* 577 U.S. at 455. Economic and statistical modeling are central to the effective use of class actions. Indeed, such models often are "the only practicable means" to establish a defendant's liability. *Id.* at 455; *Olean*, 31 F.4th at 685

("statistical models … have been accepted as probative in a range of litigation contexts").

Arguments like Google's that a class's model is "unrepresentative" or "inaccurate" with respect to how individuals actually act are often heard. But such defenses are themselves "common" to the claims of all class members and do not defeat predominance. *Id.* at 668; *see also Tyson Foods*, 577 U.S. at 457.

In *Tyson Foods*, for example, the defendant offered testimony from individual class members to contradict the plaintiff's model about the average time it took them to don and doff their work gear. 577 U.S. at 478 (Thomas, J., dissenting). The Court reasoned that the use of individual evidence to challenge the classwide model did not mean the donning/doffing time was an individualized issue. To the contrary, the Court observed that the class plaintiffs' had staked their claim on their classwide model, such that "'failure of proof on th[is] common question' likely would have ended 'the litigation and thus [would not have] cause[d] individual questions ... to overwhelm questions common to the class.'" *Id.* at 457 (quoting *Amgen*, 568 U.S. at 468).

Here, as in *Olean*, Plaintiffs proffered a robust expert opinion and economic model which, if accepted by a jury, demonstrates the fact of injury and calculates the amount of damages "in one stroke" for the class. *See Olean*, 31 F.4th at 666, 675. And, just as in *Olean*, Google's criticisms of Dr. Singer's approach raise common,

14

classwide issues. Dr. Burtis' thesis is that developers' preference for Focal Point Pricing is not tied to any of Google's challenged practices and, therefore, they would have used Focal Point Pricing in the "but-for world." But that thesis simply assumes a behavior by all developers. The issue of pricing behavior in the "but-for world" is still a common issue.

Google may seek to persuade a jury to accept Dr. Burtis' opinion by offering testimony from individual developers about how they might have priced in the hypothetical "but-for world." But that is Google's choice.[3] Google's strategic choice to offer testimony from individual developers to bolster its classwide view of the "but-for world" does not transform the common issue—how profit-maximizing developers would price in the "but-for world"—into an individual one. Plaintiffs have staked their proof of injury and damages on Dr. Singer's analyses and models. If Google persuades a jury that Dr. Singer is wrong—including by presenting evidence that, Google says, shows developers would not act as Dr. Singer predicts— the litigation will end. And it will end preclusively on a class basis. There is no risk that the case devolves into years of consumer-by-consumer mini-trials.

---

[3] The district court would be within its discretion to limit such testimony, not permit Google to call a witness from every app developer to speculate about how they might have priced in a "but-for world" free of Google's challenged restraints.

*Tyson Foods* also rejected arguments, like Google's, that the use of a classwide model "deprive[s]" a defendant of its "ability to litigate individual defenses." 577 U.S. at 457. Google points to no idiosyncratic facts, issues, or defenses to be tried for individual class members. Instead, Google's "individual defenses" really are just the same issue over and over: in the hypothetical world without Google's challenged practices, would the developer of a given app have priced as Dr. Singer's model predicts?

### C.    The Potential for Individualized Damages Calculations Does Not Preclude Class Certification

The District Court also correctly found Dr. Singer's models rendered damages a largely common issue and that the need to calculate damages individually did not preclude certification. (Op. at 23).

"[T]here is no per se rule that a district court is precluded from certifying a class if plaintiffs may have to prove individualized damages at trial." *Olean*, 31 F.4th at 681-82. And, as this Court held in *Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017), the requirement to show that "damages are capable of measurement on a classwide basis" simply requires a plaintiff to show "that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs'

legal theory." *Id*. at 1120 (citing *Comcast Corp. v. Behrend,* 569 U.S. 27, 34-36 (2013)).[4]

Where, as here, Plaintiffs present a reliable classwide impact model, the need to apply the model to mechanically calculate damages individually does not preclude certification, as the District Court correctly observed. (Op. at 23) (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). "[A] district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial, a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones." *Olean,* 31 F.4th at 669. Thus, as here, "the damages calculation" needed for individual class members "does not defeat class action treatment." *Yokoyama*, 594 F.3d at 1094.

As part of its rigorous analysis, the District Court properly determined that Dr. Singer's economic model can calculate damages on "an app-by-app level" which shows that the "same methodology can be used by every class member." (Op. at 23). Because Dr. Singer's model thus could be applied to determine pricing in the but-for world for each app (*id.*), the only "individualized" issue would be determining

---

[4] Google's authorities hold the same—albeit in sections Google fails to quote. *See*, *e.g.*, *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd and remanded on other grounds*, 139 S. Ct. 710 (2019) ("Comcast stood only for the proposition that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.") (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).

which app purchases or in-app purchases each class member made and at what real-world pricing. Such straightforward individual issues plainly are outweighed by the more complex, disputed, weightier common issues of monopolization and how developers would price in the but-for world. Thus, as is typical in antitrust cases, the common liability issues predominated over individualized damages calculations and, therefore, class certification was proper.

Google's arguments again boil down to a dispute over which expert is right about what the pricing would have been in the but-for world. The law is settled, however, that "a common contention need not be one that will be answered, on the merits, in favor of the class." *Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020) (quoting *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014)). It is enough that, if Plaintiff's model is accepted by the jury, it will allow damages to be calculated by a common formula. *Olean*, 31 F.4th at 666, 675. Merit-based disputes such as Google's are to be addressed on cross-examination. They are not a reason to deny class certification. *Id.* at 681 ("Reasonable minds may differ as to whether the [Dr. Singer's] calculat[ions are] probative as to all purchasers in the class, but that is a question of persuasiveness for the jury.").

18

### D. Antitrust Policy Supports Class Certification

Class actions in antitrust conspiracies offer the best means for both redress and deterrence because the defendant's wrongful conduct has harmed many purchasers and caused injuries that are large in the aggregate, but not cost-effective for victims to seek redress through individual litigation. *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266 (1972) ("Rule 23 of the Federal Rules of Civil Procedure…enhance[s] the efficacy of private [antitrust] actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture."); *Amchem Prods.,* 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quotation omitted).

Were it not for Google's desire to gain a procedural advantage when its conduct has injured so many consumers for relatively small amounts, it is unlikely Google would forgo class certification in order to assert individual defenses. Google's *overall* liability remains the same if the court decertifies this case. Google would no doubt appreciate the class mechanism if class members each brought individual actions, just as DoorDash did when more than 5,800 of its couriers

sought to enforce arbitration provisions in their agreements. DoorDash, faced with more than $11 million in administrative fees, sought an indefinite stay of those arbitrations because it would be more efficient to resolve the plaintiffs' claims in a class action. *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1064 (N.D. Cal. 2020). In such a case, class certification "should be beneficial to [Defendants]— they have but one suit to meet, instead of innumerable ones." *Weeks. v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941).

Google does not ask the court to adopt its arguments to give it the chance to raise individual defenses. It wants to raise the bar on class certification so it never has to raise those defenses at all. *Id.* ("If the defense is to create barriers, and to make litigation expensive, so as to avoid trial, the opposition by defendants to a single trial can better be understood and appreciated."). The Court should reject Google's efforts, as the District Court did below. Antitrust cases are especially well-suited for class-treatment because the central issues—here, Google's acts of monopolization — are common to every class member.

## III.   CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's grant of class certification.

Dated: August 7, 2023

/s/ Jennifer R. Scullion
Jennifer R. Scullion
Hillary Fidler
SEEGER WEISS LLP
55 Challenger Rd., 6th Fl.
Ridgefield Park, NJ 07660
Tel: 973-639-9100
jscullion@seegerweiss.com
hfidler@seegerweiss.com

Victoria Sims
CUNEO GILBERT & LADUCA
4725 Wisconsin Avenue NW, Suite 200
Washington, D.C. 20016
Tel: 202-789-3960
Direct: 202-449-3958
Fax: 202-789-1813
Vicky@cuneolaw.com

*Counsel for Amicus Curiae the Committee to Support the Antitrust Lawyers*

21

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 23-15285 _____

I am the attorney or self-represented party.

**This brief contains 4,742 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[XX] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Jennifer R. Scullion _____ **Date** August 7, 2023 _____

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

  /s/ Jennifer R. Scullion