**No. 23-15285**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION

———————————

MARY CARR, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED, ET AL.,

*Plaintiffs-Appellees,*

v.

GOOGLE LLC, ET AL.,

*Defendants-Appellants.*

———————————

On Interlocutory Appeal from the United States District Court
for the Norther District of California, No. 21-md-2981; No. 20-cv-5761
Hon. James Donato

———————————

**BRIEF FOR THE AMERICAN ANTITRUST INSTITUTE AS AMICUS
CURIAE IN SUPPORT OF PLAINTIFFS-APPELLEES**

———————————

KATHLEEN W. BRADISH
AMERICAN ANTITRUST INSTITUTE
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(202) 304-0195
kbradish@antitrustinstitute.org

*Counsel for Amicus Curiae*
*American Antitrust Institute*

August 7, 2023

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Appellate Rule 26.1(a), the American Antitrust Institute states that it is a nonprofit, non-stock corporation. It has no parent corporations, and no publicly traded corporations have an ownership interest in it.

\

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

STATEMENT OF INTEREST ................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................... 2

ARGUMENT............................................................................................................ 4

    I.   The district court applied the correct standard in assessing Google's "uninjured class member" arguments………………………..………………..…4

    II.   The district court did not improperly shift the burden of showing predominance to Google ........................................................................... 9

    III. There is no special Article III standing requirement for "pass-through" at the class certification stage…………………………………………………...12

CONCLUSION.................................................................................................... 16

CERTIFICATE OF COMPLIANCE………………………………………. ….18

CERTIFICATE OF SERVICE……………………………………………19

# TABLE OF AUTHORITIES

<u>CASES</u>

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ..................................................................... 2, 3, 8

*Apple, Inc. v. Pepper.*,
   139 S. Ct. 1514 (2019) .................................................................... 2

*Halliburton Co.v. Erica P. John Fund, Inc*,
   573 U.S. 258 (2011) ..................................................................... 12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 564 (1992) ................................................................14

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) ................. 5,16

*Olean Wholesale Grocery Coop., Inc. v. BumbleBee Foods, LLC,*
31 F.4ᵗʰ 651 (9th Cir. 2022)…………………………………………..……*passim*

*Oneida Indian Nation of N.Y. v. County of Oneida*,
414 U.S. 661, 666 (1974)........................................................................ 14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)…………………………………………………..…..16

*Steel Co. v. Citizens for a Better Environment,*
   523 U.S. 83 (1998) ........................................................................ 13

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016)..................................................... 15, 16

*TransUnion LLC v. Ramirez.*,
   141 S.Ct. 2190 (2021) ......................................................... 13, 15, 16

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ..................................................................*passim*

*Van v. LLR, Inc.,*
61 F.4th 1053 (9th Cir. 2023) .......................................................................... *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .............................................................................................. 6


RULES

Fed. R. Civ. P. 23(b)(3) ...................................................................................... *passim*


OTHER AUTHORITIES

Joshua P. Davis and Robert H. Lande, Defying Conventional Wisdom: The Case
for Private Antitrust Enforcement, 48 GA. L. REV. 1 (2013)……………………17

Robert H. Lande and Joshua P. Davis, Comparative Deterrence from Private
Enforcement and Criminal Enforcement of the U.S. Antitrust Laws, 2011 B.Y.U. L.
REV. 315………………………………………………………………………17

2021 Antitrust Annual Report: Class Actions in Federal Court (Center for
Litigation and Courts, UC Hastings Law; Huntington Bank)……………………17

iv

## INTEREST OF AMICUS CURIAE[1]

The American Antitrust Institute ("AAI") is an independent nonprofit organization devoted to promoting competition that protects consumers, businesses, and society. It serves the public through research, education, and advocacy on the benefits of competition and the use of antitrust enforcement as a vital component of national and international competition policy. AAI enjoys the input of an Advisory Board that consists of over 130 prominent antitrust lawyers, law professors, economists, and business leaders. See http://www.antitrustinstitute.org.[2] AAI submits this brief because the district court decision on class certification properly applies the Rule 23 predominance standard and should be upheld. The standard advocated by Google would ratchet up the requirements for class certification in a way that is inconsistent with existing precedent. Moreover, it would set the bar for certification so high that it risks

---

[1] All parties consent to the filing of this amicus brief. No counsel for a party has authored this brief in whole or in part, and no party, party's counsel, or any other person—other than amicus curiae or its counsel—has contributed money that was intended to fund preparing or submitting this brief.

[2] Individual views of members of AAI's Board of Directors or Advisory Board may differ from AAI's positions. Certain members of AAI's Board of Directors or Advisory Board, or their law firms, represent Plaintiffs-Appellants, but they played no role in AAI's deliberations with respect to the filing of the brief.

killing off most consumer class actions, particularly with respect to tech platforms, before they could be heard on the merits.

## SUMMARY OF ARGUMENT

There is no question that consumers buying apps, subscriptions and in-app purchases in the Google Play Store are direct purchasers of Google's platform services. And there is no question that these direct purchasers are eligible to challenge Google under the Clayton Act. *Apple Inc. v. Pepper,* 139 S. Ct. 1514 (2019), resolved this question. With this route to escape antitrust liability now blocked, Google attempts to find an alternative way to immunize itself against antitrust claims by its consumer customers. This time, they seek to ratchet up the requirements of class certification by transforming questions of impact properly answered at trial into threshold certification questions. In so doing, they ask this Court to turn its back on directly applicable precedent.

Google argues to this Court that class certification should be vacated here because plaintiffs have not proven that harm to app developers was "passed through" as higher prices for app purchasers. But this is, in short, to make the circular argument that the consumer plaintiffs must prove harm now to get before a jury to prove harm. This makes no sense. If Google's approach were adopted, the "rigorous analysis" under Rule 23 would be converted into a "mini-trial" on the merits, contrary to clear precedent. *See, e.g., Amgen Inc. v. Conn. Ret. Plans &*

2

*Tr. Funds*, 568 U.S. 455, 477 (2013). This Court, following the Supreme Court in *Amgen*, already rejected that invitation in *Olean Wholesale Grocery Coop., Inc. v. BumbleBee Foods, LLC,* 31 F.4th 651 (9th Cir. 2022).

At trial, the jury will have to decide, among other elements of the claims, whether the consumer plaintiffs were harmed by Google's alleged anticompetitive conduct. They will be tasked with answering the question: did Google's supracompetitive app developer fees lead to higher prices for consumers? As in any such case, the plaintiffs will present their evidence to the jury, and Google will be free to question it in cross-examination and to present its own rebuttal analysis. With this full picture, the jury will then be able to decide whether plaintiffs have met their burden of proof on the impact element of the claim.

The question at class certification is different. The judge must decide only whether the existence of the alleged harm is *capable* of being resolved on a class-wide basis. *Olean,* 31 F.4th at n.13. This is Rule 23's predominance requirement. As the Supreme Court and Ninth Circuit have held, the issue at class certification is not whether plaintiffs should prevail on a particular point. It is whether common issues will predominate as plaintiffs' *attempt* to do so. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("susceptible to generalized, class-wide proof"); *Amgen,* 568 U.S. at 468-69 ("susceptible to classwide proof")

Ignoring this dictate, Google makes several arguments that would create special standards for certification of consumer class actions in platform cases. It would treat "pass-through" of harm to consumers not simply as harm, an element of the cause of action like any other, but as a unique obstacle to class certification. In so doing, Google's argument conflates the distinct questions for the judge at certification and the jury at trial. The district court here recognized the distinction, declined to adopt Google's special standards for pass-through, and answered the correct question. As a result, the class certification decision should be upheld, and the case proceed so the jury may answer the question of impact on the merits.

## ARGUMENT

### I. The district court applied the correct standard in assessing Google's "uninjured class member" arguments

*Olean* rejected any rule that a class may not be certified if there is more than a *de minimis* number of uninjured class members. Instead, this Court affirmed that whether a class meets the predominance requirements of Rule 23(b)(3) is a question that must be addressed on a "case-by-case" basis. Rule 23(b)(3) "requires only that the district court determine after rigorous analysis whether the common question predominates over any individual questions." 31 F.4th at 669. The court must consider whether the possible presence of uninjured members "who could not have been harmed" means a class definition is overbroad, but no particular percentage of uninjured class member is determinative. *Id.* at n.14.

4

The district court here hewed to this standard and properly rejected Google's arguments that its evidence on "pass-through" created sufficient individualized issues to defeat class certification.

### a. Google's expert's evidence does not point to "individualized inquiry" but to common impact

Google claims that the district court ignored evidence of uninjured class members who can be identified only by individualized inquiry. Google's briefing to this Court describes two pieces of evidence in support. First, it cites its expert's work on pricing effects during previous limited instances in which service fees were lowered. Google claims that this work shows that "there was no change in price at all during the class period for 93% percent of the SKUS" in the Google Play Store and no change in price for 98% of the IAPs and subscriptions. Appellant's Br. at 29. Second, it cites the depositions of three developers who all claimed that, in theory, if Google were to lower service fees, they would not pass the cost savings onto consumers. *Id.* at 30.

Even if persuasive—and the district court concluded it was not—this evidence proves nothing about the need for individualized inquiry. Instead, Dr. Burtis' work is meant to support the claim that, regardless of impact of Google's behavior on developers, there is no impact on consumers *at all*. Google's own descriptions reveal this. Google writes in its Brief that "almost all developers" would not have charged customers less, that there was "no change in price at all" for nearly all

5

SKUs, and "almost no developers" changed the price of IAPs or subscriptions. Br. at 29, 30. But the "almost" means nothing here.[3] Google never admits that there were *any* potentially injured consumer plaintiffs. Instead, it makes a blanket claim that Dr. Burtis' work shows that "when Google charged developers a lower service fee, developers did not reduce consumer prices." By inserting "almost" into this description, Google tries to transform the question of the impact on consumers as a class into a question of what percentage of class members are uninjured.

This is sleight of hand. Google's self-serving description does not change that this is evidence that would be offered at trial to address the common question of impact by trying to undermine Dr. Singer's model, not to try to weed out individual instances of unharmed class members. Google's "evidence" offers no basis to distinguish uninjured from injured class members. If believed, it shows that no class members were injured at all.

As a result, the evidence Google cites is further proof that the question of impact is class wide. Even if true, Google's expert's claim would resolve the question of injury in "one stroke," and is thus exactly the kind of issue appropriate for class treatment. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

---

[3] Further, Google questions whether the 7% of SKUs that did change price reduced their price because of the service fee reduction or some other explanation, effectively questioning whether *any* of the developers reduced price in response to the service fee reduction.

6

By repackaging a factual argument about whether *any* consumers have been harmed as an argument that it is too complex to figure out *which* customers were injured, Google tries to move a question that is an issue for trial into a threshold issue for class certification. This is precisely what *Olean* prohibits. For this reason, the cases on uninjured class members that Google cites are inapposite. In *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023), for example, this Court weighed in on class certification for customers of a popular women's leggings company who overpaid on sales tax. In contesting class certification, defendants provided the trial court with some examples of customers who differed from the rest because they had received discounts to offset the inappropriate tax charges. Because the off-setting discounts raised the potential for individualized inquires (*e.g.*, Did a particular class member receive a discount? Did the discount off-set the improper sales tax charge or only part of the charge?), this Court found that the judge below should have evaluated the scope of the potential individualized issue during class certification. On remand, the trial court was charged with deciding whether the discount issue raised enough individual issues on impact that it changed the court's calculus on predominance.

Here, in contrast, Google makes no real case that the proposed class is a mix of injured and uninjured members. The "no pass-through" theory it advances would, if correct, mean all (or substantially all) consumer plaintiffs were uninjured.

7

Google thus offers no question that would require "individualized" trials and no individual issue to weigh against common issues. If defendants were right that developers do not factor the service fee into their pricing—and they are not—then all the consumer plaintiffs should lose. If consumer plaintiffs are right—and they are—then they should all win on this issue. The issue is thus common to the class. *Amgen*, 568 U.S. at 460 ("[T]he class is entirely cohesive: it will prevail or fail in unison.")

The Ninth Circuit has held that class certification does not require proof that the parties will win. *See, e.g., Olean,* 31 F.4th at 681 ("class did not have to 'first establish that it will win the fray' in order to gain certification under Rule 23(b)(3)") (quoting *Amgen*, 568 U.S. at 460.) Google should not be able to escape this standard by refashioning its argument that all consumer plaintiffs are unharmed into an argument that 90%+ of consumer plaintiffs are unharmed.

### b. Google tries to reimpose the *de minimis* rule that this Circuit has rejected

By arguing that the relevant question is the magnitude of uninjured members in the class, Google effectively asks this court to reimpose a version of the *de mimimis* rule that this Court rejected in *Olean.*

In *Olean*, this Court prohibited the use of any "per se" standard in favor of a case-by-case assessment. 31 F.4th at n.13. It reasoned that such a rule would impermissibly add to the requirements of Rule 23(b)(3), which requires only that

8

"the district court determine after rigorous analysis whether the common question predominates over any individual questions." 31 F.4th at 669. Google ignores this when it claims, for example, that this Court should de-certify the class because the number of potential uninjured class members is "orders of magnitude" greater than in *Van*. Appellant's Br. at 31. For the sheer number of allegedly uninjured class members to matter, it would require the kind of "per se" lens that this Court discredited.

Instead, the district court did exactly what *Olean* prescribed. It made its decision based on the facts before it, weighed the conflicting testimony of the experts, and concluded that the individualized issues raised by Google did not predominate over the common issues of the class.

## II. The district court did not improperly shift the burden of showing predominance to Google.

Google further accuses the district court of "misallocating the burden of proof at class certification" because the court did not find Google's argument on uninjured class members persuasive. Appellant's Br. at 35. But this argument is a mischaracterization of (1) what the burden-shifting rubric requires and (2) what the district court did. Google's proposed standard seeks to replace the factual judgments of the district court and to ratchet up the burden of proof to obtain class certification beyond what any relevant precedent requires.

9

First, Google gets the burden-shifting rubric wrong. Under Ninth Circuit law, a defendant cannot simply assert an individualized issue to shift the burden back to plaintiffs. This Court has clearly set out the proper process:

> If the plaintiff demonstrates that class issues exist, the defendant must invoke individualized issues and provide sufficient evidence that the individualized issues bar recovery on at least some claims, thus raising the spectre of class-member-by-class-member adjudication of the issue.

*Van,* 61 F.4th at 1067. Key here is the need for defendants to provide "sufficient evidence" of the individualized issues. Mere speculation is not enough. *Id.*

Google relies on *Van* for its misallocation of burden argument, but tellingly, it describes only one part of the decision. Other aspects of the decision are more directly applicable here. This Court found in *Van* that the district court did *not* need to revisit the claim that individualized issues were raised by some plaintiffs who willingly paid the improper sales tax. No further analysis or rebuttal was necessary, it concluded, because defendants provided only "scant evidence" that it would matter to the class analysis. *Id.* at 1068.

When the district court here concluded that "Google has not shown [substantial numbers of uninjured people] is a concern here," it did not shift the ultimate burden on predominance to Google; it did nothing more than follow the Ninth Circuit's "sufficient evidence" mandate. The court considered Dr. Burtis's

10

analysis of pass-through, vetted it in a court hearing and found it "of minimal value." Slip Op. at 21. Rightly so because, as discussed above, it provides no evidence of individualized issues. Similarly, the district court found that Google's "observations" of a "grab bag" of other potentially individualized factors did not provide evidence sufficient to require plaintiffs' rebuttal. *Id.* at 20. Moreover, as the district court observed, even if these "idiosyncratic" factors were indeed true, the district court need only conclude that "common, aggregation-enabling, issues in the case are more prevalent or important than" the individual ones. *Id.*

Second, Google wrongly asks this Court to reevaluate credibility issues that are properly decided by the trial court. It argues that "no analysis could have justified" ignoring Dr. Burtis' data and provides a laundry list of questions it argues the district court should have answered. Appellant's Br. at 33. Then, Google claims it does not understand how Dr. Singer's critique "could conceivably outweigh Dr. Burtis' data." *Id.*

These critiques are not legal questions, and the district court is not required to write an opinion that answers all the questions Google may have after the fact about why it did not prevail. The district court was clear that it considered the testimony of each expert, including a hearing in which both experts participated, and found Dr. Burtis' data unconvincing. By asking this Court to revisit the decision, Google is simply asking for it to re-weigh the "conflicting expert

testimony" and reach its preferred conclusion on the evidence. *Olean*, 31 F.4th at 666.

Shopping around like this for a different take on the facts is contrary to Supreme Court and Ninth Circuit guidance. Both agree that on "individualized questions, including those regarding class members' injury," "[a] district court is in the best position to determine" whether those questions will overwhelm common ones. *Olean*, 31 F.4th at 669 (quoting *Halliburton Co. v. Erica P. John Fund, Inc. v.*, 573 U.S. 258, 276 (2014)). This Court should decline Google's invitation to second guess the district court's factual assessment.

### III. There is no special Article III standing requirement for "pass-through" at the class certification stage

Finally, Google indirectly tries to resurrect the argument that plaintiffs need to demonstrate Article III standing for each member of a proposed class before it can be certified. It argues that the district court has missed the "crucial point" that plaintiffs "must show pass-through to establish Article III standing." Appellant's Br. at 35. But the term pass-through is nothing more than a synonym for harm, a standard element of any cause of action under the antitrust laws. There is no special standard because developers set the ultimate price. Since the plaintiffs have provided a model that is capable of showing class wide impact, this Court need not address the Article III question at all to evaluate class certification. But if the Court does, logic compels that there is no requirement to prove pass-through to

every consumer at the class certification stage, just as there is no requirement to prove any element of a cause of action at that point.

Article III standing is jurisdictional. It limits the disputes that federal courts can adjudicate. It requires plaintiffs to show that litigation involves an actual "case or controversy" between the parties, that is, that the alleged legal violation affects the parties before a court. As such, plaintiffs cannot pursue litigation to resolve a general legal issue that could not affect them personally. As the Supreme Court put the matter in *TransUnion LLC v. Ramirez*, Article III requires plaintiffs to have "a personal interest" in federal litigation. 141 S. Ct. 2190, 2208 (2021).

But, as with other jurisdictional issues, to establish a controversy, plaintiffs need not show they will win. As Justice Scalia explained in *Steel Co. v. Citizens for a Better Env't*, in assessing Article III standing "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." 523 U.S. 83, 89 (1998). He continued, "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id*. (quoting *Oneida Indian Nation of N.Y. State v. Oneida Cnty., New York*, 414 U.S. 661, 666 (1974)). In other words, the issue for Article III

13

standing is whether a plaintiff has raised an appropriate controversy, not whether that controversy will be ultimately resolved in its favor.

Google suggests that if plaintiffs at any point in litigation do not prevail on pass-through, they no longer have Article III standing. Google emphasizes injury or fact of damage, but the logic applies equally to whether Google engaged in the alleged conduct and whether that conduct violated the law. If Google were right— and it is not—a court would lack subject-matter jurisdiction if it rules at any time against a plaintiff on any of the elements of its claim.

Google does not cite a single case that has so held. *See Kohen v. Pac. Inv. Mgmt. Co*, 571 F.3d 672, 677 (7th Cir. 2009) (Posner, J.) ("[W]hen a plaintiff loses a case because he cannot prove injury the suit is not dismissed for lack of jurisdiction. Jurisdiction established at the pleading stage by a claim of injury that is not successfully challenged at that stage is not lost when at trial the plaintiff fails to substantiate the allegation of injury; instead the suit is dismissed on the merits.") (citation omitted).

The actual rule is that plaintiffs must establish that they were exposed to the kind of harm that would confer on them Article III standing. In *Lujan*, for example, the Court held that the plaintiffs could not enforce the Endangered Species Act abroad because they could not have been personally harmed from the loss of a species outside of the U.S. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564

14

(1992). Similarly, in *TransUnion*, the Court held some of the plaintiffs could not have been personally injured because any incorrect information collected about them had never been disseminated. 141 S. Ct. at 2209. In both cases, plaintiffs had not been *exposed to the right kind of harm.* *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) ("[T]he possibility that an injurious course of conduct may sometimes fail to cause injury to certain class members ... fails to reveal a flaw that may defeat predominance, such as the existence of large numbers of class members who were never *exposed* to the challenged conduct to begin with.") (emphasis in original); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012). Unlike here, even if plaintiffs in those cases prevailed on every element of the claim, they could not establish that the alleged legal violations in fact injured them personally.

Requiring that plaintiffs prove Article III standing at class certification for the absent members of the class would cause bizarre results. Plaintiffs would have to prevail before a federal court to establish that they can litigate before that court. Such a doctrine would be self-defeating—like swallowing a pill to test whether it contains a deadly poison. Courts would have to adjudicate claims on the merits to determine whether they have the power to adjudicate those claims on the merits.

Defendants are wrong to suggest that pass-through creates a special issue under Article III standing doctrine. The accepted inquiry, in relevant part, is

whether plaintiffs were exposed to the right kind of harm such that they could have suffered injury in fact. *Kohen*, 571 F.3d at 677 ("[I]f the [class] definition is so broad that it sweeps within it persons who *could not have been injured* by the defendant's conduct, it is too broad.") (emphasis added); *see also TransUnion*, 141 S. Ct. at 2213 (noting a procedural violation "divorced from any concrete harm" cannot suffice for Article III standing) (quotation and citation omitted); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (same); *Torres*, 835 F. 3d at 1138 ("a great number of members who for some reason could not have been harmed"); *Mazza*, 666 F.3d at 594–95.

Google's implied Article III argument goes further than asking this Court to hold that plaintiffs must offer proof capable of establishing impact to all but a *de minimis* percentage of class members. Google wants the Court to hold that plaintiffs must win on the merits of class wide impact to get a class certified. This is not the law in this Court and runs counter to the logic of its decisions.

## CONCLUSION

Google's arguments about class certification in this case do not affect only the ability of Google's consumers to seek redress for Google's alleged antitrust violations. If accepted, the arguments that there are special requirements for the consumers here would threaten the ability of any consumer of a tech platform to bring a class action. This has immense consequences for antitrust enforcement in

the space. Private antitrust litigation, especially through class actions, plays a crucial role in compensating victims and deterring antitrust violations.[4] It may have greater deterrent effects on antitrust violations than government criminal enforcement.[5] From 2009 through 2021, for example, federal antitrust class actions recovered over $29 billion for the victims of antitrust violations.[6]

Class actions are one of the most powerful tools for holding tech platforms accountable for antitrust violations. Creating new obstacles to consumer class actions in this space is neither consistent with current law or good policy. As a result, upholding class certification is appropriate in this case.

Respectfully submitted,

/s/ Kathleen W. Bradish
KATHLEEN W. BRADISH
AMERICAN ANTITRUST INSTITUTE
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(202) 304-0195
kbradish@antitrustinstitute.org

---

[4] Joshua P. Davis and Robert H. Lande, Defying Conventional Wisdom: The Case for Private Antitrust Enforcement, 48 GA. L. REV. 1 (2013).

[5] Robert H. Lande and Joshua P. Davis, Comparative Deterrence from Private Enforcement and Criminal Enforcement of the U.S. Antitrust Laws, 2011 B.Y.U. L. REV. 315.

[6] 2021 Antitrust Annual Report: Class Actions in Federal Court (Center for Litigation and Courts, UC Hastings Law; Huntington Bank) https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4117930, at 12 (last downloaded on Aug. 7, 2023).

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s) <u>23-15285</u>**

I am the attorney or self-represented party.

**This brief contains <u>4108</u> words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/ Kathleen W. Bradish</u>        **Date** <u>August 7, 2023</u>

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

s/ Kathleen W. Bradish

Dated: August 7, 2023