No. 23-15285

IN THE

# United States Court of Appeals
# for the Ninth Circuit

IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION

MARY CARR, ET AL. V. GOOGLE LLC, ET AL.

Interlocutory Appeal from the

United States District Court for the Northern District of California

No. 21-md-2981; No. 20-cv-5761

District Judge James Donato

## DEFENDANTS-APPELLANTS' MOTION TO MAINTAIN PORTIONS OF PLAINTIFFS' RESPONSE BRIEF AND SUPPLEMENTAL EXCERPTS OF RECORD UNDER SEAL

Katherine B. Wellington
HOGAN LOVELLS US LLP
125 High St., Suite 2010
Boston, MA 02110

Neal Kumar Katyal
Jessica L. Ellsworth
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
neal.katyal@hoganlovells.com

*Counsel for Defendants-Appellants*

August 21, 2023

*(Additional Counsel Listed on Signature Page)*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendants-Appellants state as follows:

Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company; no publicly traded company holds more than 10% of Alphabet Inc.'s stock.

Google Payment Corp. is a subsidiary of Google LLC. Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company; no publicly traded company holds more than 10% of Alphabet Inc.'s stock.

Google Commerce Ltd. is an indirect subsidiary of Google LLC. Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company; no publicly traded company owns more than 10% of Alphabet Inc.'s stock.

Google Ireland Limited is an indirect subsidiary of Google LLC. Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company; no publicly traded company owns more than 10% of Alphabet Inc.'s stock.

Google Asia Pacific Pte. Ltd. is an indirect subsidiary of Google LLC. Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc.,

a publicly traded company; no publicly traded company owns more than 10% of Alphabet Inc.'s stock.

/s/ Neal Kumar Katyal
Neal Kumar Katyal

**INTRODUCTION**

This case is an antitrust class action. It involves highly sensitive confidential business information regarding Google's operations, strategy, and financial situation. Consumer Plaintiffs and Google initially sought to seal various portions of their class certification papers and supporting documents in the District Court. The District Court directed the parties to submit a joint omnibus sealing motion. Dkt. 246.[1] The parties did so, and that motion remains pending. Dkt. 324. With its Opening Brief, Google moved to maintain under seal limited portions of its Excerpts of Record. CA9 Dkt. 24. Plaintiffs did not oppose that motion, and this Court granted it. CA9 Dkt. 89.

When Plaintiffs filed their Response Brief, they gave notice of their intent to file publicly various portions of documents that are currently under seal in the District Court. Some of this information has already been sealed by this Court as part of its ruling on Google's motion to maintain the seal. By this motion, Google requests that same information remain sealed.

Google also requests this Court maintain under seal other limited portions of nine documents cited or included in Plaintiffs' Response Brief and Supplemental Excerpts of Record. Google's narrowly targeted requests concern non-public,

---

[1] Citations to docket numbers are to N.D. Cal. No. 3:21-md-02981-JD unless otherwise specified.

commercially sensitive, and proprietary business information—much like the information that this Court has already agreed to maintain under seal in this case. Release of the information that is the subject of this motion would irreparably harm Google and non-parties whose information is involved. Recognizing this Court's presumption of access, Google has tailored its request to only the particular lines of text that are sensitive.

Google has consulted with counsel for Plaintiffs, who have indicated that they do not oppose Google's motion to keep portions of the Supplemental Excerpts of Record under seal, but they do oppose Google's highly targeted requests to maintain the seal on portions of their Response Brief. But the underlying information in question is highly sensitive, non-public, internal financial data and negotiation strategies that have no bearing *at all* on the merits issues involved in this appeal. This Court should reject Plaintiffs' efforts to publish sensitive Google information unrelated to the class certification issues on appeal through their appellate briefing.

## LEGAL STANDARD

Courts historically recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). This presumption of access is a "starting point" but it "is not absolute." *Id.* Sealing is generally

appropriate if a party demonstrates that "compelling reasons" outweigh "the general history of access and the public policies favoring disclosure." *Id.* at 1178-79 (quotation marks omitted). Compelling reasons include preventing the release of confidential business information and trade secrets, *id.* at 1179, as well as protecting "business information that might harm a litigant's competitive standing." *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon*, 435 U.S. at 598-599); *see also, e.g.*, *Krieger v. Atheros Commc'ns, Inc.*, No. 11-cv-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011) (finding "compelling reasons" to seal "long-term financial projections, discussions of business strategy, and competitive analyses").

In articulating its request, a party must lay out the specific reasons for relief and the potential for injury without it. Circuit Rule 27-13(e). This Circuit requires that any request be "the least restrictive scope of sealing" and be limited to the specific portions of documents that warrant it. *Id.*

## ARGUMENT

Courts routinely seal portions of documents containing confidential business and financial information. The Supreme Court has held that harm to a litigant's "competitive standing" is a paradigmatic "compelling reason" to seal records. *See Nixon*, 435 U.S. at 598. Accordingly, this Court has expressly recognized compelling reasons exist to seal confidential business information. *Ctr. for Auto*

*Safety*, 809 F.3d at 1097; *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569-570 (9th Cir. 2008) (finding "compelling reasons" to seal "pricing terms, royalty rates, and . . . payment terms" because the information "plainly falls within the definition of 'trade secrets'"). Other Circuits agree. *See, e.g.*, *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 905 (10th Cir. 2017) ("[W]e have granted motions to seal … internal confidential business records … ."); *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015) ("[S]ealing may be appropriate where orders incorporate confidential business information."); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1223 (Fed. Cir. 2013) (sealing portions of "detailed product-specific financial information, including costs, sales, profits, and profit margins").

District courts in this Circuit have sealed various types of confidential business information including discussions of business strategy, financials, and competitive analyses. *See, e.g.*, *Krieger*, 2011 WL 2550831, at *1 ("business strategy[] and competitive analyses"); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *2 (N.D. Cal. June 1, 2020) ("financial performance and company strategy"); *Bunsow De Mory LLP v. N. Forty Consulting LLC*, No. 20-CV-04997-JSC, 2020 WL 7872199, at *2-3 (N.D. Cal. Sept. 21, 2020) ("business strategies"); *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No.

14-cv-02864-JD, 2016 WL 4091388, at *2-5 (N.D. Cal. Aug. 2, 2016) ("competitive intelligence").

Courts in this Circuit have also sealed confidential business information of non-parties where such disclosure threatens parties' and non-parties' competitive standing. *See, e.g.*, *Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.*, No. 22-CV-00676-H-MSB, 2023 WL 1486172, at *1-2 (S.D. Cal. Feb. 1, 2023) (sealing documents containing "confidential information concerning the identities" of third parties or "references to third-party confidential information"); *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (sealing "confidential contracts, contract negotiations, or trade secrets" containing third party's confidential business information).

Failure to seal such information gives rise to irreparable harm. Sealing prevents "competitors from gaining insight into the parties' business model and strategy." *In re Qualcomm Litig.*, No. 3:17-CV-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017). Those insights threaten to "harm the parties in future negotiations with existing customers, third-parties, and other entities with whom they do business." *Id.*

## I.    OPPOSED REQUESTS TO SEAL

Google seeks to seal portions of four sentences of Plaintiffs' Response Brief—totaling just 31 words. The excerpts at issue concern highly sensitive, non-public

information regarding Google's profit margins, as well as sensitive, non-public information about Google's negotiating strategies. Release of this information would cause Google irreparable injury. Plaintiffs consent to sealing this information in the Supplemental Excerpts of Record but object to sealing it in the brief. In both places, however, this information is plainly the kind of "business information that might harm a litigant's competitive standing" if it were made public. *Center for Auto Safety*, 809 F.3d at 1097 (quotation marks omitted); *see also In re Electronic Arts*, 298 F. App'x at 569-570 (disclosure of trade secrets would result in "irreparabl[e] damage[]").

There is no argument that these details have any relevance to the class certification issues involved in this interlocutory appeal. Notably, although Plaintiffs cite this information in their introduction and statement of the case, they never once refer to it in their substantive argument. Accordingly, the prejudice to Google from unsealing this information would be substantial, while the relevance to the public interest would be virtually non-existent, at least at this stage. *See Center for Auto Safety*, 809 F.3d at 1097. Given that these issues are "unrelated, or only tangentially related, to the" merits of this appeal, the Court should apply the "good cause" standard when determining whether to seal this information; but, even if Google must show a "compelling interest," it has plainly done so. *See id.* (quotation marks omitted).

6

**1. Response Brief page 1; Response Brief page 12, sentences 2 and 3:**
Google seeks to seal the information currently highlighted on these pages, which contains sensitive non-public information regarding Google's profit margins. This is a quintessential example of the kind of non-public information that will have a significant impact on competitive standing. *Apple*, 727 F.3d at 1225-26; *see also Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 530 F. Supp. 3d 988, 999, 1031 (S.D. Cal. 2021); *TriQuint Semiconductor, Inc. v. Avago Techs., Ltd.*, No. CV 09-1531-PHX-JAT, 2011 WL 6182346, at *7 (D. Ariz. Dec. 13, 2011). As Google's Finance Director explained in a declaration filed with the District Court, the data involved here is "not otherwise publicly reported by the company" and its "disclosure is likely to cause Google competitive harm" because "competitors could improperly utilize" this data "to modify or augment their business operations in an effort to compete unfairly against Google." ECF 324-5 at 12.

This information has no bearing on any issue in this appeal. Google's challenges to the class certification order involve questions of injury and damages. Its challenges take as given—purely for purposes of this appeal—Plaintiffs' arguments on the underlying antitrust issues and argue that, even so, Dr. Singer has not proven that the Consumer Plaintiffs suffered injury, or at least that such an injury can be established with common evidence. Tellingly, the underlying information for these figures comes from a portion of Plaintiffs' expert report addressing

"Google's Market Power"—an issue that no party raises in this appeal. 3-SER-462-463.

By featuring this information on the front page of their brief when it has no relevance to the issues actually litigated in this appeal, Plaintiffs are plainly seeking to generate publicity. This Court should reject Plaintiffs' efforts to inflame public passions with information not germane to the questions before this Court. *See Apple*, 727 F.3d at 1226 (sealing profit margins where information was "not essential to the public's understanding of the jury's damages award").

Indeed, although Plaintiffs included information about Google's profit margins in their District Court briefing as well, they did not oppose Google's request to maintain that information under seal below. *See* ECF 325-1 at 8 (Plaintiffs' District Court opening brief); ECF 325-5 at 10 (Plaintiffs' District Court reply brief); ECF 325 at 4 ¶ 7, 183 ¶¶ 558-559 (Google's reasons for sealing margin information cited in briefing); ECF 324-3 at 6-8, 11-12 (listing disputed sealing requests related to these documents without mentioning profit margins). Plaintiffs can offer no justification for their sudden about-face in this Court.

**2. Response Brief 11-12, carryover sentence.** Google seeks to seal this sentence, which discloses details regarding Google's negotiating position with a specific non-party and could therefore impose significant harm on Google. *See Qualcomm*, 2019 WL 95922, at *3 (finding negotiating strategies were appropriately

sealed); *Rimini Street, Inc. v. Oracle Int'l Corp.*, No. 2:14-cv-01699-LRH-CWH, 2019 WL 2358389, at *1 (D. Nev. June 4, 2019) (providing "a glimpse into … negotiation strategies … is a compelling reason to keep [information] under seal"). As Google's Finance Director explained, revealing this information could give "competitors and others insights into Google's business strategies." ECF 324-5 at 157. This may allow "them to alter their business tactics and negotiating strategies accordingly." ECF 324-3 at 7.

Once again, the details included in this sentence have no bearing on the merits of this appeal. As with the information concerning Google's margins, after this passing reference in the statement, Plaintiffs never refer to the information again. Plaintiffs cannot identify any public benefit to disclosing this information in connection with this appeal.

## II. UNOPPOSED REQUESTS TO SEAL[2]

### A. Any Information Covered By Google's Prior (Unopposed) Motion, Which This Court Already Granted In Full, Should Remain Under Seal.

Google moved to maintain the seal on limited portions of its Excerpts of Record. CA9 Dkt. 24. Plaintiffs did not oppose that motion, *id.* at 1, and the Court granted it. CA9 Dkt. 89. When filing their answering brief, Plaintiffs gave notice

---

[2] Unless otherwise specified, where the cited excerpts of the documents in this list include highlighting in Plaintiffs' provisionally sealed version, Google's request is limited to the highlighted portions.

of their intent to unseal some of this previously sealed material, which also appears in their Supplemental Excerpts of Record. For the reasons stated in Google's prior motion, and because (1) this Court has already granted that motion and (2) Plaintiffs stated that they did not oppose that motion, the following information should remain under seal in this Court:

1. **Defendants' Motion to Exclude Testimony of Dr. Hal J. Singer on Class Certification [Sealed Version Dkt. 324-13] [Redacted Version Dkt. 325-5] [5-ER-649]:** 3-SER-338, lines 9-12.

2. **Defendants' Opposition to Plaintiffs' Class Certification Motion [Sealed Version Dkt. 324-13] [Redacted Version Dkt. 325-5] [5-ER-657-658]:** 3-SER-351, line 13; 3-SER-352, line 9.

3. **Class Certification Report of Dr. Hal J. Singer, Ph.D. [Sealed Version Dkt. 324-7 & 324-8] [Redacted Version Dkt. 325-1] [5-ER-750]**: 3-SER-493, footnote 508.

4. **Consumer Plaintiffs' Motion for Class Certification [Sealed Version Dkt. 324-6] [Redacted Version Dkt. 325-1] [5-ER-769-771]:** 3-SER-525, lines 1-6 and 13-16; 3-SER-526, lines 14-24; 3-SER-527, lines 4-14.

**B.   Limited Additional Portions of Plaintiffs' Supplemental Excerpts of Record Should Be Maintained Under Seal.**

Google also seeks to maintain under seal limited portions of Plaintiffs' Supplemental Excerpts of Record. The release of this information would—like the information this Court already sealed—irreparably harm Google's business, its competitive interests, and the reasonable expectation of confidentiality that various non-party consumers, developers, and partners expect from Google. Certain of the

non-parties implicated within this information filed declarations in support of the omnibus motion to seal in the District Court, citing their confidentiality interests and risk of competitive harm as reasons to maintain the seal. *See, e.g.*, Dkt. 324-4 at 8-10, 156. Meanwhile, the sealing of this information would not impede the "public interest in understanding the judicial process," as its disclosure is not necessary to understand this case. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 n.6 (9th Cir. 2010) (quotation marks omitted).

Any public interest in the more granular information cited in the Supplemental Excerpts of Record—which is often irrelevant to this appeal, and merely happens to appear on the same page as other more relevant facts—is outweighed by the specific confidentiality concerns outlined below, as this Court recognized when granting Google's first motion to seal.

Google therefore requests to seal the following limited portions of nine documents, all of which appear in Volume III of the Supplemental Excerpts of Record. Google provides specific reasons for each request below.

1. **Exhibit A58 to the Declaration of Christian Cramer – GOOG-PLAY-000579868.R [Sealed Version Dkt. 324-13] [Redacted Version Dkt. 325-5] [3-SER-311-329]**

**3-SER-313, 3-SER-320**. This text identifies email usernames of current or former Google employees. These employees have a reasonable expectation of

privacy that would be infringed upon by public disclosure and nothing in this appeal turns on their identities.

**3-SER-315-319, 3-SER-321-324, 3-SER-327, 3-SER-329.** These excerpts describe non-public confidential information about Play's financial performance, including internal Google data on developer earnings and consumer spend. These excerpts identify Google's app developer business partners and reveal their confidential and non-public spending on Play, including in the context of performance and spend gaps between Play and the Apple App Store and the spending gap across regions and app categories. These excerpts reveal confidential data and information comparing apps and games buyers, and describing consumer spend across regions and by type of app. These excerpts also reflect non-public, internal Google data on developer earnings.

Google spends significant resources compiling and maintaining this non-public valuable data. If publicly revealed, this information could influence the competitive decision-making and business and negotiating strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. This information could also influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business,

harming Google. The developers identified in these excerpts also have a reasonable expectation that Google will maintain the confidentiality of data relating to their apps on Google Play. Revealing their data and identities would harm Google's relationship with these developers (and potentially others).

**2.  Exhibit A45 to the Declaration of Christian Cramer – Defendants' Opposition to Plaintiffs' Class Certification Motion [Sealed Version Dkt. 324-13] [Redacted Version Dkt. 325-5] [3-SER-341-355]**

**3-SER-350, 3-SER-353-354.** These excerpts describe confidential and non-public details about apps and consumer spend and about different fee structures between Google and app developers. Public disclosure to competitors and potential business counterparties could harm Google and Google's current app-developer business partners and give Google's competitors an unfair advantage.

**3.  Exhibit A40 to the Declaration of Christian Cramer – GOOG-PLAY-000565541.R [Sealed Version 324-12] [Redacted Version ECF 325-5] [3-SER-360-363]**

**3-SER-363.** This text reflects the identity of non-party developers and whether those parties utilize certain Google Play features. Disclosure of this information would implicate non-parties' confidentiality interests.

**4.  Exhibit A39 to the Declaration of Christian Cramer – Deposition Transcript of Paul Bankhead [Sealed Version Dkt. 324-12] [Redacted Version Dkt. 325-5] [3-SER-364-375]**

**3-SER-372, lines 10-19 and lines 24 to 3-SER-373, line 3.** This text references a non-party and describes the non-party's specific deal terms. Revealing

13

its identity and describing its specific deal terms could cause significant harm to Google's relationship with the non-party and to the nonparty's competitive standing in future business dealings and negotiations.

5. **Exhibit A26 to the Declaration of Christian Cramer – GOOG-PLAY-004588725 [Sealed Version Dkt. 324-12] [Redacted Version Dkt. 325-4] [3-SER-387-391]**

**3-SER-390:** This text reveals specific details about Google's strategic decision-making and business considerations in its agreements with a specific non-party as part of certain Google commercial programs, including identification of that specific non-party. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies.

**3-SER-389-391.** These excerpts reveal specific details about Google's agreements and negotiations with specific non-parties as part of certain Google commercial programs, including identification of the non-parties and their confidential information. Public disclosure could cause harm to Google's and the non-party's competitive standing by giving competitors and others insights into certain business strategies. Other portions of these excerpts include identity and contact information of current or former Google employees and of non-party employees. Each of these persons has a reasonable expectation of privacy.

6.      **Exhibit A5 to the Declaration of Christian Cramer – Expert Report of Dr. Michelle M. Burtis [Sealed Version Dkt. 324-13 and 324-10] [Redacted Version Dkt. 325-1] [3-SER-392-399]**

**3-SER-394, between "Figure 11." and "Monthly" in the heading; 3-SER-395 between "Figure 12." and "Monthly" in the heading; and 3-SER-398, Last column of Table 8.**  This information contains non-public and confidential data regarding developer-specific information derived from Google's transactional data. If publicly revealed, this information could influence the competitive decision-making, business strategies, and negotiating strategies and tactics employed by this developer or its competitors.  Indeed, as one developer noted in its declaration in support of the omnibus motion to seal, "public disclosure of this information would severely harm [its] ability to negotiate confidential business deals in the future." Dkt. 324-4 at 156.

7.      **Exhibit A3 to the Declaration of Christian Cramer – Class Certification Reply Report of Hal J. Singer, Ph.D. [Sealed Version Dkt. 324-9] [Redacted Version Dkt. 325-1] [3-SER-400-436]**

**3-SER-404-405, paragraph 10 and footnotes 16-17 and 19; 3-SER-416, paragraph 95 and footnote 197.**  These excerpts reflect and are calculated from internal, non-public Google financial data, as well as specific internal business strategies and business model considerations, and analysis based on that data and information.  Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential Google financial

information, including recent consumer expenditures and Google costs, and thus undermine Google's position in future business dealings. For example, knowledge of Google's inner workings and strategic considerations could influence competitor app stores' decisions related to how they market, monetize or structure their business models, or affect Google customer perception regarding perceived value, or lead to conjecture about Google's future pricing models.

These excerpts also contain confidential and non-public information about the number of developers who participate in Google's various service fee programs. Revealing the number of developers participating in those programs could influence the negotiating strategies and tactics employed by other app developers and other current and prospective counterparties with which Google does or may transact business.

**3-SER-405, Figure 1; 3-SER-410, footnote 76; 3-SER-418-419, paragraphs 103-104 and footnotes 211, 213, and 217; 3-SER-426, Table 3; 3-SER-427, paragraph 127; 3-SER-428, Figure 4 and paragraph 128; 3-SER-429, Figure 5; 3-SER-433, Appendix 2, Appendix Tables A1 and A2; 3-SER-434, Appendix Figure A1 title; 3-SER-435, Appendix Figure A2 title; 3-SER-436, Appendix Figure A3 Title.** These excerpts identify non-party customers and their specific deal terms or data. These non-parties have a reasonable expectation of privacy that would be infringed upon public disclosure, and disclosure of specific

16

deal terms or data could cause significant harm to Google's relationship with the non-parties and to the non-parties' competitive standing in future business dealings. Certain implicated non-parties, moreover, submitted declarations in support of the omnibus motion to seal, declaring that disclosure of their confidential and proprietary business information would, for example, give their "competitors insights into potential vulnerabilities within their services." Dkt. 324-4 at 8-9; *see also id.* at 73-74, 88-92, 111, 150-151 (similar); *id.* at 106-107 (disclosure of non-party's non-public financial data "would cause competitive harm").

**3-SER-413, footnote 175.** This text reflects confidential and non-public information regarding the value of a subsidy provided by the Play Points reward program. Disclosure could allow Google's operating system and app store competitors to improperly tailor their own business strategies and reward programs based on this information and target Google's customers, giving Google's competition an unfair advantage and likely resulting in competitive harm to Google.

**3-SER-409, footnote 75; 3-SER-416-417, paragraph 98; 3-SER-417, footnote 202.** This text reflects internal Google data on consumer spending behavior. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to significantly disadvantage Google and give Google's competitors an unfair advantage.

**8.** **Exhibit A2 to the Declaration of Christian Cramer – Class Certification Report of Hal J. Singer, Ph.D. [Sealed Version Dkt. 324-7 & 324-8] [Redacted Version Dkt. 325-1] [3-SER-437-506]**

**3-SER-463.** This information reveals and/or is calculated or derived from Google's internal non-public profit, revenue, and financial calculations. Public disclosure is likely to cause Google competitive harm and give its competitors an unfair advantage. Moreover, visibility into the trends in the data (*i.e.*, figures across multiple years) gives Google's competitors improper insight into the financial health and future outlook of the Play business, which also gives Google's competitors an unfair advantage.

**3-SER-449, footnote 24.** These excerpts identify Google's non-party developer business partners. These non-parties have a reasonable expectation that Google will maintain the confidentiality of data relating to their apps on Google Play. Revealing their data and identities would harm these developers and would harm Google's relationship with them (and potentially others).

**3-SER-458-459, paragraph 44.** This text reflects internal, non- public Google data on user behavior and marketing analytics. Google spends significant resources compiling and maintaining this valuable data, and it could be used to disadvantage Google if revealed.

**3-SER-463, paragraph 69 and footnotes 123-125; 3-SER-465-466, footnote 139; 3-SER-468, paragraph 81; 3-SER-469, Table 1; 3-SER-472,**

**paragraph 87; 3-SER-504, paragraph 269; 3-SER-505, paragraph 271.** This information reveals and/or is calculated or derived from Google's internal non-public financial information, including Google's profit, revenue, and other financial information. And some of this information is about specific products and verticals and third-party app stores. Public disclosure is likely to cause Google competitive harm and give its competitors an unfair advantage. Moreover, visibility into the trends in the data (*i.e.*, figures across multiple years) gives Google's competitors improper insight into the financial health and future outlook of the Play business, which also gives Google's competitors an unfair advantage by allowing them to tailor their own business strategies based on this information and to target Google's customers.

**3-SER-470-471, paragraph 85 and footnotes 174 and 177; 3-SER-498, paragraph 250.** This text reflects Google's aggregate service fee rates drawn from figures which are non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if app developers became aware of this information they could use it to inform their negotiation strategies and as leverage when negotiating with Google (*e.g.*, by demanding new rates). Moreover, disclosure of non-parties' names and the dates of the agreements would implicate their confidentiality interest and may cause competitive harm to Google by giving competitors key insights into Google's

19

business relationships. *See also, e.g.*, Dkt. 324-4 at 71-72 (non-party declaration supporting omnibus motion to seal relevant to these excerpts and non-party concerns).

**3-SER-472-473, paragraph 88 and footnote 183; 3-SER-474, paragraphs 91-92.** This text contains non-public, internal financial information revealing competitively sensitive data about the Play Store cost structure and monetization strategy as well as other strategic considerations related to the structure and use of its contractual agreements with carriers, original equipment manufacturers, and developers, all information which is not otherwise reported publicly. Providing Google's competitors access to this granular level of financial data will give them an unfair advantage in competing against Google and is likely to result in competitive harm to Google as competitors will have unfair insight into cost structure and financial models, which can be used to tailor or augment their business models to compete unfairly against the Play Store.

**3-SER-474, paragraph 91 and footnotes 195-197 and 199; 3-SER-475, footnotes 206-207; 3-SER-476, footnote 210.** This text reflects confidential, non-public information regarding non-party original equipment manufacturers. This information reveals specific parties who signed certain agreements and could be used by counterparties and others in negotiations seeking similar agreements. *See* Dkt. 324-4 at 72-73 (non-party declaration supporting sealing this information for

these reasons). Moreover, the names of these parties and the dates of the agreements, if disclosed, may cause competitive harm to Google by giving competitors key insights into Google's business relationships. The information also implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms. *See id.*

**3-SER-477, paragraph 99 and footnotes 216-217 and 219.** These excerpts reflect confidential and specific details regarding Google's negotiations, agreements, and specific deal terms with non-parties. Disclosure of this information could be used by counter-parties in negotiations seeking similar or better terms and would give Google's competitors an unfair advantage and is likely to cause Google competitive harm.

**3-SER-477-478, paragraph 100; 3-SER-479, paragraph 143 and footnotes 322-323; 3-SER-480, footnote 325; 3-SER-498, paragraph 249.** These excerpts reveal confidential information about a third-party's commercial views and positions in negotiations, which could be used against it or Google competitively. The implicated third-party filed a declaration in support of the omnibus motion to seal, declaring that disclosure of this "sensitive confidential business information" would "negatively impact" its commercial relationships and its competitive standing. Dkt. 324-4 at 17-18. These excerpts further reveal information and details about certain

of Google's non-public commercial deals and details about the development of and changes to certain product offerings. They reveal specific details about Google's strategic considerations and the terms Google offered. And they reveal Google's market research and internal insights into user behavior. Google's competitors could use this information to inform their own mobile app strategy to Google's competitive disadvantage.

**3-SER-480, paragraph 147 and footnote 328; 3-SER-484, footnote 347.** This text reflects non-public, confidential, current, and internal Google financial information that, if publicly disclosed, could cause Google competitive harm by giving Google competitors insight into Google's business and monetization strategies.

**3-SER-481, paragraph 148 and footnote 333.** These excerpts identify non-public internal Google projects and/or non-party customers and their specific deal terms or data. These non-parties have a reasonable expectation of privacy that would be infringed upon public disclosure, and disclosure of specific deal terms or data could cause significant harm to their competitive standing in future business dealings.

**3-SER-484, paragraph 156; 3-SER-485, footnote 352; 3-SER-487, footnote 365; 3-SER-506, Tables 11 and 12.** These excerpts contain and reflect specific, non-public details about Google's internal and other programs, possible

developer partners, and internal business strategies. They reflect current internal information concerning consumer spending behaviors and transactions and other confidential Google financial information. If publicly revealed, this information could cause Google competitive harm by giving other developers a competitive advantage over Google in ongoing or future business negotiations and giving competitors insight into consumer spending patterns and Google monetization strategies.

**3-SER-491, paragraph 232 and Figure 7; 3-SER-493, footnote 508; 3-SER-500-501, paragraph 253 and footnote 565.** These excerpts reflect and are based on internal Google financial data on service fees and consumer spending behavior. Google spends significant resources compiling this data, which is non-public information. If publicly revealed, this information could give competitors insight into Google's operations that Google lacks regarding its competitors, and would influence the competitive decision-making and business strategies employed by Google's competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers.

**9.     Exhibit A1 to the Declaration of Christian Cramer – Consumer Plaintiffs' Motion for Class Certification [Sealed Version Dkt. 324-6] [Redacted Version Dkt. 325-1] [3-SER-507-542]**

**3-SER-521, 3-SER-523 and footnotes 10 and 11, 3-SER-538.**  This text reflects Google's non-public, competitively sensitive, and current internal information about commercial details, financial terms, negotiations, and strategy in contractual agreements between Google and developers and manufacturers as part of particular Google commercial programs, and about the number and type of counterparties with which Google has formed particular contractual agreements.  It also includes Google's confidential calculations and projections based on those agreements.  Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and allowing them to alter their business tactics accordingly and by giving counterparties information to use in future negotiations with Google seeking similar or better terms.

*          *          *

In sum, each of these pieces of information is precisely the type of confidential business strategy and potentially harmful "sources of business information" that courts have long held should be protected from public disclosure.  *Nixon*, 435 U.S. 598.  Disclosure of this highly-confidential information would add little to the public's ability to understand the judicial process in general or this case in particular, yet would irreparably harm Google and non-parties.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request the foregoing information remain under seal.

Respectfully submitted,

August 21, 2023

/s/ Neal Kumar Katyal

Katherine B. Wellington
HOGAN LOVELLS US LLP
125 High St., Suite 2010
Boston, MA 02110
Telephone: (617) 702-7745
Facsimile: (617) 371-1037
katherine.wellington@hoganlovells.com

Brian C. Rocca
Sujal J. Shah
Michelle Park Chiu
Minna Lo Naranjo
Rishi P. Satia
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001
brian.rocca@morganlewis.com

Richard S. Taffet
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
richard.taffet@morganlewis.com

Neal Kumar Katyal
Jessica L. Ellsworth
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
neal.katyal@hoganlovells.com

Kyle W. Mach
Justin P. Raphael
Emily C. Curran-Huberty
MUNGER, TOLLES, & OLSON LLP
560 Mission Street
Twenty Seventh Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
kyle.mach@mto.com

Glenn D. Pomerantz
Kuruvilla Olasa
MUNGER, TOLLES, & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Facsimile: (415) 512-4077
glenn.pomerantz@mto.com

*Counsel for Defendants-Appellants*

25

## RULE 27-1(2) STATEMENT

Pursuant to Circuit Rule 27-1(2), Google has conferred with opposing counsel to determine their position on this motion.  As explained, *supra* pp. 2, 5-6, Plaintiffs oppose this motion as to information in their Response Brief, but do not oppose this motion as to information in their Supplemental Excerpts of Record.

All relevant transcripts in this case have already been filed in the District Court.

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) and 9th Circuit Rule 27-1 because it contains 5,052 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 27(a)(2)(B).

This motion complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Times New Roman 14-point font.

/s/ Neal Kumar Katyal
Neal Kumar Katyal

## CERTIFICATE OF SERVICE

I certify that on August 21, 2023, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Neal Kumar Katyal
Neal Kumar Katyal